**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| The People of La Junta for Preservation; Far Flung Outdoor Center; Andrew Austin; and, Christina Hernandez,<br><br>*Plaintiffs*,<br><br>v.<br><br>Department of Homeland Security; Markwayne Mullin, in his official capacity as the Secretary of the United States Department of Homeland Security; Customs and Border Protection; Rodney S. Scott, in his official capacity as the Commissioner of United States Customs and Border Protection; Lloyd M. Easterling, in his official capacity as the Chief Patrol Agent of the United States Border Patrol's Big Bend Sector; Department of the Interior; Doug Burgum, in his official capacity as the Secretary of the Interior; and National Park Service,<br><br>*Defendants.* | § § § § § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 26-5245 |

---

**TRO EXHIBITS**

---

| **Exhibit No.** | **Description** | **Offered** | **Admitted** |
|---|---|---|---|
| **Plaintiffs' 1** | June 9, 2026 DHS/CBP Big Bend Sector Waiver Determination, Federal Register | ☐ | ☐ |
| **Plaintiffs' 2** | May 15, 2026 DHS/CBP Big Bend Sector Waiver Determination | ☐ | ☐ |
| **Plaintiffs' 3** | CBP/DHS Award Documentation for "Big Bend 2 Wall Project" to Fisher Sand & Gravel Co. | ☐ | ☐ |
| **Plaintiffs' 4** | Map Depicting June 9, 2026 Project Endpoints and Big Bend Conservation Lands | ☐ | ☐ |

| Exhibit No. | Description | Offered | Admitted |
|---|---|---|---|
| **Plaintiffs' 5** | Declaration of Christina Hernandez on Behalf of The People of La Junta for Preservation | ☐ | ☐ |
| **Plaintiffs' 6** | Certificate of Formation and Certificate of Correction of The People of La Junta for Preservation | ☐ | ☐ |
| **Plaintiffs' 7** | IRS Determination Letter Recognizing The People of La Junta for Preservation as Exempt Under 26 U.S.C. § 501(c)(3) | ☐ | ☐ |
| **Plaintiffs' 8** | Survey and Legal Description of Property Associated with The People of La Junta for Preservation Along the Rio Grande | ☐ | ☐ |
| **Plaintiffs' 9** | Declaration of Christina Hernandez, Individually | ☐ | ☐ |
| **Plaintiffs' 10** | Declaration of Billy Bartko on Behalf of Far Flung Outdoor Center | ☐ | ☐ |

# PLAINTIFFS' EXHIBIT 1

June 9, 2026 DHS/CBP Big Bend Sector Waiver Determination, Federal Register

- Surgical Sciences, Biomedical Imaging and Bioengineering Integrated Review Group
- Vaccine Research Center Board of Scientific Counselors National Institute of Allergy and Infectious Diseases
- Vascular and Hematology Integrated Review Group

5. *Justification that the information or advice provided by the Federal advisory committee or subcommittee is not available from another Federal advisory committee, another Federal Government source, or any other more cost-effective and less burdensome source:*

All members of the CCRHB are directly or indirectly associated with biomedical research, and upon acceptance of CCRHB appointment, each member is fully introduced to the unique aspects of the CC hospital which exists to provide safe delivery of patient-centric care in support of scientific research aligned with public health needs. Each year approximately 10,000 new research participants are seen at the CC as active partners in medical discovery, a partnership that has resulted in a long list of medical milestones, including the first cure of a solid tumor with chemotherapy, gene therapy, and the use of AZT to treat AIDS. The CC differs from other hospitals as it is not a general hospital, nor is it a part of a health system. There is no trauma care, no emergency room, no labor and delivery and no billing department. The mission of the CC is to provide hope through pioneering clinical research to improve human health. With our patient partners, the CC proudly is referenced as the ''House of Hope.'' The Board members' recommendations are invaluable because the complex nature of the CC's clinical research mission requires a unique balance and breadth of expertise not available at NIH or from other established sources. This advice and unique, expert perspectives cannot be obtained through other mechanisms.

6. *If the consultation is a committee renewal, a summary of the previous accomplishments of the committee and the reasons it needs to continue:*

The CCRHB is the sole entity to provide advice about hospital operations aligned with the CC's clinical research priorities. As such, the CCRHB's focus is on the complementary aims of achieving the highest standards of safety for research participants and the CC community, while fostering an environment of cutting-edge high-impact research to improve the health of Americans.

*2016:* The CCRHB recommended the submission of regular reports to the Board addressing Patient Safety & Quality Performance Metrics. This topic became a 'standing item' for all Board meetings and members continue to receive a Current Executive Dashboard Report on Clinical and Safety Performance Metrics one week prior to each meeting for review. The CEO Presentation includes reference to these standing reports; and the CEO solicits discussion or questions from the Board, then reports are posted on the CC's website for public review.

*2016—Present:* Annual reports to the CCRHB are delivered by the Director, Office of Research Facilities. These reports generate discussions for planned or ongoing facility changes that directly or indirectly affect CC patients, researchers, staff, and the CC community. In October 2019, all Board members signed a letter to the NIH Director, ultimately shared with Congress during budget discussions, to address needed funding for NIH maintenance issues and facility projects to improve environment of care and specialized capabilities requests, including construction of the new Surgery, Radiology and Laboratory Medicine Wing.

A key accomplishment of the CCRHB in 2022 was to provide a comprehensive review and assessment of pediatric care at the CC, focused on the delivery of care to children, current clinical research studies, and setting a vision to consider for the future of pediatric research. With the assistance of a working group that included pediatric leaders from across the country, the CCRHB provided advice that identified strengths and areas of focused improvement to be considered going forward.

7. *Explanation of why the committee/subcommittee is essential to the conduct of agency business:*

The CCRHB was created in 2016 as recommended by the Advisory Committee to the NIH Director following results of an FDA visit and review of hospital operations. Per the CCRHB charter, the purpose of the Board is to advise, consult with, and make recommendations to the NIH Principal Deputy Director (or designee) and the CEO with respect to maintaining excellence in hospital operations, safety and quality, unique clinical research care requirements for CC patients, regulatory compliance, clinical research, and hospital leadership performance oversight. Currently in its 9th year, the CCRHB has provided expert guidance and recommendations related to most aspects of CC operations.

In conclusion, this public interest determination documents that renewing the committee is in the public interest, essential to the conduct of agency business, and that the information to be obtained is not already available through another advisory committee or source within the Federal Government.

Inquiries may be directed to Patricia Brandt Hansberger, Acting Director, Office of Federal Advisory Committee Policy, Office of the Director, National Institutes of Health, 6701 Democracy Boulevard, Suite 1000, Bethesda, Maryland 20892 (Mail code 4875), Telephone (301) 496–2123, or *patricia.hansberger@nih.gov.*

Dated: June 3, 2026.

**Denise M. Santeufemio,**

*Supervisory Program Analyst, Office of Federal Advisory Committee Policy.*

[FR Doc. 2026–11519 Filed 6–5–26; 4:15 pm]

BILLING CODE 4167–05–P

## DEPARTMENT OF HEALTH AND HUMAN SERVICES

### National Institutes of Health

### Center for Scientific Review; Amended Notice of Meeting

Notice is hereby given of a change in the meeting of the Molecular and Structural Immunology Study Section, June 25, 2026, 09:30 a.m. to June 25, 2026, 06:00 p.m., National Institutes of Health, Rockledge II, 6701 Rockledge Drive, Bethesda, MD 20892 which was published in the **Federal Register** on May 21, 2026, 91 FR 29973 FR Doc No. 2026–10231.

The meeting is being amended to change the contact person from Velasco Cimica to Katie Alexander. The meeting is closed to the public.

Dated: June 5, 2026.

**Bruce A. George,**

*Program Analyst, Office of Federal Advisory Committee Policy.*

[FR Doc. 2026–11541 Filed 6–8–26; 8:45 am]

BILLING CODE 4167–05–P

## DEPARTMENT OF HOMELAND SECURITY

### Office of the Secretary

### Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, as Amended

**AGENCY:** Office of the Secretary, Department of Homeland Security.

**ACTION:** Notice of determination.

**SUMMARY:** The Secretary of Homeland Security has determined, pursuant to law, that it is necessary to waive certain laws, regulations, and other legal requirements in order to ensure the expeditious construction of barriers and roads in the vicinity of the international land border in the state of Texas. The notice of determination was published in the **Federal Register** on May 15, 2026. The project area description in the May 15, 2026, notice of determination was incorrect. This document is a republication of the May 15, 2026, document with the correct project area description.

**DATES:** This determination takes effect on June 9, 2026.

**SUPPLEMENTARY INFORMATION:** Important mission requirements of the Department of Homeland Security (''DHS'') include border security and the detection and prevention of illegal entry into the United States. Border security is critical to the nation's national security. Recognizing the critical importance of border security, Congress has mandated DHS to achieve and maintain operational control of the international land border. Secure Fence Act of 2006, Public Law 109–367, section 2, 120 Stat. 2638 (Oct. 26, 2006) (8 U.S.C. 1701 note). Congress defined ''operational control'' as the prevention of all unlawful entries into the United States, including entries by terrorists, other unlawful aliens, instruments of terrorism, narcotics, and other contraband. *Id.* Consistent with that mandate, the President's Executive Order on Securing Our Borders directs that I take all appropriate action to deploy and construct physical barriers to ensure complete operational control of the southern border of the United States. Executive Order 14165, section 3 (Jan. 20, 2025).

Congress has provided to the Secretary of Homeland Security a number of authorities necessary to carry out DHS's border security mission. One of those authorities is found at section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, as amended (''IIRIRA''). Public Law 104–208, Div. C, Tit. I, section 102, 110 Stat. 3009–546, 3009–554 (8 U.S.C 1103 note), as amended by the REAL ID Act of 2005, Public Law 109–13, Div. B, Tit. I, section 102, 119 Stat. 302, 306 (8 U.S.C. 1103 note), as amended by the Secure Fence Act of 2006, Public Law 109–367, section 3, 120 Stat. 2638 (8 U.S.C. 1103 note), as amended by the Department of Homeland Security Appropriations Act, 2008, Public Law 110–161, Div. E, Tit. V, section 564, 121 Stat. 2042, 2090. In section 102(a) of IIRIRA, Congress provided that the Secretary of Homeland Security shall take such actions as may be necessary to install additional physical barriers and roads (including the removal of obstacles to detection of illegal entrants) in the vicinity of the United States border to deter illegal crossings in areas of high illegal entry into the United States. In section 102(b) of IIRIRA, Congress mandated that in carrying out the authority of section 102(a), I provide for the installation of additional fencing, barriers, roads, lighting, cameras, and sensors to achieve and maintain operational control of the border. Finally, in section 102(c) of IIRIRA, Congress granted to the Secretary of Homeland Security the authority to waive all legal requirements that I, in my sole discretion, determine necessary to ensure the expeditious construction of barriers and roads authorized by section 102 of IIRIRA.

## Determination and Waiver

*Section 1*

The United States Border Patrol Big Bend Sector is an area of high illegal entry. Between fiscal year 2021 and fiscal year 2025, Border Patrol apprehended over 89,000 illegal aliens attempting to enter the United States between border crossings in the Big Bend Sector. In that same time period Border Patrol seized over 87,574 pounds of marijuana, over 867 pounds of cocaine, over 1,156 pounds of methamphetamine, over 12 pounds of heroin, and over 94 pounds of fentanyl.

Since the President took office, DHS has delivered the most secure border in history. More can and must be done, however. As the statistics cited above demonstrate, the Big Bend Sector is an area of high illegal entry where illegal aliens regularly attempt to enter the United States and smuggle illicit drugs, and given my mandate to achieve and maintain operational control of the border, I must use my authority under section 102 of IIRIRA to install additional barriers and roads in the Big Bend Sector. Therefore, DHS will take immediate action to construct additional barriers and roads in a segment of the border in the Big Bend Sector. The segment where such construction will occur is referred to herein as the ''project area,'' which is more specifically described in Section 2 below.

*Section 2*

I determine that the following area in the vicinity of the United States border, located in the state of Texas within the U. S. Border Patrol Big Bend Sector is an area of high illegal entry (the ''project area''): Starting at approximately GPS point 29.325866, –104.046466 and extending east to approximately GPS point 29.728522, − 102.683945.

There is presently an acute and immediate need to construct additional physical barriers and roads in the vicinity of the border of the United States in order to prevent unlawful entries into the United States in the project area pursuant to section 102(a) and 102(b) of IIRIRA. In order to ensure the expeditious construction of additional physical barriers and roads in the project area, I have determined that it is necessary that I exercise the authority that is vested in me by section 102(c) of IIRIRA.

Accordingly, pursuant to section 102(c) of IIRIRA, I hereby waive in their entirety, with respect to the construction of physical barriers and roads (including, but not limited to, accessing the project areas, creating and using staging areas, the conduct of earthwork, excavation, fill, and site preparation, and installation and upkeep of physical barriers, roads, supporting elements, drainage, erosion controls, safety features, lighting, cameras, and sensors) in the project area, all of the following statutes, including all federal, state, or other laws, regulations, and legal requirements of, deriving from, or related to the subject of, the following statutes, as amended: The National Environmental Policy Act (Pub. L. 91–190, 83 Stat. 852 (42 U.S.C. 4321 *et seq.*)); the Endangered Species Act (Pub. L. 93–205, 87 Stat. 884 (16 U.S.C. 1531 *et seq.*)); the Federal Water Pollution Control Act (commonly referred to as the Clean Water Act (33 U.S.C. 1251 *et seq.*)); the National Historic Preservation Act (Pub. L. 89–665, 80 Stat. 915, as amended, repealed, or replaced by Pub. L. 113–287 (formerly codified at 16 U.S.C. 470 *et seq.,* now codified at 54 U.S.C. 100101 note and 54 U.S.C. 300101 *et seq.*)); the Migratory Bird Treaty Act (16 U.S.C. 703 *et seq.*); the Migratory Bird Conservation Act (16 U.S.C. 715 *et seq.*); the Clean Air Act (42 U.S.C. 7401 *et seq.*); the Archeological Resources Protection Act (Pub. L. 96–95 (16 U.S.C. 470aa *et seq.*)); the Paleontological Resources Preservation Act (16 U.S.C. 470aaa *et seq.*); the Federal Cave Resources Protection Act of 1988 (16 U.S.C. 4301 *et seq.*); the National Trails System Act (16 U.S.C. 1241 *et seq.*); the Safe Drinking Water Act (42 U.S.C. 300f *et seq.*); the Noise Control Act (42 U.S.C. 4901 *et seq.*); the Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act (42 U.S.C. 6901 *et seq.*);

the Comprehensive Environmental Response, Compensation, and Liability Act (42 U.S.C. 9601 *et seq.*); the Archaeological and Historic Preservation Act (Pub. L. 86–523, as amended, repealed, or replaced by Pub. L. 113–287 (formerly codified at 16 U.S.C. 469 *et seq.,* now codified at 54 U.S.C. 312502 *et seq.*)); the Antiquities Act (formerly codified at 16 U.S.C. 431 *et seq.* and 16 U.S.C. 431a *et seq.,* now codified 54 U.S.C. 320301 *et seq.*); the Historic Sites, Buildings, and Antiquities Act (formerly codified at 16 U.S.C. 461 *et seq.,* now codified at 54 U.S.C. 320301–320303 & 320101–320106); the Eagle Protection Act (16 U.S.C. 668 *et seq.*); the Native American Graves Protection and Repatriation Act (25 U.S.C. 3001 *et seq.*); the Administrative Procedure Act (5 U.S.C. 551 *et seq.*); Section 438 of the Energy Independence and Security Act (42 U.S.C. 17094); the National Fish and Wildlife Act of 1956 (Pub. L. 84–1024 (16 U.S.C. 742a, *et seq.*)); the Fish and Wildlife Coordination Act (Pub. L. 73–121 (16 U.S.C. 661 *et seq.*)); the Farmland Protection Policy Act (7 U.S.C. 4201 *et seq.*); the Wild Horse and Burro Act (16 U.S.C. 1331 *et seq.*); 43 U.S.C. 387; the Wild and Scenic Rivers Act (Pub. L. 90–542 (16 U.S.C. 1281 *et seq.*); the Federal Land Policy and Management Act (Pub L. 94–579 (43 U.S.C. 1701 *et seq.*)); the Wilderness Act (Pub. L. 88–577 (16 U.S.C. 1131 *et seq.*)); the National Park Service Organic Act and the National Park Service General Authorities Act (Pub. L. 64–235, 39 Stat. 535 and Pub. L. 91–383, 84 Stat. 825 as amended, repealed, or replaced by Pub. L. 113–287, 128 Stat. 3094 (formerly codified at 16 U.S.C. 1, 2–4 and 16 U.S.C. 1a-1 *et seq.,* now codified at 54 U.S.C. 100101–100102, 54 U.S.C. 100301–100303, 54 U.S.C. 100501–100507, 54 U.S.C. 100701–100707, 54 U.S.C. 100721–100725, 54 U.S.C. 100751–100755, 54 U.S.C. 100901–100906, 54 U.S.C. 102101–102102)); 16 U.S.C. 156; 16 U.S.C. 157; 16 U.S.C. 157c; and 16 U.S.C. 157d.

This waiver does not revoke or supersede any other waiver determination made pursuant to section 102(c) of IIRIRA. Such waivers shall remain in full force and effect in accordance with their terms. I reserve the authority to execute further waivers from time to time as I may determine to be necessary under section 102 of IIRIRA.

**Markwayne Mullin,**

*Secretary of Homeland Security.*

[FR Doc. 2026–11473 Filed 6–8–26; 8:45 am]

**BILLING CODE 9111–14–P**

## DEPARTMENT OF LABOR

### Employment and Training Administration

### Modernizing Federal Workforce Information Tools: Request for Information (RFI) on Online Career Tools and the Occupational Information Network (O*NET) Program

**ACTION:** Request for information; request for comments.

**SUMMARY:** The U.S. Department of Labor (DOL or the Department), Employment and Training Administration (ETA) seeks public input to inform two related modernization efforts that together aim to strengthen the nation's public workforce information infrastructure. First, ETA is soliciting input to inform the design and implementation of a modernized online career site, currently delivered through CareerOneStop.org—a public-facing workforce information website that helps job seekers explore occupations, locate training programs, identify local services, and connect to job listings. Second, ETA is soliciting input to inform a modernization of the Occupational Information Network (O*NET) Program, which publishes detailed descriptions of occupational employment and serves as a foundational data resource for workforce tools and services across the country. These two efforts are closely linked: a modernized career site is only as good as the occupational and skills data that powers it. O*NET data informs how CareerOneStop presents occupations, skills, and pathways to users—and improvements to O*NET's timeliness, granularity, and interoperability will directly expand what a modernized site can offer. DOL is therefore seeking input on both efforts together, and respondents are encouraged to consider how improvements in one area could strengthen the other. Please note that this RFI is issued for information-gathering purposes only; it is not a solicitation or an offer for procurement. DOL will not award contracts or grants based on responses to this notice and will not respond individually to commenters. Comments may inform program and policy planning, including potential future notices and procurement activities. DOL expects that any possible procurement activity will be posted on the GSA Multiple Award Schedule.

**DATES:** To be ensured consideration, comments are due by August 10, 2026.

**ADDRESSES:** You may submit comments in response to the RFI described in this notice by one of the following methods:

*Electronic submission:* Submit comments related to Online Career Tools by email to: *OnlineCareerToolsRFI@dol.gov.* Submit comments related to O*NET by email to: *ONETRFI@dol.gov.*

*Postal Mail and hand delivery/courier:* Written comment submissions may be mailed or delivered to Attn: Steven Rietzke, Office of Workforce Investment, U.S. Department of Labor, 200 Constitution Avenue NW, Suite C–4510, Washington, DC 20210.

*Instructions:* This Request for Information invites comments from job seekers, workers, employers, HR practitioners, state and local workforce agencies, training and education providers, credentialing bodies, developers, researchers, and other interested stakeholders. Respondents may address either the Online Career Tools or O*NET sections of this RFI or may address both. Label all Online Career Tools submissions with ''Online Career Tools RFI.'' Label all O*NET submissions with ''O*NET RFI.'' If you respond to both sections, please provide two separate submissions. Please submit your comments by only one delivery method (*i.e.,* Email or postal mail; Email is highly preferred).

### Instructions for Submitting Comments

- Clearly label your submission with the applicable subject line (see Addresses section above) to indicate whether your comments address Section I (Online Career Tools), Section II (O*NET), or both.
- Identify your stakeholder group (*e.g.,* job seeker, employer, developer, state workforce agency) at the top of your response.
- Focus on the questions most relevant to your expertise. Respondents are not required to address every question.
- Include organization and contact information if you are commenting on behalf of an institution and are willing to be contacted for follow-up.
- Do not include sensitive PII or confidential information; all submissions will be posted publicly.

**FOR FURTHER INFORMATION CONTACT:**

Steven Rietzke, Office of Workforce Investment (OWI), U.S. Department of Labor, Employment and Training Administration, 200 Constitution Avenue NW, Room C–4510, Washington, DC 20210, Telephone: (202) 693–3912 (this is not a toll-free number), Email: *OnlineCareerToolsRFI@dol.gov* for questions about online career

# PLAINTIFFS' EXHIBIT 2

May 15, 2026 DHS/CBP Big Bend Sector
Waiver Determination

several solid cancers, including breast cancer and melanoma.

- Combination of hetIL-15 with agents already approved (Fenofibrate, Flt–3) decreases regulatory risk and thus expedites commercialization.
- Overcoming IL–15 toxicity at clinically relevant doses.

Dated: May 13, 2026.

**Richard U. Rodriguez,**

*Associate Director, Technology Transfer Center, National Cancer Institute.*

[FR Doc. 2026–09808 Filed 5–14–26; 8:45 am]

BILLING CODE 4167–05–P

## DEPARTMENT OF HOMELAND SECURITY

### Office of the Secretary

### Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, as Amended

**AGENCY:** Office of the Secretary, Department of Homeland Security.

**ACTION:** Notice of determination.

**SUMMARY:** The Secretary of Homeland Security has determined, pursuant to law, that it is necessary to waive certain laws, regulations, and other legal requirements in order to ensure the expeditious construction of barriers and roads in the vicinity of the international land border in the state of Texas.

**DATES:** This determination takes effect on May 15, 2026.

**SUPPLEMENTARY INFORMATION:** Important mission requirements of the Department of Homeland Security (''DHS'') include border security and the detection and prevention of illegal entry into the United States. Border security is critical to the nation's national security. Recognizing the critical importance of border security, Congress has mandated DHS to achieve and maintain operational control of the international land border. Secure Fence Act of 2006, Public Law 109–367, section 2, 120 Stat. 2638 (Oct. 26, 2006) (8 U.S.C. 1701 note). Congress defined ''operational control'' as the prevention of all unlawful entries into the United States, including entries by terrorists, other unlawful aliens, instruments of terrorism, narcotics, and other contraband. *Id.* Consistent with that mandate, the President's Executive Order on Securing Our Borders directs that I take all appropriate action to deploy and construct physical barriers to ensure complete operational control of the southern border of the United States. Executive Order 14165, section 3 (Jan. 20, 2025).

Congress has provided to the Secretary of Homeland Security a number of authorities necessary to carry out DHS's border security mission. One of those authorities is found at section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, as amended (''IIRIRA''). Public Law 104–208, Div. C, Tit. I, section 102, 110 Stat. 3009–546, 3009–554 (8 U.S.C 1103 note), as amended by the REAL ID Act of 2005, Public Law 109–13, Div. B, Tit. I, section 102, 119 Stat. 302, 306 (8 U.S.C. 1103 note), as amended by the Secure Fence Act of 2006, Public Law 109–367, section 3, 120 Stat. 2638 (8 U.S.C. 1103 note), as amended by the Department of Homeland Security Appropriations Act, 2008, Public Law 110–161, Div. E, Tit. V, section 564, 121 Stat. 2042, 2090. In section 102(a) of IIRIRA, Congress provided that the Secretary of Homeland Security shall take such actions as may be necessary to install additional physical barriers and roads (including the removal of obstacles to detection of illegal entrants) in the vicinity of the United States border to deter illegal crossings in areas of high illegal entry into the United States. In section 102(b) of IIRIRA, Congress mandated that in carrying out the authority of section 102(a), I provide for the installation of additional fencing, barriers, roads, lighting, cameras, and sensors to achieve and maintain operational control of the border. Finally, in section 102(c) of IIRIRA, Congress granted to the Secretary of Homeland Security the authority to waive all legal requirements that I, in my sole discretion, determine necessary to ensure the expeditious construction of barriers and roads authorized by section 102 of IIRIRA.

#### Determination and Waiver

*Section 1*

The United States Border Patrol Big Bend Sector is an area of high illegal entry. Between fiscal year 2021 and fiscal year 2025, Border Patrol apprehended over 89,000 illegal aliens attempting to enter the United States between border crossings in the Big Bend Sector. In that same time period Border Patrol seized over 87,574 pounds of marijuana, over 867 pounds of cocaine, over 1,156 pounds of methamphetamine, over 12 pounds of heroin, and over 94 pounds of fentanyl.

Since the President took office, DHS has delivered the most secure border in history. More can and must be done, however. As the statistics cited above demonstrate, the Big Bend Sector is an area of high illegal entry where illegal aliens regularly attempt to enter the United States and smuggle illicit drugs, and given my mandate to achieve and maintain operational control of the border, I must use my authority under section 102 of IIRIRA to install additional barriers and roads in the Big Bend Sector. Therefore, DHS will take immediate action to construct additional barriers and roads in a segment of the border in the Big Bend Sector. The segment where such construction will occur is referred to herein as the ''project area,'' which is more specifically described in Section 2 below.

*Section 2*

I determine that the following area in the vicinity of the United States border, located in the state of Texas within the U. S. Border Patrol Big Bend Sector is an area of high illegal entry (the ''project area''): Starting at approximately GPS point 29.7275568–101.6848011 and extending east to approximately GPS point 29.727557–102.684802.

There is presently an acute and immediate need to construct additional physical barriers and roads in the vicinity of the border of the United States in order to prevent unlawful entries into the United States in the project area pursuant to section 102(a) and 102(b) of IIRIRA. In order to ensure the expeditious construction of additional physical barriers and roads in the project area, I have determined that it is necessary that I exercise the authority that is vested in me by section 102(c) of IIRIRA.

Accordingly, pursuant to section 102(c) of IIRIRA, I hereby waive in their entirety, with respect to the construction of physical barriers and roads (including, but not limited to, accessing the project areas, creating and using staging areas, the conduct of earthwork, excavation, fill, and site preparation, and installation and upkeep of physical barriers, roads, supporting elements, drainage, erosion controls, safety features, lighting, cameras, and sensors) in the project area, all of the following statutes, including all federal, state, or other laws, regulations, and legal requirements of, deriving from, or related to the subject of, the following statutes, as amended: The National Environmental Policy Act (Pub. L. 91–190, 83 Stat. 852 (42 U.S.C. 4321 *et seq.*)); the Endangered Species Act (Pub. L. 93–205, 87 Stat. 884 (16 U.S.C. 1531 *et seq.*)); the Federal Water Pollution Control Act (commonly referred to as the Clean Water Act (33 U.S.C. 1251 *et seq.*)); the National Historic Preservation Act (Pub. L. 89–665, 80 Stat. 915, as amended, repealed, or replaced by Pub.

L. 113–287 (formerly codified at 16 U.S.C. 470 *et seq.,* now codified at 54 U.S.C. 100101 note and 54 U.S.C. 300101 *et seq.*)); the Migratory Bird Treaty Act (16 U.S.C. 703 *et seq.*); the Migratory Bird Conservation Act (16 U.S.C. 715 *et seq.*); the Clean Air Act (42 U.S.C. 7401 *et seq.*); the Archeological Resources Protection Act (Pub. L. 96–95 (16 U.S.C. 470aa *et seq.*)); the Paleontological Resources Preservation Act (16 U.S.C. 470aaa *et seq.*); the Federal Cave Resources Protection Act of 1988 (16 U.S.C. 4301 *et seq.*); the National Trails System Act (16 U.S.C. 1241 *et seq.*); the Safe Drinking Water Act (42 U.S.C. 300f *et seq.*); the Noise Control Act (42 U.S.C. 4901 *et seq.*); the Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act (42 U.S.C. 6901 *et seq.*); the Comprehensive Environmental Response, Compensation, and Liability Act (42 U.S.C. 9601 *et seq.*); the Archaeological and Historic Preservation Act (Pub. L. 86–523, as amended, repealed, or replaced by Pub. L. 113–287 (formerly codified at 16 U.S.C. 469 *et seq.,* now codified at 54 U.S.C. 312502 *et seq.*)); the Antiquities Act (formerly codified at 16 U.S.C. 431 *et seq.* and 16 U.S.C. 431a *et seq.,* now codified 54 U.S.C. 320301 *et seq.*); the Historic Sites, Buildings, and Antiquities Act (formerly codified at 16 U.S.C. 461 *et seq.,* now codified at 54 U.S.C. 320301–320303 & 320101–320106); the Eagle Protection Act (16 U.S.C. 668 *et seq.*); the Native American Graves Protection and Repatriation Act (25 U.S.C. 3001 *et seq.*); the Administrative Procedure Act (5 U.S.C. 551 *et seq.*); Section 438 of the Energy Independence and Security Act (42 U.S.C. 17094); the National Fish and Wildlife Act of 1956 (Pub. L. 84–1024 (16 U.S.C. 742a, *et seq.*)); the Fish and Wildlife Coordination Act (Pub. L. 73–121 (16 U.S.C. 661 *et seq.*)); the Farmland Protection Policy Act (7 U.S.C. 4201 *et seq.*); the Wild Horse and Burro Act (16 U.S.C. 1331 *et seq.*); 43 U.S.C. 387; the Wild and Scenic Rivers Act (Pub. L. 90–542 (16 U.S.C. 1281 *et seq.*); the Federal Land Policy and Management Act (Pub L. 94–579 (43 U.S.C. 1701 *et seq.*)); the Wilderness Act (Pub. L. 88–577 (16 U.S.C. 1131 *et seq.*)); the National Park Service Organic Act and the National Park Service General Authorities Act (Pub. L. 64–235, 39 Stat. 535 and Pub. L. 91–383, 84 Stat. 825 as amended, repealed, or replaced by Pub. L. 113–287, 128 Stat. 3094 (formerly codified at 16 U.S.C. 1, 2–4 and 16 U.S.C. 1a-1 *et seq.,* now codified at 54 U.S.C. 100101–100102, 54 U.S.C. 100301–100303, 54 U.S.C. 100501–100507, 54 U.S.C. 100701–100707, 54 U.S.C. 100721–100725, 54 U.S.C. 100751–100755, 54 U.S.C. 100901–100906, 54 U.S.C. 102101–102102)); 16 U.S.C. 156; 16 U.S.C. 157; 16 U.S.C. 157c; and 16 U.S.C. 157d.

This waiver does not revoke or supersede any other waiver determination made pursuant to section 102(c) of IIRIRA. Such waivers shall remain in full force and effect in accordance with their terms. I reserve the authority to execute further waivers from time to time as I may determine to be necessary under section 102 of IIRIRA.

**Markwayne Mullin,**

*Secretary of Homeland Security,*

[FR Doc. 2026–09752 Filed 5–14–26; 8:45 am]

**BILLING CODE 9111–14–P**

## DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

**[Docket No. FR–7109–N–07; OMB Control No.: 2577–0294]**

## 60-Day Notice of Proposed Information Collection: Moving to Work Amendment to Consolidated Annual Contributions Contract

**AGENCY:** Office of the Assistant Secretary for Public and Indian Housing (PIH), HUD.

**ACTION:** Notice.

**SUMMARY:** HUD is seeking approval from the Office of Management and Budget (OMB) for the information collection described below. In accordance with the Paperwork Reduction Act, HUD is requesting comments from all interested parties on the proposed collection of information. The purpose of this notice is to allow for 60 days of public comment.

**DATES:** *Comments Due Date:* July 14, 2026.

**ADDRESSES:** Interested persons are invited to submit comments regarding this proposal. Written comments and recommendations for the proposed information collection can be sent within 60 days of publication of this notice to *www.regulations.gov.* Interested persons are also invited to submit comments regarding this proposal and comments should refer to the proposal by name and/or OMB Control Number and should be sent to: Dawn Martin, Office of Public and Indian Housing, Department of Housing and Urban Development, 451 7th Street SW, Washington, DC 20410.

**FOR FURTHER INFORMATION CONTACT:** Dawn Martin, Office of Public and Indian Housing, Department of Housing and Urban Development, 451 7th Street SW, Washington, DC 20410; email *PIH-PRAPublicComments@hud.gov;* telephone 202–402–6488. This is not a toll-free number. HUD welcomes and is prepared to receive calls from individuals who are deaf or hard of hearing, as well as individuals with speech or communication disabilities. To learn more about how to make an accessible telephone call, please visit *https://www.fcc.gov/consumers/guides/telecommunications-relay-service-trs.* Copies of available documents submitted to OMB may be obtained from Ms. Martin.

**SUPPLEMENTARY INFORMATION:** This notice informs the public that HUD is seeking approval from OMB for the information collection described in Section A.

### A. Overview of Information Collection

*Title of Information Collection:* Moving to Work Amendment to Consolidated Annual Contributions Contract(s).

*OMB Approval Number:* 2577–0294.

*Type of Request:* Renewal of a currently approved collection.

*Form Number:* HUD–50166.

*Description of the need for the information and proposed use:* The proposed Moving to Work (MTW) Amendment to the Annual Contributions Contract(s) (ACC), signed by HUD and the selected public housing agency (PHA), is necessary for HUD to implement the expansion of the MTW program enacted by Congress in the Consolidated Appropriations Act, 2016 (Pub. L. 114–113, approved December 18, 2015) (2016 Appropriation). It establishes the basic terms and conditions that will apply to new PHAs participating in the MTW demonstration and to existing MTW PHAs seeking to now be governed pursuant to the 2016 Appropriation. Specifically, the MTW ACC Amendment amends any ACCs for the public housing or housing choice voucher programs in effect between the PHA and HUD to establish the PHA's designation as an MTW agency and to operate in accordance with the requirements of the MTW demonstration program, as amended by Public Law 114–113. The MTW ACC Amendment establishes the terms of participation in MTW, including the requirement that the PHA follow the MTW Operations Notice and its respective Selection Notice. The PHAs remain subject to the applicable ACCs to the extent that the provisions thereof are not otherwise waived by the Operations Notice or the applicable MTW Selection Notice. Additionally, the MTW ACC

# PLAINTIFFS' EXHIBIT 3

CBP/DHS Award Documentation for "Big Bend 2 Wall Project" to Fisher Sand & Gravel Co.

An official website of the United States government
Here's how you know

USASPENDING.gov

## Contract Summary

**Delivery Order (DO)**

PIID 70B01C26F00000169
In Progress
(1 year remains)

Awarding Agency

**Department of Homeland Security (DHS)**

Recipient

**FISHER SAND & GRAVEL CO**
1302 W DRIVERS WAY
TEMPE, AZ 85284-85284
UNITED STATES
Congressional District: AZ-04

Related Awards

Parent Award Unique Key

CONT_IDV_70B01C26D00000012_7014

Dates

Today

| | |
|---|---|
| Start Date | Feb 13, 2026 |
| Current End Date | Sep 05, 2027 |
| Potential End Date | Sep 05, 2027 |

## $ Award Amounts




| | |
|---|---|
| Outlayed Amount | $38,450,000.00 |
| Obligated Amount | $1,223,124,000.00 |
| Current Award Amount | $1,223,124,000.00 |
| Potential Award Amount | $1,371,800,000.00 |

View Transaction History

## Description

BORDER WALL CONSTRUCTION - VERTICAL BARRIER, BIG BEND TEXAS SECTOR (BBT-2)

**North American Industry Classification System (NAICS) Code**

23 : Construction

2362: Nonresidential Building Construction

**236220: Commercial and Institutional Building Construction**

**Product or Service Code (PSC)**

SERVICES

Y: CONSTRUCT OF STRUCTURES/FACILITIES

Y1: CONSTRUCTION OF BUILDINGS

**Y1LB: CONSTRUCTION OF HIGHWAYS, ROADS, STREETS, BRIDGES, AND RAILWAYS**

## Contract Activity




View transactions table

## Federal Accounts

| Federal Account | Combined Obligated Amount | Percent of Total | Funding Agency |
|---|---|---|---|
| PROCUREMENT, CONSTRUCTION, AND IMPRO... | $1,223,124,000 | 100% | (DHS) DEPARTMENT OF HC |

**NOTE:** Result count may differ between treemap view and table view. Treemap view only displays accounts with a positive combined obligated amount, while table view displays all accounts.

### Summary of All Federal Accounts used by this Award

| | |
|---|---|
| Total Funding Obligated | $1,223,124,000.00 |
| Total Count of Funding Agencies | 1 |
| Total Count of Awarding Agencies | 1 |
| Total Count of Federal Accounts | 1 |

View federal funding submissions

## Award History

This section displays the awards:

**Transaction History** - Displays modification records for an award. Each modification appears as a row in the table below.

**Sub-Awards** - Displays any sub-contracts reported by this contract's recipient (the 'prime recipient' in the sub-award context). Sub-contracts are contractual agreements that a prime recipient makes with another entity (sub-recipient) to furnish supplies or services for the prime contract. Above the Sub-Award table, we display the total number of reported sub-contract actions and their total value.

**Federal Account Funding** - Each row in this table shows a transaction in the awarding agency's financial system that promises spending for the award from a federal account (a rollup of TAS, or Treasury accounts), broken

down by program activity and object class.

Transaction History 1 | Sub-Awards 0 | Federal Account Funding 6

| Modification Number | Action Date | Amount | Action Type | Trar |
|---|---|---|---|---|
| 0 | 03/05/2026 | $1,223,124,000 | -- | BOF BAR |

1

1-1 of 1 results

## Additional Information

Expand All

Unique Award Key

Agency Details

Parent Award Details

Place Of Performance

Period Of Performance

Legislative Mandates

Recipient Details

Acquisition Details

Competition Details

Additional Details

Executive Compensation

## Stay in touch

### Your USAspending ideas

We're looking for your ideas! Tell us what you want to see on USAspending.gov.

Tell Us →

### How to search USAspending.gov

Learn how you can search for federal spending in your area with our new Featured Content.

Learn More →

### Sign up for release notes

Get release notes to your inbox to keep up with what's new on USAspending.gov.

Sign Up →

## Building a more transparent government.

Providing publicly accessible and searchable data on what the federal government spends each year.

ABOUT

Mission

HELP

FAQs

Community

Email Us

RELATED SITES

Fiscal Data

Bureau of the Fiscal Service

Accessibility

|

Privacy Policy

|

Freedom of Information Act

|

D&B Information

© 2026 USAspending.gov

# PLAINTIFFS' EXHIBIT 4

Map Depicting June 9, 2026 Project Endpoints
and Big Bend Conservation Lands


Easternmost Point
29.728522, -102.683945
Westernmost Point
29.325866, -104.046466
Big Bend
Ranch
State Park
Big Bend
National Park
Monte
Marqueño
Redford
El Mulato
Barranco Azul
El Sabinito
El Cariño
Rancho Blanco
Las Minas
El Pinal
Rancho El
Almagre
El Gatún
Cañón de
Santa Elena
Nuevo Lajitas
El Remolino
Lajitas
Paso de San
Antonio
Study Butte
Terlingua
Benito Juárez
La Victoria
Woodsons
La Linda
Rancho
El Salado
Boquillas
del Carmen
San Vicente
San Vicente
y Zacatonal
El Carmen
La Palma
Jaboncillos

# PLAINTIFFS' EXHIBIT 5

Declaration of Christina Hernandez on Behalf of The People of La Junta for Preservation

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| People of the La Junta For Preservation; Far Flung Outdoor Center; Andrew Austin; and, Christina Hernandez, | § | |
| *Plaintiffs*, | § | |
| v. | § | |
| Department of Homeland Security; Markwayne Mullin, in his official capacity as the Secretary of the United States Department of Homeland Security; Customs and Border Protection; Rodney S. Scott, in his official capacity as the Commissioner of United States Customs and Border Protection; Lloyd M. Easterling, in his official capacity as the Chief Patrol Agent of the United States Border Patrol's Big Bend Sector; Department of the Interior; Doug Burgum, in his official capacity as the Secretary of the Interior; and, National Park Service, | § | CIVIL ACTION NO. 26-5245 |
| *Defendants.* | | |

---

**Declaration of People of La Junta for Preservation**

---

I, Christina Hernandez, declare as follows:

1. My name is Christina Hernandez. I am over eighteen years of age, am competent to make this declaration, and have personal knowledge of the facts stated below.

2. I am the founder and director of People of La Junta for Preservation ("PLJP"), and I am authorized to speak on behalf of the organization concerning the matters addressed in this declaration.

3. PLJP is a Texas nonprofit corporation. Its Certificate of Formation was filed with the Texas Secretary of State on March 31, 2023.

4. PLJP subsequently filed a Certificate of Correction concerning its Certificate of Formation. Among other matters, that filing states the purposes for which PLJP was organized.

5. PLJP's stated purposes include promoting land conservation and stewardship of sacred Indigenous sites and creating educational opportunities to advance regional Indigenous cultural knowledge and religious practices within La Junta and Presidio County, Texas.

6. Those purposes reflect the work PLJP actually performs. The organization seeks to preserve land, cultural resources, archaeological resources, sacred places, Indigenous history, religious practices, and traditional knowledge associated with La Junta and the greater Big Bend and Rio Grande region.

7. The Internal Revenue Service assigned PLJP Employer Identification Number 99-1607095.

8. The Internal Revenue Service has recognized PLJP as an organization exempt from federal income taxation under Section 501(c)(3) of the Internal Revenue Code.

9. PLJP's preservation work is centered on the Indigenous cultural landscape of La Junta and the Rio Grande. That landscape includes archaeological sites, ancestral places, religious sites, traditional gathering areas, the River itself, and other places associated with the continuing practices of Indigenous people of the region.

10. PLJP does not regard those resources simply as historical artifacts. Many of the lands and places PLJP works to protect remain important to living people and to present cultural and religious practices.
11. PLJP has acquired interests in land along the Rio Grande in Presidio County for purposes consistent with its preservation mission.
12. Among those lands is a tract surveyed in 2025 consisting of approximately 4.311 acres in the Community of Redford in Presidio County, Texas.
13. The survey and associated property records identify that tract with People of La Junta for Preservation and show that the property extends to or immediately adjoins the east bank of the Rio Grande.
14. The surveyed property lies within an area containing significant Indigenous archaeological and cultural resources.
15. The survey identifies the El Polvo Archaeological Site and the San José Church Archaeological Site in or immediately adjoining the surveyed area.
16. The proximity of those archaeological sites is consistent with PLJP's experience that the land along the Rio Grande in this area contains a dense and interconnected record of Indigenous occupation and use.
17. PLJP acquired and stewards land in this area because preservation of the physical place is central to the organization's mission.
18. PLJP's interest is not limited to preservation of artifacts after they have been removed from the ground. The location of cultural material, its relationship to surrounding features, and the integrity of the landscape itself are important to the history and culture PLJP works to preserve.

19. PLJP and people associated with the organization use lands along the Rio Grande for preservation, cultural education, religious practice, gathering, teaching younger generations, and maintaining relationships with ancestral places.

20. PLJP's preservation work includes protecting places that may not appear on publicly available archaeological or governmental inventories.

21. Some Indigenous cultural and religious locations are intentionally not publicly disclosed because identifying their precise locations can expose them to looting, vandalism, collection, disturbance, or desecration.

22. For that reason, absence of a location from a governmental inventory does not mean that the place lacks cultural, historical, archaeological, or religious significance.

23. PLJP understands that the Department of Homeland Security and Customs and Border Protection propose extensive border-related construction within the greater Big Bend and Rio Grande corridor.

24. The contemplated activities include physical barriers, roads, access routes, staging areas, excavation, grading, placement of fill, lighting, cameras, sensors, drainage improvements, and related construction.

25. Activities of that kind are capable of permanently altering the lands and resources PLJP exists to preserve.

26. Excavation, grading, trenching, road construction, and heavy-equipment activity can destroy archaeological sites before their presence or significance is known.

27. Even where artifacts themselves survive, removal of an artifact from its original location can destroy information concerning its relationship to other objects, features, and the surrounding landscape.

28. Roads, barriers, lighting, and other permanent infrastructure can also alter cultural and religious landscapes without directly excavating an archaeological site.

29. PLJP is particularly concerned about construction occurring before the full location and extent of cultural and archaeological resources within the project area have been identified.

30. I understand that the Secretary of Homeland Security has waived a number of the ordinary federal historic-preservation and archaeological procedures that would otherwise apply to this project.

31. As a result, PLJP is concerned that excavation and other ground disturbance could occur before unidentified archaeological, cultural, or religious resources are located, documented, or protected.

32. Destruction of those resources would directly impair PLJP's organizational mission.

33. If a cultural or archaeological site that PLJP seeks to preserve is destroyed, the organization cannot accomplish its preservation mission simply by directing its efforts somewhere else. The loss of the place itself is the injury PLJP exists to prevent.

34. PLJP would also lose the ability to use that place for education, preservation, cultural transmission, and, where applicable, religious practice.

35. A photograph, map, museum display, or recovered artifact cannot substitute for an ancestral place after the place itself has been excavated or permanently altered.

36. PLJP also has members and persons associated with the organization who personally use and value lands and resources threatened by the proposed project.

37. Those persons include individuals who visit cultural and ancestral places, participate in religious practices, gather natural materials, pray, teach younger generations, preserve

archaeological and historic resources, and maintain continuing relationships with the Rio Grande landscape.

38. Some of the members of the People of La Junta for Preservation who use the affected areas are as follows: Melanie Hernandez, Mercy-Anne Ornelas, Rebecca Hernandez, Dr. Maia Rodriguez and elders Oscar Rodriquez, Norberto Ornelas, Xoxi Nayapiltzin, Abel Hernandez, Juan Hernandez, and Enrique Madrid.

39. PLJP or its members presently use or intend to use property located within or immediately adjacent to the DHS project corridor. Because some locations are culturally or religiously sensitive, PLJP does not publicly disclose their precise location but can provide additional information to the Court under appropriate protections.

40. PLJP intends to continue its preservation, educational, cultural, and religious work in the La Junta and greater Big Bend region.

41. The threatened construction would impair that work if land, archaeological context, cultural sites, access routes, traditional gathering areas, or religiously significant landscapes are destroyed, made inaccessible, or permanently altered.

42. These injuries cannot be adequately compensated with money. Once an archaeological site or ancestral landscape is destroyed, PLJP cannot restore the original physical context or relationship among the land, cultural materials, and the people connected to that place.

43. PLJP therefore seeks to preserve the existing condition of the affected lands while the Court determines whether the challenged construction may lawfully proceed.

44. Attached to or available in support of this declaration are records concerning PLJP's formation and corporate purpose, its federal tax-exempt status, and surveys and legal descriptions concerning land associated with PLJP along the Rio Grande.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 14, 2026, in Presidio, Texas.

*/s/ Christina Hernandez*___
Christina Hernandez,
Founder and Director People of La Junta for Preservation

# PLAINTIFFS' EXHIBIT 6

Certificate of Formation and Certificate of Correction of The People of La Junta for Preservation

**Form 403**
**(Revised 05/11)**

Submit in duplicate to:
Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
512 463-5555
FAX: 512/463-5709
**Filing Fee: $15**

This space reserved for office use.

## Certificate of Correction

## Entity Information

1. The name of the filing entity is:

The People of La Junta for Preservation

State the name of the entity as currently shown in the records of the secretary of state. If the certificate of correction corrects the name of the entity, state the present name and not the name as it will be corrected.

The file number issued to the filing entity by the secretary of state is: 804996992

## Filing Instrument to be Corrected

2. The filing instrument to be corrected is : Certificate of Formation Nonprofit Corporation #123407959003

The date the filing instrument was filed with the secretary of state: 03/31/2023
*mm/dd/yyyy*

## Identification of Errors and Corrections

(Indicate the errors that have been made by checking the appropriate box or boxes; then provide the corrected text.)

☐ The entity name is inaccurate or erroneously stated. The corrected entity name is:

☐ The registered agent name is inaccurate or erroneously stated. The corrected registered agent name is:

Corrected Registered Agent
(Complete either A or B, but not both.)

A. The registered agent is an organization (cannot be entity named above) by the name of:

**OR**

B. The registered agent is an individual resident of the state whose name is:

| *First* | *Middle* | *Last Name* | *Suffix* |
|---|---|---|---|

The person executing this certificate of correction affirms that the registered agent, whose name is being corrected by this certificate, consented to serve as registered agent at the time the filing instrument being corrected took effect.

☐ The registered office address is inaccurate or erroneously stated. The corrected registered office address is:

Corrected Registered Office Address

| | | | |
|---|---|---|---|
| | | TX | |
| *Street Address (No P.O. Box)* | *City* | *State* | *Zip Code* |

☑ The purpose of the entity is inaccurate or erroneously stated. The purpose is corrected to read as follows:

See attached Exhibit "A"

☐ The period of duration of the entity is inaccurate or erroneously stated.

The period of duration is corrected to read as follows:

---

**Identification of Other Errors and Corrections**

(Indicate the other errors and corrections that have been made by checking and completing the appropriate box or boxes.)

☐ **Other errors and corrections**. The following inaccuracies and errors in the filing instrument are corrected as follows:

☐ **Add** Each of the following provisions was omitted and should be added to the filing instrument. The identification or reference of each added provision and the full text of the provision is set forth below.

☐ **Alter** The following identified provisions of the filing instrument contain inaccuracies or errors to be corrected. The full text of each corrected provision is set forth below:

☐ **Delete** Each of the provisions identified below was included in error and should be deleted.

☐ **Defective Execution** The filing instrument was defectively or erroneously signed, sealed, acknowledged or verified. Attached is a correctly signed, sealed, acknowledged or verified instrument.

## Statement Regarding Correction

The filing instrument identified in this certificate was an inaccurate record of the event or transaction evidenced in the instrument, contained an inaccurate or erroneous statement, or was defectively or erroneously signed, sealed, acknowledged or verified. This certificate of correction is submitted for the purpose of correcting the filing instrument.

## Correction to Merger, Conversion or Exchange

The filing instrument identified in this certificate of correction is a merger, conversion or other instrument involving multiple entities. The name and file number of each entity that was a party to the transaction is set forth below. (If the space provided is not sufficient, include information as an attachment to this form.)

*Entity name* *SOS file number*

*Entity name* *SOS file number*

## Effectiveness of Filing

After the secretary of state files the certificate of correction, the filing instrument is considered to have been corrected on the date the filing instrument was originally filed except as to persons adversely affected. As to persons adversely affected by the correction, the filing instrument is considered to have been corrected on the date the certificate of correction is filed by the secretary of state.

## Execution

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and certifies under penalty of perjury that the undersigned is authorized under the provisions of law governing the entity to execute the filing instrument.

Date: 05/31/2023

By: [signature]

Signature of authorized person

Christina Hernandez

Printed or typed name of authorized person (see instructions)

**EXHIBIT "A"**

☑ The purpose of the entity is inaccurate or erroneously stated. The purpose is corrected to read as follows:

The purpose of this corporation shall be to promote land conservation and stewardship of sacred indigenous sites, create educational opportunities to advance regional indigenous cultural knowledge and religious practices, all within La Junta, Presidio County, Texas, and to do all things as may be necessary and proper to carry out any of the foregoing purposes for which the corporation is organized. No part of the net earnings of the corporation shall inure to the benefit of any director of the corporation, member of the corporation, office of the corporation, or any private individual, and no member, director or officer of the corporation or any private individual shall be entitled to share in the distribution of any of the corporate assets upon dissolution of the corporation. No part of the activities of the corporation shall be the carrying on of propaganda or otherwise attempting to influence legislation, and the corporation shall not participate in or intervene in any political campaign on behalf of any candidate for public office. Notwithstanding any other provision in this Certificate of Formation, the corporation shall not conduct or carry on any activities not permitted to be conducted or carried on by any organization exempt from taxation under Section 501(c)(3) of the Internal Revenue Code and its Regulations as they now exist or as they may hereafter be amended, or by any organization, contributions to which are deductible under Section 170(c)(2) of the Internal Revenue Code and its Regulations as they now exist or as they may hereafter be amended. Restrictions and Requirements: Regardless of any other provision herein or state law, the corporation shall have no power to: (1) Engage in activities or use its assets in manners that are not in furtherance of one or more exempt purposes, as set forth herein and as defined by the Internal Revenue Code and related regulations, rulings and procedures, except to an insubstantial degree; (2) Serve as a public interest other than the one that is clearly incidental to an overriding public interest; (3) Devote more than an insubstantial part of its activities to attempting to influence legislation by propaganda or otherwise; (4) Participate in or intervene in any political campaign on behalf of or in opposition to any candidate for public office; (5) Have objectives that characterize it as an "action organization: as defined by the Internal Revenue Code and related regulations, rulings and procedures; (6) Distribute its assets on dissolution other than for one or more exempt purposes (on dissolution, the corporation's assets shall be distributed to an organization exempt from taxes under Internal Revenue Code Section 501(c)(3) to be used to accomplish the general purposes for which the corporation was organized); (7) Permit any part of the net earnings of the corporation to inure to the benefit of any private person or individual except student recipients in furtherance of the Purpose; (8) Carry on an unrelated trade or business except as a secondary purpose related to the corporation's primary, exempt purpose. The corporation shall make distributions at such time and in such a manner as to avoid the tax on undistributed income imposed under Section 4942 of the Internal Revenue Code. The corporation shall not engage in any act of self-dealings defined in Internal Revenue Code Section 4941(c). The corporation shall not make any investments in any manner that would subject it to tax under Section 4944 of the Internal Revenue Code. The corporation shall not make any taxable expenditures as defined in Section 4954(d) of the Internal Revenue Code.

# PLAINTIFFS' EXHIBIT 7

IRS Determination Letter Recognizing The People of La Junta for Preservation as Exempt Under 26 U.S.C. § 501(c)(3)

**Department of the Treasury**
**Internal Revenue Service**
**Tax Exempt and Government Entities**
P.O. Box 2508
Cincinnati, OH 45201

PEOPLE OF LA JUNTA FOR PRESERVATION
C/O CHRISTINA HERNANDEZ
1826 RED ROCK DRIVE
ROUND ROCK, TX 78665

**Date:**
03/07/2024
**Employer ID number:**
99-1607095
**Person to contact:**
Name: Customer Service
ID number: 31954
Telephone: 877-829-5500
**Accounting period ending:**
December 31
**Form 990-PF required:**
Yes
**Effective date of exemption:**
April 01, 2023
**Addendum applies:**
No
**DLN:**
26053464003444

Dear Applicant:

We're pleased to tell you we determined you're exempt from federal income tax under Internal Revenue Code (IRC) Section 501(c)(3). Donors can deduct contributions they make to you under IRC Section 170. You're also qualified to receive tax deductible bequests, devises, transfers or gifts under Section 2055, 2106, or 2522. This letter could help resolve questions on your exempt status. Please keep it for your records.

Organizations exempt under IRC Section 501(c)(3) are further classified as either public charities or private foundations. We determined you're a private foundation within the meaning of Section 509(a).

You're required to file Form 990-PF, Return of Private Foundation or Section 4947(a)(1) Trust Treated as Private Foundation, annually, whether or not you have income or activity during the year. If you don't file a required return or notice for three consecutive years, your exempt status will be automatically revoked.

If we indicated at the top of this letter that an addendum applies, the enclosed addendum is an integral part of this letter.

For important information about your responsibilities as a tax-exempt organization, go to www.irs.gov/charities. Enter "4221-PF" in the search bar to view Publication 4221-PF, Compliance Guide for 501(c)(3) Private Foundations, which describes your recordkeeping, reporting, and disclosure requirements.

Sincerely,

Stephen a. Martin

Stephen A. Martin
Director, Exempt Organizations
Rulings and Agreements

# PLAINTIFFS' EXHIBIT 8

Survey and Legal Description of Property Associated with The People of La Junta for Preservation Along the Rio Grande

# SURVEY PLAT of a Total of 31.20 Acres in 3 parts and being Part of TRACT EIGHTH of the Partition Deed of Section 15, Mateo Carrasco survey in the Community of Redford, Texas (The Community Property) described in Volume 65, Pages 491-496 and recorded in the County Clerk Office of Presidio County, Texas. Said Tract of land also being recorded in Document #20060938 (Book 355, Pages 457 to 459) and recorded in the same Clerk Office.




Drafting By: Ruben V. Carrasco
Surveyed: 28 December 2024
For: Christina Hernandez
Physical Address: N/A.

Metes and Bounds descriptions for North Part, FM 170, Middle Part and South Part Areas Accompanies this Plat.

Surveyor's Notes:

1 - The Andres Orozco's 80 acres Tract (Vol 131, Pg 4-6) is encroaching the Partitioned Tract Eighth.

2 - Lot 5 as described in QCD Vol 65, Pg 499; and Lot 7 as described in Vol 65 Pg, 502

3 - El Polvo Archaeological Site 41PS21; 4.64 Ac; State Archaeological Landmark Designation; Vol 254, Pg 513-516.

4 - San Jose Church Archaeological Site; 0.29 Ac; State Archaeological Landmark Designation; Vol 254, Pg 517-520.

5 - No improvements are shown.

LEGEND:

- ○ Set 1/2" rebar with orange plastic cap marked "TRUJILLO RPLS 5358".
- ◎TT Found 1/2" rebar with orange plastic cap marked "TRUJILLO RPLS 5358".
- ◎FS Found 1/2" rebar with aluminum cap marked "+ FXS RPLS 2198".
- ◎WOE Found 1/2" iron pipe with green plastic cap marked "WOE INC".
- ◎ Found monument as noted.
- • Reference Point.
- —E— Overhead Power Line.
- Encroachment Area.

TRACT DEEDS AND DOCUMENTS OF REFERENCE:

1 - 100 varas x 100 varas Tract; Warranty Deed to Esequiel Hernandez and wife Maria de la Luz Hernandez; Vol 318, Pages 736-739; dated 05 Oct 2000.

2 - Tracts in Sec 15 Mateo Carrasco Survey; Conveyance Doc #20210000403 to Escolastica C. Orozco.

3 - Tracts in Sec 15 Mateo Carrasco Survey; WD to Jaime O. Armendariz; Vol 344, Pg 647; dated 28 Feb 2005 (Part of the Andres Orozco's 80 Acres Tract).

4 - Tracts in Section 15, Mateo Carrasco survey; WD to David Duke; Document #20060938; dated 22 Aug 2006

5 - County Road #20 (aka Polvo Road); Presidio County Roads Map approved by Presidio County Commissioner's Court.


*TONY TRUJILLO*
*LAND SURVEYING, INC.*

310 S. Willow - Pecos, Texas 79772
(432)-445-7245 Office,
(432)-488-8061 Cell
(432)-445-7326 Fax

© All Rights Reserved 2024
TBPLS Firm Registration No. 10013500

I hereby certify that this plat was based on an actual survey made on the ground by me or under my direct supervision, and is true and correct to the best of my knowledge and belief.

12/28/24

TONY TRUJILLO, Registered Professional Land Surveyor
No. 5358 - STATE OF TEXAS

STATE OF TEXAS REGISTERED TONY TRUJILLO 5358 PROFESSIONAL LAND SURVEYOR

METES AND BOUNDS DESCRIPTION (FIELD NOTES)

PRESIDIO COUNTY
STATE OF TEXAS

Metes and Bounds **Description** (Field Notes) **of** a survey of **31.20 Acres** out of the TRACT EIGHTH OF THE PARTITION DEED of Section 15, Mateo Carrasco survey in the Community of Redford, Texas ("The Community Property") described in Volume 65, Pages 491-496 and recorded in the County Clerk Office of Presidio County, Texas. Said Tract of Land also being recorded in Document #20060938 (Book 355, Pages 457-459) recorded in the same above said Clerk Office; these Description **consist of 3 Parts: 12.75 Acres for the "NORTH PART AREA", 14.17 Acres for the "MIDDLE PART AREA" and 4,28 Acres for the "SOUTH PART AREA"** and more particularly described as follows:

**North Part - the 12.75 Acres for the "NORTH PART AREA":**

Beginning at a 1/2 inch rebar with cap marked "TRUJILLO RPLS 5358" set to mark the north corner of this North Part and set along the northeast line of Section 15, Mateo Carrasco survey from which a conical rock mound in concrete found as the Northwest corner of Section 15, Mateo Carrasco survey bears N 48°42'19" W, 764.10 feet and a 1/2 inch rebar next to a 2 inch iron pipe short post found for the Northeast corner of Section 15, Mateo Carrasco survey bears S 48°42'19" E, 277.23 feet;

Thence S 48°42'19" E, 277.86 feet to a point for the northeast corner of this North Part and from which a 3/4 inch rebar in rock mound bears N 38°15'14" W, 2.54 feet;

Thence S 42°39'03" W, 2154.59 feet to a 1/2 inch rebar with cap marked "TRUJILLO RPLS 5358" set on the east right of way of FM Highway 170 and to mark the southern most corner of this North Part;

Thence N 00°05'24" E, 410.69 feet to a 1/2 inch rebar with cap marked "TRUJILLO RPLS 5358" set on the east right of way of FM Highway 170 and to mark the southwestern most corner of this North Part;

Thence N 42°39'03" E, 1845.52 feet to the Point of Beginning and containing 12.75 acres more or less.

**Middle Part - the 14.17 Acres for the "MIDDLE PART AREA":**

Beginning at a 1/2 inch rebar with cap marked "TRUJILLO RPLS 5358" set to mark the north corner of this Middle Part and set along the east right of way of FM Highway 170 and set to mark the north most corner of this Middle Part; post found for the Northeast corner of Section 15, Mateo Carrasco survey bears S 48°42'19" E, 277.23 feet;

Thence S 00°05'24" W, 410.69 feet to a 1/2 inch rebar with cap marked "TRUJILLO RPLS 5358" set to mark the northeastern most corner of this Middle Part and set along the east right of way of FM Highway 170;

Thence S 42°39'03" W, at 515.54 feet pass a 1/2 inch rebar with cap marked "TRUJILLO RPLS 5358" set along the line of this survey; at 777.76 feet pass another 1/2 inch rebar with cap marked "TRUJILLO RPLS 5358" set along the line of this survey; at 1422.08 pass another 1/2 inch rebar with cap marked "TRUJILLO RPLS 5358" set along the line of this survey and on the north line of the Redford Cemetery; at 1526.95 pass another 1/2 inch rebar with cap marked "TRUJILLO RPLS 5358" set along the line of this survey and on the south line of the Redford Cemetery; in all distances for the full distance of 2070.70 feet to a 1/2 inch rebar with cap marked "TRUJILLO RPLS 5358" set along the line of this survey and for the east corner of a 100 varas by 100 varas tract of land described in Volume 318 pages 736 - 739 of deed Records of Presidio County and to mark the south most corner of this Middle Part;

Thence N 47°21'24" W, 277.78 feet along the northeast line of the said 100 varas by 100 varas tract to a 1/2 inch rebar with cap marked "TRUJILLO RPLS 5358" set along the northwest line of this survey and for the north corner of the said 100 varas by 100 varas tract and to mark the southwestern most corner of this Middle Part;

Thence N 42°39'03" E, 2371.03 feet to the Point of Beginning and containing 14.17 acres more or less.



*TONY TRUJILLO*
*LAND SURVEYING, INC.*

310 S. Willow - Pecos, Texas 79772
(432)-445-7245 Office,
(432)-488-8061 Cell
(432)-445-7326 Fax
© All Rights Reserved 2024
TBPLS Firm Registration No. 10013500

METES AND BOUNDS DESCRIPTION (FIELD NOTES)

(Continue from previous page)

**South Part - the 4.28 Acres for the "SOUTH PART AREA"**:

Beginning at a 1/2 inch rebar with cap marked "TRUJILLO RPLS 5358" set along the northwest line of this survey and to mark the north corner of this South Part and being also the western most corner of the said 100 varas by 100 varas tract;

Thence S 47°21'24" E, 277.86 feet along the northeastern line of this survey and the southwestern line of the said 100 varas by 100 varas tract to a 1/2 inch rebar with cap marked "TRUJILLO RPLS 5358" set for the southern most corner of the said 100varas by 100 varas tract and for the northeastern most corner of this South Part;

Thence S 42°39'03" W; at 543.75 to pass a 1/2 inch rebar with cap marked "TRUJILLO RPLS 5358" set along the southeastern line of this survey and on the north line of a 0.29 of an acre San Jose Church Archaeological site recorded in Volume 254 Pages 517-520 as Archaeological Landmark Designation and a Corner of this Middle Part; at 555.15 feet pass a 1/2 inch rebar with cap marked "TRUJILLO RPLS 5358" set along the southeastern line of this survey and on the south line of said San Jose Church Archaeological site; in all for a total distance of 1098.90 feet to a 1/2 inc rebar with cap marked "WOE INC" found on the northeast bank of Rio Grande River for the southeastern most corner of this South Part;

Thence N 50°40'08" W; 44.21 feet pass to a 1/2 inch rebar with cap marked "TRUJILLO RPLS 5358" set along the southwestern line of this survey and on the northeast bank of Rio Grande River and for a corner along the southeastern most line of 4.64 acres El Polvo Archaeological Site 41PS21 recorded in Volume 254 Pages 513 - 516 as Archaeological Landmark Designation; and to mark a corner of this South Part;

Thence N 50°40'08" W, 234.03 feet along the southwestern most line of this survey and along the northeast bank of Rio Grande River to a 1/2 inch rebar with cap marked "TRUJILLO RPLS 5358" set to mark the southwestern most corner of this Middle Part;

Thence N 42°39'03" E; at 301.81 pass the eastern most line of the said El Polvo Site; in all for a total distance of 684.09 feet to the Point of Beginning and containing 4.28 acres more or less.

A survey plat of Tract Eighth of the Partition Deed of Section 15, Mateo Carrasco survey accompanies this Metes and bounds (Field Notes)

Bearings are based on monuments found along surveyed lines as shown between points "A" and "B" of the accompanied plat.

Surveyed: 28 December 2024
For: Christina Hernandez
Physical Address: N/A.



TONY TRUJILLO
LAND SURVEYING, INC.
310 S. Willow - Pecos, Texas 79772
(432)-445-7245 Office,
(432)-488-8061 Cell
(432)-445-7326 Fax
© All Rights Reserved 2024
TBPLS Firm Registration No. 10013500

I hereby certify that this Metes and Bounds was based on an actual survey made on the ground by me or under my direct supervision, and is true and correct to the best of my knowledge and belief.

12/28/24

TONY TRUJILLO, Registered Professional Land Surveyor
No. 5358 - STATE OF TEXAS

STATE OF TEXAS
REGISTERED
TONY TRUJILLO
5358
PROFESSIONAL
LAND SURVEYOR

# METES AND BOUNDS DESCRIPTION (FIELD NOTES)

PRESIDIO COUNTY
STATE OF TEXAS

Metes and Bounds **Description** (Field Notes) **of** a survey of **31.20 Acres** out of the TRACT EIGHTH OF THE PARTITION DEED of Section 15, Mateo Carrasco survey in the Community of Redford, Texas ("The Community Property") described in Volume 65, Pages 491-496 and recorded in the County Clerk Office of Presidio County, Texas. Said Tract of Land also being recorded in Document #20060938 (Book 355, Pages 457-459) recorded in the same above said Clerk Office; these Description **consist of 3 Parts: 12.75 Acres for the "NORTH PART AREA", 14.17 Acres for the "MIDDLE PART AREA" and 4,28 Acres for the "SOUTH PART AREA"** and more particularly described as follows:

**North Part - the 12.75 Acres for the "NORTH PART AREA":**

Beginning at a 1/2 inch rebar with cap marked "TRUJILLO RPLS 5358" set to mark the north corner of this North Part and set along the northeast line of Section 15, Mateo Carrasco survey from which a conical rock mound in concrete found as the Northwest corner of Section 15, Mateo Carrasco survey bears N 48°42'19" W, 764.10 feet and a 1/2 inch rebar next to a 2 inch iron pipe short post found for the Northeast corner of Section 15, Mateo Carrasco survey bears S 48°42'19" E, 277.23 feet;

Thence S 48°42'19" E, 277.86 feet to a point for the northeast corner of this North Part and from which a 3/4 inch rebar in rock mound bears N 38°15'14" W, 2.54 feet;

Thence S 42°39'03" W, 2154.59 feet to a 1/2 inch rebar with cap marked "TRUJILLO RPLS 5358" set on the east right of way of FM Highway 170 and to mark the southern most corner of this North Part;

Thence N 00°05'24" E, 410.69 feet to a 1/2 inch rebar with cap marked "TRUJILLO RPLS 5358" set on the east right of way of FM Highway 170 and to mark the southwestern most corner of this North Part;

Thence N 42°39'03" E, 1845.52 feet to the Point of Beginning and containing 12.75 acres more or less.

**Middle Part - the 14.17 Acres for the "MIDDLE PART AREA":**

Beginning at a 1/2 inch rebar with cap marked "TRUJILLO RPLS 5358" set to mark the north corner of this Middle Part and set along the east right of way of FM Highway 170 and set to mark the north most corner of this Middle Part; post found for the Northeast corner of Section 15, Mateo Carrasco survey bears S 48°42'19" E, 277.23 feet;

Thence S 00°05'24" W, 410.69 feet to a 1/2 inch rebar with cap marked "TRUJILLO RPLS 5358" set to mark the northeastern most corner of this Middle Part and set along the east right of way of FM Highway 170;

Thence S 42°39'03" W, at 515.54 feet pass a 1/2 inch rebar with cap marked "TRUJILLO RPLS 5358" set along the line of this survey; at 777.76 feet pass another 1/2 inch rebar with cap marked "TRUJILLO RPLS 5358" set along the line of this survey; at 1422.08 pass another 1/2 inch rebar with cap marked "TRUJILLO RPLS 5358" set along the line of this survey and on the north line of the Redford Cemetery; at 1526.95 pass another 1/2 inch rebar with cap marked "TRUJILLO RPLS 5358" set along the line of this survey and on the south line of the Redford Cemetery; in all distances for the full distance of 2070.70 feet to a 1/2 inch rebar with cap marked "TRUJILLO RPLS 5358" set along the line of this survey and for the east corner of a 100 varas by 100 varas tract of land described in Volume 318 pages 736 - 739 of deed Records of Presidio County and to mark the south most corner of this Middle Part;

Thence N 47°21'24" W, 277.78 feet along the northeast line of the said 100 varas by 100 varas tract to a 1/2 inch rebar with cap marked "TRUJILLO RPLS 5358" set along the northwest line of this survey and for the north corner of the said 100 varas by 100 varas tract and to mark the southwestern most corner of this Middle Part;

Thence N 42°39'03" E, 2371.03 feet to the Point of Beginning and containing 14.17 acres more or less.



*TONY TRUJILLO*
*LAND SURVEYING, INC.*

310 S. Willow - Pecos, Texas 79772
(432)-445-7245 Office,
(432)-488-8061 Cell
(432)-445-7326 Fax
© All Rights Reserved 2024
TBPLS Firm Registration No. 10013500

METES AND BOUNDS DESCRIPTION (FIELD NOTES)

(Continue from previous page)

**South Part - the 4.28 Acres for the "SOUTH PART AREA"**:

Beginning at a 1/2 inch rebar with cap marked "TRUJILLO RPLS 5358" set along the northwest line of this survey and to mark the north corner of this South Part and being also the western most corner of the said 100 varas by 100 varas tract;

Thence S 47°21'24" E, 277.86 feet along the northeastern line of this survey and the southwestern line of the said 100 varas by 100 varas tract to a 1/2 inch rebar with cap marked "TRUJILLO RPLS 5358" set for the southern most corner of the said 100varas by 100 varas tract and for the northeastern most corner of this South Part;

Thence S 42°39'03" W; at 543.75 to pass a 1/2 inch rebar with cap marked "TRUJILLO RPLS 5358" set along the southeastern line of this survey and on the north line of a 0.29 of an acre San Jose Church Archaeological site recorded in Volume 254 Pages 517-520 as Archaeological Landmark Designation and a Corner of this Middle Part; at 555.15 feet pass a 1/2 inch rebar with cap marked "TRUJILLO RPLS 5358" set along the southeastern line of this survey and on the south line of said San Jose Church Archaeological site; in all for a total distance of 1098.90 feet to a 1/2 inc rebar with cap marked "WOE INC" found on the northeast bank of Rio Grande River for the southeastern most corner of this South Part;

Thence N 50°40'08" W; 44.21 feet pass to a 1/2 inch rebar with cap marked "TRUJILLO RPLS 5358" set along the southwestern line of this survey and on the northeast bank of Rio Grande River and for a corner along the southeastern most line of 4.64 acres El Polvo Archaeological Site 41PS21 recorded in Volume 254 Pages 513 - 516 as Archaeological Landmark Designation; and to mark a corner of this South Part;

Thence N 50°40'08" W, 234.03 feet along the southwestern most line of this survey and along the northeast bank of Rio Grande River to a 1/2 inch rebar with cap marked "TRUJILLO RPLS 5358" set to mark the southwestern most corner of this Middle Part;

Thence N 42°39'03" E; at 301.81 pass the eastern most line of the said El Polvo Site; in all for a total distance of 684.09 feet to the Point of Beginning and containing 4.28 acres more or less.

A survey plat of Tract Eighth of the Partition Deed of Section 15, Mateo Carrasco survey accompanies this Metes and bounds (Field Notes)

Bearings are based on monuments found along surveyed lines as shown between points "A" and "B" of the accompanied plat.

Surveyed: 28 December 2024
For: Christina Hernandez
Physical Address: N/A.



TONY TRUJILLO
LAND SURVEYING, INC.
310 S. Willow - Pecos, Texas 79772
(432)-445-7245 Office,
(432)-488-8061 Cell
(432)-445-7326 Fax
© All Rights Reserved 2024
TBPLS Firm Registration No. 10013500

I hereby certify that this Metes and Bounds was based on an actual survey made on the ground by me or under my direct supervision, and is true and correct to the best of my knowledge and belief.

12/28/24

TONY TRUJILLO, Registered Professional Land Surveyor
No. 5358 - STATE OF TEXAS

STATE OF TEXAS REGISTERED TONY TRUJILLO 5358 PROFESSIONAL LAND SURVEYOR

**EXHIBIT A**
**LEGAL DESCRIPTION**

A Total of 31.20 acres in Three (3) parts North Part Area 12.75 acres, Middle Part Area 14.17 acres and South Part Area 4.28 acres and being part of Tract Eighth of the Partition Deed of Section Fifteen (15), Mateo Carrasco Survey located in the Community of Redford, Texas (The Community Property) described in Volume 65, Pages 491-496 and recorded in the County Clerk Office of Presidio County, Texas. Said 31.20 acres more particularly described in a Metes and Bounds Description attached hereto as Exhibit "A" and Plat of the survey attached hereto as Exhibit "B", dated December 28, 2024, prepared by Tony Trujillo, R.P.L.S. No. 5358, which Exhibits are made a part of this policy by reference and incorporated herein for all purposes.

SAVE AND ACCEPT 4.311 acres out of the Tract Eighth of the Partition Deed of Section 15, Mateo Carrasco survey in the Community of Redford, Texas ("The Community Property") described in Volume 65, Pages 491-496 and recorded in the County Clerk Officer of Presidio County, Texas. Said Tract of land also being recorded in part of Document #20240000339 and being out of the lands described in Document -#20060938 (Boock 355, Pages 457=459) recorded in the same above said Clerk Office, and more particularly described in a Metes and Bounds attached hereto as Exhibit "C" and Survey as Exhibit "D", incorporated herein for all purposes.

NOTE: The Company is prohibited from insuring the area, acres or quantity of land described herein. Any statement in the legal description set out in Schedule A of the area, acres or quantity of land is not a representation that such area, acreage or quantity is correct but is made only for informational and/or identification purposes and does not override Item #2 of Schedule B hereof.

**EXHIBIT C**

METES AND BOUNDS DESCRIPTION (FIELD NOTES)

PRESIDIO COUNTY
STATE OF TEXAS

Metes and Bounds Description (Field Notes) of a survey of 4.311 Acres out of the TRACT EIGHTH OF THE PARTITION DEED of Section 15, Mateo Carrasco survey in the Community of Redford, Texas ("The Community Property") described in Volume 65, Pages 491-496 and recorded in the County Clerk Office of Presidio County, Texas. Said Tract of Land also being recorded in part of Document #20240000339 and being out of the lands described in Document 20060938 (Book 355, Pages 457-459) recorded in the same above said Clerk Office; and more particularly described as follows::

**Commencing at a Partition Point** located along the northern most line of Section 15, Mateo Carrasco survey; this commencing point being the division line of the Partitioned Tract 2 (as assigned in THE PARTITION DEED to Teofilo Carrasco and wife Apolonia Carrasco) and the Partitioned Tract 8 (as assigned in THE PARTITION DEED to Victar C. Evaro and husband Pablo Evaro (Chico)); from the commencing point an iron shaft in rock mound bears N 48°27'22" W, 43.43 feet; a 100D nail with red plastic cap marked "SPANAGEL RPLS 4761" bears S 31°58'44" W, 20.89 feet; a stone mound in conical concrete known as the north corner of Section 15, Mateo Carrasco survey bears N 48°42'19" W, 764.10 feet; and a 1/2 inch corrugated reinforcing bar in concrete and next to a 2 inch iron pipe short post known as the west corner of Section 15, Mateo Carrasco survey bears S 48°42'19" E, 555.09 feet;

Thence S 49°39'03" W, 4614.80 feet along the common line of mentioned Partition Tracts 2 and 8 to **1/2 inch rebar with orange plastic cap marked "TRUJILLO RPLS 5358", recovered to mark the north corner of this Tract and the Point of Beginning (POB) of this survey** and this **POB** being also the western most corner of a 100 varas by 100 varas tract described in Warranty Deed Volume 318 Pages 736-739 to Esequiel Hernandez and wife Maria De La Luz Hernandez;

Thence S 47°20'56" E, at 233.94 feet pass the northwest line of the Andres Orozco's 40 Acres tract; and for a total distance of 277.78 feet to a recovered 1/2 inch rebar with orange plastic cap marked "TRUJILLO RPLS 5358" to mark the east corner of this tract and being along the southeast line of the mentioned Partitioned Tract 8 and this corner being also the southern most corner of a 100 varas by 100 varas tract described in Warranty Deed Volume 318 Pages 736-739 to Esequiel Hernandez and wife Maria De La Luz Hernandez;

Thence S 42°39'03" W, at 237.91 feet pass the north line of a 0.97 acre tract described in Document #201600010, at 415.71 pass the east line of Lot 5 as described in Vol 65 Page 499; at 490.20 feet pass the west line of the said 0.97 acre tract; at 512.93 feet pass the west line of said Lot 5; at 610.15 feet pass the east line of Lot 7 as described in Volume 65 Page 502; in all for a total distance of 667.99 feet to a calculated point to mark the southern most corner of this survey; and from which a found 5/8 inch rebar with aluminum cap marked "+ FXS RPLS 2198" as the southern most corner of the said 0.97 acre tract bears N 79°41'57" E, 145.14 feet; another found 5/8 inch rebar with aluminum cap marked "+ FXS RPLS 2198" as the eastern most corner of a 0.85 acre tract owned by Jesus Valenzuela bears N 83°49'32" E, 430.02 feet; a found 1/2 inch rebar with yellow plastic cap marked "BASSHAM LSLS" as the south eastern most corner of the 4.64 acres tract known as "El Polvo Archaeological Site 41PS21" bears N 65°06'23" E, 146.78 feet east of the 4.311 acres tract; the calculated southern most corner of the said "El Polvo Archaeological Site" bears S 10°57'33" E, 58.89 feet; and from this calculated point in a S 54°17'15" E direction, at 49.9 feet pass the southeastern line of the said El Polvo Archaeological Site" in all for a distance of 285.15 feet is a found 1/2 inch rebar with plastic green cap marked "WOE INC" found to be a reference mark to this survey;

Thence N 50°39'57" W, at 44.22 feet pass the northwest line of the Andres Orozco's 40 Acres tract; at 50.28 feet pass the west line of the said Lot 7; at 187.62 feet pass the south western line of the said "El Polvo Archaeological Site"; in all for a distance of 278.25 feet to calculated point to mark the southwestern most corner of this survey;

Thence N 42°39'03" E, at 24.06 feet pass the west line of said "El Polvo Archaeological Site"; at 178.55 feet pass the north western most corner of said Lot 7; at 275.77 feet pass the north eastern most corner of said Lot 7; at 372.99 feet pass the northwestern most corner of the said Lot 5; at 399.40 feet pass the east line of the said "El Polvo Archaeological Site"; at 470.21 feet pass the northeastern most corner of said Lot 5; in all for a total distance of 684.09 feet **to the Point of Beginning and containing 4.311 acres more or less.**

Bearings and distances are grid, TXSPCS, TXSC, NAD83, to convert to true bearing rotate by theta angle of -2°37'44" to convert to true distance divide by combined factor of 0.9997416.

*Tony Trujillo*
*LAND SURVEYING, INC.*

310 S. Willow - Pecos, Texas 79772
(432)-445-7245 Office,
(432)-448-8061 Cell
(432)-445-7326 Fax
© All Rights Reserved 2025
TBPELS Firm Registration No. 10013500 - Job #TTS24144B

I hereby certify that this plat was based on an actual survey made on the ground by me or under my direct supervision, and is true and correct to the best of my knowledge and belief.

[signature] 5/30/2025

TONY TRUJILLO, Registered
Professional Land Surveyor
No. 5358 - STATE OF TEXAS

STATE OF TEXAS REGISTERED TONY TRUJILLO 5358 PROFESSIONAL LAND SURVEYOR

# SURVEY PLAT of a 4.311 acres Tract of Land being Part of TRACT EIGHTH of the Partition Deed of Section 15, Mateo Carrasco survey in Community of Redford described in Volume 65, Pages 491-496 and recorded in Clerk Office of Presidio County, Texas. Said Tract of land being recorded in Part of Document #20240000339 and being out of lands described in Document #20060938 and recorded in the same Clerk Office.




Bearings and distances are grid, TXSPCS, TXSC, NAD83, to convert to true bearing rotate by theta of -2°37'44", to convert to ground distance divide by combined factor of 0.9997416.

0' 50' 100' 200'
Scale 1" = 100'
Field Notes Accompanies this Plat.

Drafting By: Ruben V. Carrasco
Surveyed: 17 April 2025
For: Christina Hernandez
Physical Address: N/A.

Surveyor's Notes:

1 - Andres Orozco's 40 acres Tract (Vol 131, Pg 4-6 and Vol 344 Pg 647) is encroaching the Partitioned Tract Eighth of the original partition of Sec 15.
2 - Lot 5 as described in QCD Vol 65, Pg 499; and Lot 7 as described in Vol 65 Pg, 502
3 - El Polvo Archaeological Site 41PS21; 4.64 Ac; State Archaeological Landmark Designation; Vol 254, Pg 513-516.
5 -Not all improvements shown; the ones shown are based on previous surveys and from aerial photos.

LEGEND:

- ○ Set 1/2" rebar with orange plastic cap marked "TRUJILLO RPLS 5358".
- ◎TT Found 1/2" rebar with orange plastic cap marked "TRUJILLO RPLS 5358".
- ◎FS Found 5/8" rebar with aluminum cap marked "+ FXS RPLS 2198".
- ◎WOE Found 1/2" iron pipe with green plastic cap marked "WOE INC".
- ◎ Found monument as noted.
- • Reference Point.
- Encroachment Area.
- — — Polvo Site archaeological boundary.

TRACT DEEDS AND DOCUMENTS OF REFERENCE:

1 - 100 varas x 100 varas Tract; Warranty Deed to Esequiel Hernandez and wife Maria de la Luz Hernandez; Vol 318, Pages 736-739; dated 05 Oct 2000.
2 - Tracts in Sec 15 Mateo Carrasco Survey; Conveyance Doc #20210000403 to Escolastica C. Orozco.
3 - Tracts in Sec 15 Mateo Carrasco Survey; WD to Jaime O. Armendariz; Vol 344, Pg 647; dated 28 Feb 2005 (Part of the Andres Orozco's 40 Acres Tract).
4 - Tracts in Section 15, Mateo Carrasco survey; WD to David Duke; Document #20060938; dated 22 Aug 2006
5 - Tract out of the Partitioned Tract 8, People of La Junta for Preservation GWD Doc # 20240000339 dated 7 May 2025.

EXHIBIT D

TONY TRUJILLO LAND SURVEYING, INC.
310 S. Willow - Pecos, Texas 79772
(432)-445-7245 Office,
(432)-448-8061 Cell
(432)-445-7326 Fax
© All Rights Reserved 2025
TBPELS Firm Registration No. 10013500 - Job #TTS24144B

I hereby certify that this plat was based on an actual survey made on the ground by me or under my direct supervision, and is true and correct to the best of my knowledge and belief.

[signature] 5/30/2025

TONY TRUJILLO, Registered Professional Land Surveyor No. 5358 - STATE OF TEXAS

STATE OF TEXAS REGISTERED TONY TRUJILLO 5358 PROFESSIONAL LAND SURVEYOR

EXHIBIT D

# SURVEY PLAT of a 4.311 acres Tract of Land being Part of TRACT EIGHTH of the Partition Deed of Section 15, Mateo Carrasco survey in Community of Redford described in Volume 65, Pages 491-496 and recorded in Clerk Office of Presidio County, Texas. Said Tract of land being recorded in Part of Document #20240000339 and being out of lands described in Document #20060938 and recorded in the same Clerk Office.

Bearings and distances are grid, TXSPCS, TXSC, NAD83, to convert to true bearing rotate by theta of -2°37'44", to convert to ground distance divide by combined factor of 0.9997416.

Scale 1" = 100'

Field Notes Accompanies this Plat.

Drafting By: Ruben V. Carrasco
Surveyed: 17 April 2025
For: Christina Hernandez
Physical Address: N/A.

Surveyor's Notes:

1 - Andres Orozco's 40 acres Tract (Vol 131, Pg 4-6 and Vol 344 Pg 647) is encroaching the Partitioned Tract Eighth of the original partition of Sec 15.

2 - Lot 5 as described in QCD Vol 65, Pg 499; and Lot 7 as described in Vol 65 Pg, 502

3 - El Polvo Archaeological Site 41PS21; 4.64 Ac; State Archaeological Landmark Designation; Vol 254, Pg 513-516.

5 -Not all improvements shown; the ones shown are based on previous surveys and from aerial photos.




LEGEND:

- ○ Set 1/2" rebar with orange plastic cap marked "TRUJILLO RPLS 5358".
- TT Found 1/2" rebar with orange plastic cap marked "TRUJILLO RPLS 5358".
- FS Found 5/8" rebar with aluminum cap marked "+ FXS RPLS 2198".
- WOE Found 1/2" iron pipe with green plastic cap marked "WOE INC".
- ◎ Found monument as noted.
- • Reference Point.
- Encroachment Area.
- — — — Polvo Site archaeological boundary.

TRACT DEEDS AND DOCUMENTS OF REFERENCE:

1 - 100 varas x 100 varas Tract; Warranty Deed to Esequiel Hernandez and wife Maria de la Luz Hernandez; Vol 318, Pages 736-739; dated 05 Oct 2000.

2 - Tracts in Sec 15 Mateo Carrasco Survey; Conveyance Doc #20210000403 to Escolastica C. Orozco.

3 - Tracts in Sec 15 Mateo Carrasco Survey; WD to Jaime O. Armendariz; Vol 344, Pg 647; dated 28 Feb 2005 (Part of the Andres Orozco's 40 Acres Tract).

4 - Tracts in Section 15, Mateo Carrasco survey; WD to David Duke; Document #20060938; dated 22 Aug 2006

5 - Tract out of the Partitioned Tract 8, People of La Junta for Preservation GWD Doc # 20240000339 dated 7 May 2025.

TONY TRUJILLO LAND SURVEYING, INC.

310 S. Willow - Pecos, Texas 79772
(432)-445-7245 Office,
(432)-448-8061 Cell
(432)-445-7326 Fax

© All Rights Reserved 2025

TBPELS Firm Registration No. 10013500 - Job #TTS24144B

I hereby certify that this plat was based on an actual survey made on the ground by me or under my direct supervision, and is true and correct to the best of my knowledge and belief.

5/30/2025

TONY TRUJILLO, Registered Professional Land Surveyor
No. 5358 - STATE OF TEXAS

STATE OF TEXAS REGISTERED PROFESSIONAL LAND SURVEYOR TONY TRUJILLO 5358

# EXHIBIT A
## LEGAL DESCRIPTION

A Total of 31.20 acres in Three (3) parts North Part Area 12.75 acres, Middle Part Area 14.17 acres and South Part Area 4.28 acres and being part of Tract Eighth of the Partition Deed of Section Fifteen (15), Mateo Carrasco Survey located in the Community of Redford, Texas (The Community Property) described in Volume 65, Pages 491-496 and recorded in the County Clerk Office of Presidio County, Texas. Said 31.20 acres more particularly described in a Metes and Bounds Description attached hereto as Exhibit "A" and Plat of the survey attached hereto as Exhibit "B", dated December 28, 2024, prepared by Tony Trujillo, R.P.L.S. No. 5358, which Exhibits are made a part of this policy by reference and incorporated herein for all purposes.

SAVE AND ACCEPT 4.311 acres out of the Tract Eighth of the Partition Deed of Section 15, Mateo Carrasco survey in the Community of Redford, Texas ("The Community Property") described in Volume 65, Pages 491-496 and recorded in the County Clerk Officer of Presidio County, Texas. Said Tract of land also being recorded in part of Document #20240000339 and being out of the lands described in Document -#20060938 (Boock 355, Pages 457=459) recorded in the same above said Clerk Office, and more particularly described in a Metes and Bounds attached hereto as Exhibit "C" and Survey as Exhibit "D", incorporated herein for all purposes.

NOTE: The Company is prohibited from insuring the area, acres or quantity of land described herein. Any statement in the legal description set out in Schedule A of the area, acres or quantity of land is not a representation that such area, acreage or quantity is correct but is made only for informational and/or identification purposes and does not override Item #2 of Schedule B hereof.

**EXHIBIT C**

METES AND BOUNDS DESCRIPTION (FIELD NOTES)

PRESIDIO COUNTY
STATE OF TEXAS

Metes and Bounds Description (Field Notes) of a survey of 4.311 Acres out of the TRACT EIGHTH OF THE PARTITION DEED of Section 15, Mateo Carrasco survey in the Community of Redford, Texas ("The Community Property") described in Volume 65, Pages 491-496 and recorded in the County Clerk Office of Presidio County, Texas. Said Tract of Land also being recorded in part of Document #20240000339 and being out of the lands described in Document 20060938 (Book 355, Pages 457-459) recorded in the same above said Clerk Office; and more particularly described as follows::

**Commencing at a Partition Point** located along the northern most line of Section 15, Mateo Carrasco survey; this commencing point being the division line of the Partitioned Tract 2 (as assigned in THE PARTITION DEED to Teofilo Carrasco and wife Apolonia Carrasco) and the Partitioned Tract 8 (as assigned in THE PARTITION DEED to Victar C. Evaro and husband Pablo Evaro (Chico)); from the commencing point an iron shaft in rock mound bears N 48°27'22" W, 43.43 feet; a 100D nail with red plastic cap marked "SPANAGEL RPLS 4761" bears S 31°58'44" W, 20.89 feet; a stone mound in conical concrete known as the north corner of Section 15, Mateo Carrasco survey bears N 48°42'19" W, 764.10 feet; and a 1/2 inch corrugated reinforcing bar in concrete and next to a 2 inch iron pipe short post known as the west corner of Section 15, Mateo Carrasco survey bears S 48°42'19" E, 555.09 feet;

Thence S 49°39'03" W, 4614.80 feet along the common line of mentioned Partition Tracts 2 and 8 to **1/2 inch rebar with orange plastic cap marked "TRUJILLO RPLS 5358", recovered to mark the north corner of this Tract and the Point of Beginning (POB) of this survey** and this **POB** being also the western most corner of a 100 varas by 100 varas tract described in Warranty Deed Volume 318 Pages 736-739 to Esequiel Hernandez and wife Maria De La Luz Hernandez;

Thence S 47°20'56" E, at 233.94 feet pass the northwest line of the Andres Orozco's 40 Acres tract; and for a total distance of 277.78 feet to a recovered 1/2 inch rebar with orange plastic cap marked "TRUJILLO RPLS 5358" to mark the east corner of this tract and being along the southeast line of the mentioned Partitioned Tract 8 and this corner being also the southern most corner of a 100 varas by 100 varas tract described in Warranty Deed Volume 318 Pages 736-739 to Esequiel Hernandez and wife Maria De La Luz Hernandez;

Thence S 42°39'03" W, at 237.91 feet pass the north line of a 0.97 acre tract described in Document #201600010, at 415.71 pass the east line of Lot 5 as described in Vol 65 Page 499; at 490.20 feet pass the west line of the said 0.97 acre tract; at 512.93 feet pass the west line of said Lot 5; at 610.15 feet pass the east line of Lot 7 as described in Volume 65 Page 502; in all for a total distance of 667.99 feet to a calculated point to mark the southern most corner of this survey; and from which a found 5/8 inch rebar with aluminum cap marked "+ FXS RPLS 2198" as the southern most corner of the said 0.97 acre tract bears N 79°41'57" E, 145.14 feet; another found 5/8 inch rebar with aluminum cap marked "+ FXS RPLS 2198" as the eastern most corner of a 0.85 acre tract owned by Jesus Valenzuela bears N 83°49'32" E, 430.02 feet; a found 1/2 inch rebar with yellow plastic cap marked "BASSHAM LSLS" as the south eastern most corner of the 4.64 acres tract known as "El Polvo Archaeological Site 41PS21" bears N 65°06'23" E, 146.78 feet east of the 4.311 acres tract; the calculated southern most corner of the said "El Polvo Archaeological Site" bears S 10°57'33" E, 58.89 feet; and from this calculated point in a S 54°17'15" E direction, at 49.9 feet pass the southeastern line of the said El Polvo Archaeological Site" in all for a distance of 285.15 feet is a found 1/2 inch rebar with plastic green cap marked "WOE INC" found to be a reference mark to this survey;

Thence N 50°39'57" W, at 44.22 feet pass the northwest line of the Andres Orozco's 40 Acres tract; at 50.28 feet pass the west line of the said Lot 7; at 187.62 feet pass the south western line of the said "El Polvo Archaeological Site"; in all for a distance of 278.25 feet to calculated point to mark the southwestern most corner of this survey;

Thence N 42°39'03" E, at 24.06 feet pass the west line of said "El Polvo Archaeological Site"; at 178.55 feet pass the north western most corner of said Lot 7; at 275.77 feet pass the north eastern most corner of said Lot 7; at 372.99 feet pass the northwestern most corner of the said Lot 5; at 399.40 feet pass the east line of the said "El Polvo Archaeological Site"; at 470.21 feet pass the northeastern most corner of said Lot 5; in all for a total distance of 684.09 feet **to the Point of Beginning and containing 4.311 acres more or less.**

Bearings and distances are grid, TXSPCS, TXSC, NAD83, to convert to true bearing rotate by theta angle of -2°37'44" to convert to true distance divide by combined factor of 0.9997416.

TONY TRUJILLO
LAND SURVEYING, INC.

310 S. Willow - Pecos, Texas 79772
(432)-445-7245 Office,
(432)-448-8061 Cell
(432)-445-7326 Fax
© All Rights Reserved 2025
TBPELS Firm Registration No. 10013500 - Job #TTS24144B

I hereby certify that this plat was based on an actual survey made on the ground by me or under my direct supervision, and is true and correct to the best of my knowledge and belief.

5/20/2025

TONY TRUJILLO, Registered
Professional Land Surveyor
No. 5358 - STATE OF TEXAS

STATE OF TEXAS
REGISTERED
TONY TRUJILLO
5358
PROFESSIONAL
LAND SURVEYOR

# PLAINTIFFS' EXHIBIT 9

Declaration of Christina Hernandez, Individually

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| People of the La Junta for Preservation; Far Flung Outdoor Center; Andrew Austin; and, Christina Hernandez,<br><br>*Plaintiffs*,<br><br>v.<br><br>Department of Homeland Security; Markwayne Mullin, in his official capacity as the Secretary of the United States Department of Homeland Security; Customs and Border Protection; Rodney S. Scott, in his official capacity as the Commissioner of United States Customs and Border Protection; Lloyd M. Easterling, in his official capacity as the Chief Patrol Agent of the United States Border Patrol's Big Bend Sector; Department of the Interior; Doug Burgum, in his official capacity as the Secretary of the Interior; and, National Park Service,<br>*Defendants.* | § § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 26-5245 |

**Declaration of Christina Hernandez**

I, Christina Hernandez, declare as follows:

1. My name is Christina Hernandez. I am over eighteen years of age, am competent to make this declaration, and have personal knowledge of the facts stated below.
2. I am the founder and director of People of La Junta for Preservation ("PLJP"), an organization dedicated to preserving the cultural, historical, archaeological, natural, and religious heritage of the La Junta and greater Big Bend region.

3. I am a direct lineal descendant of Aboriginal People of La Junta and Lipan Apache families of the Barrio de los Lipanes in Presidio, Texas. I am an enrolled member of the Lipan Apache Tribe.

4. I have been honored as an Eagle Staff Bearer by the Kolkahéndé (Prairie Grass) clan of the Lipan Apache Tribe of Texas, as well as by Jumano Apache, Chiso, and Concho Elders of La Junta de los Rios.

5. My connection to the Rio Grande and the greater Big Bend and La Junta landscape is not only historical or cultural. It is religious and is part of my continuing religious practice.

6. According to the teachings I received from family elders and continue to practice, the Rio Grande is living and is a relative. I do not understand the River simply as water, a political boundary, or the physical setting around other sacred places.

7. My religious understanding connects the River with the land, ancestors, plants, animals, springs, tributaries, caves, mountains, and the night sky.

8. These beliefs are part of my present religious practice. They are not simply beliefs about events that occurred in the past.

9. I pray beside the Rio Grande. I gather water directly from the Rio Grande for ceremonial and religious use. I gather plants and other natural materials from the River landscape. I visit and care for ancestral resting places. I travel to places of religious significance. I also teach younger generations about their responsibilities toward the River, our ancestors, and the surrounding landscape.

10. Water gathered directly from the Rio Grande is used in coming-of-age ceremonies, funerals and practices surrounding death, prayers, blessings, and the opening of gatherings and events.

11. The water is not merely a symbol or an interchangeable ingredient in those practices. Its religious significance comes in part from the fact that it comes from this particular River

and from the relationship among the River, the ancestral landscape, the practitioner, the ancestors, and the ceremony.

12. For that reason, bottled water, tap water, or water obtained from another source is not necessarily a religiously equivalent substitute for water gathered from the Rio Grande.

13. The act of approaching the River and gathering the water is itself part of the religious practice.

14. I and other practitioners also gather cattail pollen from cattails growing along the Rio Grande for ceremonial use.

15. The religious practice involving cattail pollen includes approaching the plants, gathering with prayer and intention, taking what is appropriate, and carrying what has been gathered from the River landscape into ceremony.

16. The practice therefore cannot be replaced simply by purchasing pollen or obtaining pollen from an unrelated location. The act of gathering and the relationship among the plant, the River, the place, and the practitioner are themselves parts of the religious practice.

17. Natural materials gathered from the River landscape also form part of funerary and burial practices. River water, pollen, plants, earth, and prayer are used in practices that connect the deceased to the land, the River, the ancestors, and continuing generations.

18. Within my religious understanding, ancestors remain relatives after death. My religious responsibilities toward them include visiting their resting places, praying there, caring for those places, protecting them from disturbance, and teaching younger generations who rests there and what obligations succeeding generations inherit.

19. Physical destruction of an ancestral burial would be devastating. But destruction is not the only way that government activity can interfere with those religious obligations.

20. If a burial place remains physically intact but I cannot reach it because of a wall, road, restricted zone, gate, construction area, or access restriction, I cannot fully perform the religious responsibilities that require my presence at that place.

21. Caves, rock shelters, springs, rock imagery, gathering places, and other locations throughout the Rio Grande landscape also form part of the sacred geography in which I practice.

22. Some of those places are associated with ancestors who lived, prayed, gathered, taught, made imagery, or left objects there. Some continue to be visited for prayer, reflection, teaching, ceremony, and connection with ancestors.

23. These places are not interchangeable. A cave cannot simply be replaced with another cave. A spring cannot necessarily be replaced with another spring. An ancestral marking cannot be removed from where it was created without changing its relationship to that place. A burial place cannot be replaced by a location selected somewhere else.

24. Some of my religious practices are seasonal or depend upon natural events or circumstances that cannot be scheduled in advance.

25. For example, cattail pollen can be gathered only when the plants are producing pollen. Funeral obligations arise when a death occurs. Coming-of-age practices take place when a person reaches the appropriate stage of life. Other practices may depend upon the condition of the River, the season, or the moon and night sky.

26. Because of this, meaningful religious access cannot always be reduced to scheduled visiting hours, predetermined gates, advance permission, or designated access points. The appropriate time, place, manner, or route of access may be determined by religious obligation and natural conditions.

27. The natural night sky is also part of my religious landscape.

28. My teachings and religious practices understand the sky, moon, stars, darkness, land, and River as interconnected. Teachings concerning White Changing Woman are particularly important to me and concern life, transformation, renewal, womanhood, continuity, and relationship with the surrounding world.

29. Natural darkness is therefore more than a scenic or recreational quality to me. Prayer, teaching, and ceremony take place within a landscape in which the transition into darkness, visibility of the moon and stars, and absence of artificial illumination have religious significance.

30. Permanent security lighting, floodlights, illuminated patrol roads, construction lighting, towers, and similar infrastructure along the River corridor would alter those conditions even where the ground at a particular religious location was not physically disturbed.

31. Artificial illumination can interfere with prayer, ceremony, teaching, and my ability to transmit teachings concerning the relationship among darkness, the sky, the River, the land, and White Changing Woman.

32. PLJP owns and stewards more than 100 acres of Indigenous ancestral lands along the Rio Grande, including substantial River frontage.

33. Portions of those lands have received archaeological and historic designations, but those classifications do not fully describe the property's current religious significance and use.

34. The property remains in active religious use. I and others pray there, gather there, approach the River there, collect River water for religious use, gather plants and ceremonial materials, teach younger generations, honor ancestors, and carry out continuing responsibilities toward the land.

35. My religious relationship with the Rio Grande is not confined to PLJP's property boundaries. I understand the River and surrounding landscape as connected rather than as a collection of unrelated parcels separated by modern property or political boundaries.

36. The sacred geography relevant to my religious practices includes the Rio Grande itself, riverbanks, springs, tributaries, arroyos, caves, rock shelters, mountains, burial grounds, gathering locations, and travel corridors.

37. Some locations of religious significance are known principally through Indigenous families and communities rather than through governmental inventories.

38. Some sacred locations are intentionally not publicly identified because disclosure of caves, burials, imagery, ceremonial locations, sacred objects, or gathering places can expose them to looting, vandalism, collection, disturbance, or desecration.

39. The fact that a place does not appear on a federal inventory does not mean that it lacks present religious significance or that it is not presently used.

40. I understand that the federal government proposes to construct border infrastructure through portions of the greater Big Bend and Rio Grande landscape, including physical barriers, roads, access routes, excavation, grading, staging areas, lighting, cameras, sensors, and related infrastructure.

41. Those activities threaten my religious practices in ways that are not limited to physical destruction of a particular sacred place.

42. A wall could leave a cave physically intact but prevent me or other practitioners from reaching it. It could leave a stand of cattails intact but prevent access when pollen is available. It could leave a burial physically untouched while separating descendants from the place where religious obligations must be performed.

43. Roads, gates, patrol zones, construction areas, surveillance infrastructure, cameras, lighting, grading, excavation, and recurring activity may also alter the conditions under which prayer, gathering, teaching, burial-related practices, and religious travel occur.

44. My religious understanding of the Rio Grande does not terminate at the edge of a park, county, private parcel, or Border Patrol sector. The River predates those boundaries, and the religious relationship I have described extends through a connected landscape.

45. For that reason, the effect of the proposed construction on my religious exercise cannot be determined solely by asking whether the physical footprint of a wall crosses a site identified on a government map.

46. Interference with access, movement, gathering, natural darkness, privacy, the River, natural materials, or the relationship among religiously significant places can interfere with my religious exercise even when construction does not directly destroy a burial or other identified site.

47. These are practices in which I presently engage and intend to continue engaging. I continue to gather water from the Rio Grande, use that water ceremonially, gather cattail pollen, pray beside the River, visit and protect ancestral resting places, travel to sacred locations, practice and teach beneath the natural night sky, and transmit these responsibilities to younger generations.

48. I intend to continue these religious practices in the future. One specifically anticipated ceremony is the reburial of ancestral remains at a traditional burial site located within the proposed border wall corridor. The date has not yet been set because the reburial must be coordinated with the State Park archaeologist, our elders, and others responsible for the respectful return of the ancestors. If construction within the wall corridor is stopped and the site remains accessible and undisturbed, we intend to proceed with the reburial as soon as that coordination can be completed. The ceremony will include our traditional funerary and reburial practices and requires physical access to the burial site and surrounding land.

49. One or more places I presently use or intend to use are located within, immediately adjacent to, or would be affected by the proposed construction corridor. Without publicly disclosing sensitive locations, I can identify those places more specifically to the Court if necessary under appropriate protections.

50. If construction occurs before this case can be decided, some of the injuries I have described cannot later be repaired. Excavation of an ancestral or archaeological site cannot restore that site after the ground has been disturbed. Construction that prevents access can prevent a religious obligation from being performed when the obligation arises. Artificial lighting can alter the conditions under which a nighttime religious practice is performed.

51. Money would not compensate me for those injuries. My concern is not the monetary value of these places or practices. It is my ability to continue practicing my religion in relationship with the River, land, ancestors, natural materials, and places to which those practices are connected.

52. I am not bringing this action because I object in principle to border enforcement or to the existence of the international boundary. My concern is the effect of the proposed construction and related restrictions on actual places that I use and on religious practices that I presently perform and intend to continue performing.

53. I respectfully ask the Court to preserve the existing conditions while it determines whether the challenged construction may lawfully proceed.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 14, 2026, in Presidio, Texas.

*/s/ Christina Hernandez*__
Christina Hernandez

# PLAINTIFFS' EXHIBIT 10

Declaration of Billy Bartko on Behalf of Far Flung Outdoor Center

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| People of the La Junta Preservation; Far Flung Outdoor Center; Andrew Austin; and, Christina Hernandez,<br><br>*Plaintiffs*,<br><br>v.<br><br>Department of Homeland Security; Markwayne Mullin, in his official capacity as the Secretary of the United States Department of Homeland Security; Customs and Border Protection; Rodney S. Scott, in his official capacity as the Commissioner of United States Customs and Border Protection; Lloyd M. Easterling, in his official capacity as the Chief Patrol Agent of the United States Border Patrol's Big Bend Sector; Department of the Interior; Doug Burgum, in his official capacity as the Secretary of the Interior; and, National Park Service,<br>*Defendants.* | § § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 26-5245 |

**Declaration of Billy Bartko on behalf of Far Flung Outdoor Center**

I, Billy Bartko, declare as follows:

1. My name is Billy Bartko. I am over eighteen years of age, am competent to make this declaration, and have personal knowledge of the facts stated below.

2. I own and operate Far Flung Outdoor Center ("Far Flung"), located at 23310 FM 170, Terlingua, Texas 79852.
3. Far Flung provides lodging, guided river trips, outdoor recreation, and related services to people visiting the Big Bend region.
4. Our business is closely tied to Big Bend National Park, the Rio Grande, and the surrounding desert and canyon landscape.
5. Many of our customers travel to the region specifically to experience the Rio Grande, Big Bend National Park, the canyons, the desert, wildlife, dark skies, and the relative remoteness of the area.
6. Far Flung offers or arranges guided river trips, outdoor excursions, lodging, transportation, and related services for visitors seeking those experiences.
7. Far Flung has operated in the Big Bend region for approximately 50 (fifty )years.
8. I have personally lived, worked, guided, recreated, or operated a business in the Big Bend region for approximately 6 (six) years.
9. In the most recent full year, Far Flung generated approximately $2.7 million in gross business revenue.
10. A substantial portion of that revenue is directly or indirectly tied to people traveling to the Big Bend region for outdoor recreation and the natural, scenic, and cultural character of the area.
11. River trips on the Rio Grande are an important part of Far Flung's business.
12. Customers do not come simply to travel from one geographic point to another. They come to experience remote canyon country, natural scenery, dark skies, wildlife, the Rio Grande, and the surrounding Big Bend landscape.

13. Those qualities are part of the product Far Flung sells.
14. I understand that the Department of Homeland Security and Customs and Border Protection propose border-related construction through portions of the Big Bend and Rio Grande corridor.
15. I understand that the contemplated activities include physical barriers, patrol roads, access routes, staging areas, excavation, grading, placement of fill, drainage improvements, lighting, cameras, sensors, and related infrastructure.
16. Construction of that kind has the potential to alter the experience that draws many of our customers to Big Bend.
17. A river trip through a remote and largely undeveloped canyon corridor is materially different from a trip alongside permanent walls, patrol roads, construction zones, security lighting, surveillance towers, or recurring heavy-equipment activity.
18. The same is true for customers who come to the region for scenery, solitude, wildlife, dark skies, hiking, touring, or other outdoor activities.
19. Even if formal access to the Rio Grande or other recreational areas remains technically open, the character of the experience may be materially changed by permanent infrastructure, construction activity, lighting, road building, and recurring maintenance or enforcement activity.
20. That change directly affects Far Flung because our business depends on the attractiveness and quality of the Big Bend visitor experience.
21. If people decide that the area has become less scenic, less remote, less peaceful, or less suitable for river and outdoor recreation, fewer people may book river trips, lodging, guided excursions, and other services with Far Flung.

22. Reduced visitation would affect more than a single line of business. Customers who book river trips may also purchase lodging, transportation, guided excursions, equipment, or other services.

23. Far Flung currently has reservations or bookings for the coming weeks and months that depend upon continued access to or use of the Rio Grande and Big Bend recreational areas.

24. As of the date of this declaration, Far Flung has approximately $429,061.99 in reservations, trips, lodging bookings, or other customer commitments scheduled for the period from 08/12/2026 through 12/31/2027.

25. Some customers have already asked questions, expressed concern, changed plans, or cancelled bookings because of proposed or ongoing border construction. Examples include: Cancellations over park accessibility.

26. Far Flung uses specific roads, access points, river put-ins, take-outs, shuttle routes, or other locations that may be affected by the proposed construction. Those include: Old Maverick and Black Gap, and River Road West and East for overland tours, Santa Elana, Cotton Wood Camp Ground, Tally, Solice, Gravel Pit, Rio Grand Village, and La Linda River Access ramps.

27. Access restrictions or construction affecting those routes could prevent or complicate Far Flung's ability to provide trips and services as presently scheduled.

28. Delays, closures, detours, staging activity, or construction traffic can also increase the time and cost required to conduct guided trips and shuttle customers.

29. Certain Far Flung trips require access to or passage through the following specific locations: Santa Elena, The Great Unknown, Mariscal Canyon, San Vicente, Hot Springs,

Boquillas, Temple, and the Lower Canyons from Linda to John’s Marina. The Black Gap Wildlife Management area including the river access at shelter 12 and 13.

30. If access to those locations is blocked or restricted, Far Flung would be unable to provide the following scheduled or customary services:ALL RIVER TRIPS ranging from ½ day to 12 day trips. Also, Around the Bend Jeep Tours, and custom overland tours through the national park.

31. The harm to Far Flung from construction would not necessarily be limited to revenue lost during the construction period.

32. Far Flung has spent years building a reputation and customer base associated with the Big Bend experience.

33. Customers who cancel a trip or decide to vacation somewhere else may not simply return later after construction ends.

34. Repeat customers, referrals, online reviews, travel recommendations, and word of mouth are important to an outdoor tourism business like Far Flung.

35. If customers come to Big Bend expecting remote desert and canyon experiences and instead encounter major construction, permanent barriers, new roads, lighting, or related infrastructure, that experience can affect whether they return or recommend the region to others.

36. The value of customer relationships and goodwill lost in that way is difficult to measure precisely after the fact.

37. It is also difficult to determine how many people never contact Far Flung because they decide in advance to travel elsewhere.

38. For that reason, some of the economic injury caused by a permanent change in the Big Bend visitor experience cannot be fully identified or repaired through a later award of money.
39. Far Flung also has a direct interest in continued access to and use of the natural and recreational resources on which its operations depend.
40. I personally use the Rio Grande, Big Bend National Park, and the surrounding landscape for recreation, guiding, scouting routes, evaluating conditions, or other business purposes on a regular basis.
41. My most recent personal use of the Rio Grande or affected area occurred on or about August 12. 2026, when I scouted for river trips occurring on August 13, 2026.
42. I presently intend to return to or use the affected area on or about August 13, 2026 for additional scouting of commercial trips.
43. I understand that the challenged project is intended to proceed on an expedited basis and may involve ground disturbance, road work, staging, excavation, and related construction before this lawsuit can be finally decided.
44. If construction materially alters the affected landscape, Far Flung cannot later restore that landscape to the condition on which its business has historically depended.
45. Money paid after the fact also would not necessarily restore lost customer relationships, restore the prior visitor experience, or cause customers who chose another destination to return.
46. Far Flung is not challenging routine border-enforcement operations or the government's general responsibility to enforce immigration and border laws.

47. Far Flung's concern is the effect of the challenged construction on the specific natural, scenic, and recreational resources upon which its business depends.

48. I respectfully ask the Court to preserve the existing conditions while it determines whether the challenged construction may lawfully proceed.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 14, 2026, in Terlingua, Texas.

*/s/ Billy Bartko*____________

Billy Bartko
Owner and Operator
Far Flung Outdoor Center