**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| PEOPLE OF THE LA JUNTA FOR PRESERVATION, FAR FLUNG OUTDOOR CENTER, ANDREW AUSTIN, and CHRISTINA HERNANDEZ,<br><br>Plaintiffs,<br><br>v.<br><br>DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br><br>Defendants. | Case No. 5:26-cv-05245-OLG |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**

## TABLE OF CONTENTS

**INTRODUCTION** ... 1

**BACKGROUND** ... 2

I. Statutory Framework ... 2

II. The Secretary's Exercise of Waiver Authority ... 3

III. Factual Background ... 4

IV. Procedural History ... 6

**STANDARD OF REVIEW** ... 6

**ARGUMENT** ... 7

I. Plaintiffs Are Unlikely to Succeed on the Merits. ... 7

A. Plaintiff Hernandez's RFRA Claim is Unlikely To Succeed Because Border Wall Construction on Federal Land is Not a Substantial Burden on the Exercise of Her Religion. ... 7

B. Border Barrier Construction Inside Big Bend National Park Does Not Violate 16 U.S.C. § 158. ... 12

II. Plaintiffs Have Failed to Establish Irreparable Harm, and the Balance of Equities and Public Interest Weighs Against a Temporary Restraining Order ... 14

A. An Injunction Will Impose Substantial and Irreparable Harm on the United States. ... 15

B. Defendants' Compelling Interests Outweigh Plaintiffs' Speculative Harms. ... 17

**CONCLUSION** ... 20

## TABLE OF AUTHORITIES

**Cases**

*Adkins v. Kaspar*,
393 F.3d 559 (5th Cir. 2004) ... 8

*Alexander v. Sandoval*,
532 U.S. 275 (2001) ... 12

*Bowen v. Roy*,
476 U.S. 693 (1986) ... 8

*CAE Integrated, L.L.C. v. Moov Techs., Inc.*,
44 F.4th 257 (5th Cir. 2022) ... 7

*Cnty. of El Paso v. Chertoff*,
No. 08-196, 2008 WL 4372693 (W.D. Tex. Aug. 29, 2008) ... 3

*Ctr. for Biological Diversity v. McAleenan*,
404 F. Supp. 3d 218 (D.D.C. 2019) ... 3

*Ctr. for Biological Diversity v. Noem*,
2026 WL 836278 (D. Ariz. Mar. 26, 2026) ... 3

*Danos v. Jones*,
652 F.3d 577 (5th Cir. 2011) ... 13

*Dennis Melancon, Inc. v. City of New Orleans*,
703 F.3d 262 (5th Cir. 2012) ... 20

*El Paso Cnty. v. Trump*,
407 F. Supp. 3d 655 (W.D. Tex. 2019) ... 15

*Employment Division v. Smith.*,
494 U.S. 872 (1990) ... 8

*FCC v. NextWave Pers. Commc'ns Inc.*,
537 U.S. 293 (2003) ... 14

*Google, Inc. v. Hood*,
822 F.3d 212 (5th Cir. 2016) ... 7

*Hernandez v. Mesa*,
589 U.S. 93 (2020) ... 16

*In re Border Infrastructure Env't Litig.*,
284 F. Supp. 3d 1092 (S.D. Cal. 2018), *aff'd*, 915 F.3d 1213 (9th Cir. 2019) ............................ 3

*La Posta Band of Diegueno Mission Indians v. Trump*,
2020 WL 14042584 (S.D. Cal. Sep. 9, 2020) ........................................................ 7, 10, 14, 15

*Lake Charles Diesel, Inc. v. Gen. Motors Corp.*,
328 F.3d 192 (5th Cir. 2003) ........................................................................................ 7

*Landon v. Plasencia*,
459 U.S. 21 (1982) ........................................................................................ 15

*Leedom v. Kyne*,
358 U.S. 184 (1958) ........................................................................................ 13

*Lyng v. Northwest Indian Cemetery Protective Ass'n*,
485 U.S. 439 (1988) ........................................................................................ *passim*

*Manzanita Band of Kumeyaay Nation v. Wolf*,
496 F. Supp. 3d 257 (D.D.C. 2020) ........................................................................ 15

*Mazurek v. Armstrong,*
520 U.S. 968 (1997) ........................................................................................ 18

*Nat'l Treasury Emps. Union v. Von Raab*,
489 U.S. 656 (1989) ........................................................................................ 15

*Nken v. Holder*,
556 U.S. 418 (2009) ........................................................................................ 17

*Nuclear Regul. Comm'n v. Texas*,
605 U.S. 665 (2025) ........................................................................................ 12, 13

*Presidio Mun. Dev. Dist. v. DHS*,
2026 WL 2213850 (D.D.C. Aug. 2, 2026) ........................................................................ 3

*Sherbert v. Verner,*
374 U.S. 398 (1963) ........................................................................................ 9

*Tap Pilam Coahuiltecan Nation v. Alamo Tr., Inc.*,
489 F. Supp. 3d 611 (W.D. Tex. 2020) ........................................................................ 10, 11

*Trump v. Sierra Club*,
588 U.S. 930 (2019) ........................................................................................ 14

*U.S. Navy SEALs 1-26 v. Biden*,
27 F.4th 336 (5th Cir. 2022) .......... 8

*United States v. Merkt*,
794 F.2d 950 (5th Cir. 1986) .......... 15

*Whole Woman's Health v. Paxton*,
264 F. Supp. 3d 813 (W.D. Tex. 2017) .......... 7

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008) .......... 14, 17, 18, 20

*Wisconsin v. Yoder,*
406 U.S. 205 (1972) .......... 9

**Statutes**

6 U.S.C. § 202 .......... 2

8 U.S.C. § 1103 .......... 2

16 U.S.C. § 158 .......... *passim*

42 U.S.C. § 2000bb .......... 8

42 U.S.C. § 2000bb-1 .......... 7

Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"),
Pub. L. No. 104-208, div. C, tit. I § 102, 110 Stat. 3009 (1996)
(codified at 8 U.S.C. § 1103 note) .......... 2, 3, 13

Secure Fence Act of 2006,
Pub. L. No. 109-367, 120 Stat. 2638 (2006) (codified at 8 U.S.C. § 1701 note) .......... 2

**Executive Materials**

73 Fed. Reg. 19,078 (Apr. 8, 2008) .......... 3

91 Fed. Reg. 7297 (Feb. 17, 2026) .......... 3

90 Fed. Reg. 23,946 (June 5, 2025) .......... 3

91 Fed. Reg. 27,969 (May 15, 2026) .......... 4

91 Fed. Reg. 34,831 (June 9, 2026). .......... 4, 12

91 Fed. Reg. 40.550 (July 2, 2026) .......... 4

Exec. Order No. 14159, 90 Fed. Reg. 8443. ........ 15, 16

Exec. Order No. 14165, 90 Fed. Reg. 8467 (Jan. 20, 2025) ........ 16

Proclamation 10886, 90 Fed. Reg. 8327 (Jan. 20, 2025) ........ 16

**Other Authorities**

S. Rep. No. 103-111 (1993) ........ 9

## INTRODUCTION

Defendants oppose Plaintiffs' Emergency Motion for a Temporary Restraining Order challenging construction of the border barrier wall in and around Big Bend National Park. ECF No. 2. Plaintiff Christina Hernandez alleges that, under the Religious Freedom and Restoration Act ("RFRA"), construction of the border wall constitutes a substantial burden on the exercise of her religion. Hernandez and the other Plaintiffs also allege that construction violates 16 U.S.C. § 158, a ministerial statute assigning responsibility for the administration of Big Bend National Park to the Secretary of the Interior and the National Park Service.

These claims fail for several reasons. First, Plaintiffs have failed to carry their burden on any requirements for the extraordinary relief they request. There is no likelihood of success on the merits of Hernandez's RFRA claim as it runs squarely against the Supreme Court's precedent in *Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439 (1988), which denied RFRA relief to claimants on the basis that impacts to one's religious exercise by the Government's use of its own land fails to pass the "substantial burden" threshold. Furthermore, Plaintiffs' attempt to claim relief under § 158 also fails, as nothing in this statute affords them a private right of action or prohibits the U.S. Department of Homeland Security ("DHS") from constructing border barriers within Big Bend National Park under its broad statutory authority pursuant to the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA").

Plaintiffs also fail to adequately allege irreparable harm as their motion rests on wholly speculative injuries. There is no plan to install pedestrian barriers or stadium lighting in the Big Bend National Park. All activity within the Park is paused until August 31, 2026, at minimum, and the work that occurred prior to the pause was limited to pre-construction activities such as clearing vegetation to create passable routes for geotechnical surveys and to access the project

alignment. Plaintiffs' claim ignores that CBP has extensive procedures in place to minimize the effects of construction on the environment. Moreover, the balance of the equities tips heavily in favor of the Government's compelling interest in vigorous border security and enforcement of the Nation's immigration laws, particularly considering the high rates of illegal entry and drug smuggling in the Big Bend Sector region.

For these reasons, as set forth below, Plaintiff's Motion should be denied.

## BACKGROUND

### I. Statutory Framework

DHS is responsible for border security and the detection and prevention of illegal entry into the United States. *See, e.g.*, 6 U.S.C. § 202(1)-(2). Congress has ordered DHS to achieve and maintain operational control of the international land border. *See* Secure Fence Act of 2006, Pub. L. No. 109-367, § 2(a), 120 Stat. 2638 (2006) (8 U.S.C. § 1701 note). "Operational control" means "prevention of all unlawful entries into the United States, including entries by terrorists, other unlawful aliens, instruments of terrorism, narcotics, and other contraband." *Id.* § 2(b).

IIRIRA is one of the statutory authorities provided to DHS to carry out its border security mission. *See* Pub. L. No. 104-208, div. C, tit. I § 102, 110 Stat. 3009-554 (1996). IIRIRA requires the Secretary of Homeland Security to "take such actions as may be necessary to install additional physical barriers and roads (including the removal of obstacles to detection of illegal entrants) in the vicinity of the United States border to deter illegal crossings in areas of high illegal entry into the United States." *Id.* § 102(a), codified at 8 U.S.C. § 1103 note.

To ensure expeditious barrier construction, Congress granted the Secretary "the authority to waive all legal requirements such Secretary, in such Secretary's sole discretion, determines necessary to ensure expeditious construction of the barriers and roads under this section." *Id.* § 102(c). Congress added this provision in 2005 after it grew frustrated by "[c]ontinued delays

caused by litigation" over barrier construction. *See* H.R. Rep. No. 109-72, at 171 (May 3, 2005).

## II. The Secretary's Exercise of Waiver Authority

Since 2005, the Secretary has repeatedly issued waiver determinations under the IIRIRA to ensure expeditious construction of barriers and roads along the border. *See, e.g.*, Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, as Amended, 90 Fed. Reg. 23,946 (June 5, 2025); Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, as Amended, 73 Fed. Reg. 19,078 (Apr. 8, 2008). Every judicial challenge to these determinations has been dismissed. *See, e.g.*, *Ctr. for Biological Diversity v. Noem*, 2026 WL 836278 (D. Ariz. Mar. 26, 2026); *Ctr. for Biological Diversity v. McAleenan*, 404 F. Supp. 3d 218 (D.D.C. 2019); *In re Border Infrastructure Env't Litig.*, 284 F. Supp. 3d 1092 (S.D. Cal. 2018), *aff'd*, 915 F.3d 1213 (9th Cir. 2019); *Cnty. of El Paso v. Chertoff*, No. 08-196, 2008 WL 4372693 (W.D. Tex. Aug. 29, 2008); *see also Presidio Mun. Dev. Dist. v. DHS*, 2026 WL 2213850 (D.D.C. Aug. 2, 2026) (denying motion for preliminary injunction).

Relevant to this lawsuit, the Secretary of Homeland Security has issued two additional waivers under the IIRIRA to expedite barrier construction in portions of the Big Bend Sector of south Texas ("Big Bend Waivers"). On February 17, 2026, then-Secretary Noem executed a waiver for a project area "[s]tarting at approximately GPS point 31.037623, −105.579877 and extending south and east to approximately GPS point 29.325866, −104.046466." *See* Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, as Amended, 91 Fed. Reg. 7297, 7298 (Feb. 17, 2026); *as amended by* Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, as Amended, 91 Fed. Reg. 40,550 (July 2, 2026). On May 15, 2026, Secretary Mullin issued another waiver for a project "[s]tarting at approximately GPS point

29.325866, -104.046466 and extending east to approximately GPS point 29.728522, −102.683945." *See* Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, As Amended, 91 Fed. Reg. 27,969 (May 15, 2026), *as amended by* Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, As Amended, 91 Fed. Reg. 34831, 34,832 (June 9, 2026).

## III. Factual Background

U.S. Customs and Border Protection ("CBP") has multiple border construction projects that will be executed in the United States Border Patrol Big Bend Sector. *See* Declaration of Paul Enriquez ¶ 6–8 (attached as Ex. 1). As part of the Big Bend 4 project, CBP planned to construct approximately 17 miles of non-contiguous vehicle barrier system within Big Bend National Park and to the east of the National Park. *Id.* ¶ 11. CBP also planned to construct a new patrol road, improve existing roads, and install technology within the National Park; however, the aspects of the project within the National Park are now subject to a review by the Commissioner of CBP. *Id.* The Big Bend 4 project also includes construction or improvement of roads and installation of technology outside the National Park in Presidio and Brewster County, Texas, within the Big Bend Sector. *Id.* ¶ 11 & Ex. A (map of Big Bend 4 project area). The vehicle barrier system planned for the Big Bend National Park would be designed in coordination with the National Park Service and may include a "post and rail" vehicle barrier or other material which will be spaced about four feet apart. *Id.* ¶ 12 & Ex. B (photo of vehicle barrier).

The contractor must complete and CBP must approve a design of the barrier system before construction of the vehicle barrier, roads, and technology that is planned as part of the Big Bend 4 project can begin. *Id.* ¶ 17. To complete the design plan, the contractor must first undertake field work necessary for design, including geotechnical surveys of the proposed

construction area, establishing access routes to the survey areas, and removing vegetation. *Id.* ¶¶ 17-19. This pre-construction field work began on or about August 3, 2026 for the Big Bend 4 project. *Id.* ¶ 18. On August 18, 2026, the Commissioner of CBP ordered a pause of all activities related to the Big Bend 4 project within Big Bend National Park pending the Commissioner's review of the aspects of Big Bend 4 that are planned for the National Park. *Id.* The pause will last until at least August 31, 2026. *Id.*

As part of the Big Bend 2 project, CBP will construct approximately 61 miles of barrier system in Presidio County, Texas, within the Big Bend Sector. *Id.* ¶ 13 & Ex. C (map of Big Bend 2 project area).[1] The elements of this barrier system will include a 30-foot bollard-style pedestrian barrier, a road, and barrier system attributes, including, as appropriate, cameras, lights, sensors, and other detection technology. *Id.* ¶ 13. The contractor has not started any of the field work necessary for design of the Big Bend 2 project, including geotechnical surveys, clearing and grubbing for geotechnical surveys, or mobilization of equipment. *Id.* ¶ 23. Because the majority of the Big Bend 2 project is on private land, CBP must secure real estate agreements or property acquisitions to conduct both the preparatory field work and the barrier system construction. *Id.* ¶¶ 23-24. As things currently stand, CBP expects that the contractor will begin field work in the coming weeks for locations where CBP has secured the necessary right of access agreements. *Id.* ¶ 24.

As part of every barrier system project, including Big Bend 2 and Big Bend 4, CBP conducts biological and cultural surveys of the project area. *Id.* ¶ 27. CBP has environmental

1. Plaintiffs' Motion suggests that CBP's Big Bend 2 project involves construction in Big Bend National Park. That is not correct. There will be no construction in Big Bend National Park as part of the Big Bend 2 project. Enriquez Decl. ¶ 7. Construction within the Big Bend National Park is part of CBP's Big Bend 4 project. *Id.*

monitors who observe construction activities, and every construction contract includes Best Management Practices ("BMPs") that must be adhered to by the construction contract and which include protocols, such as immediate stop work directives, in the event of inadvertent discovery of cultural resources and/or human remains. *Id.* ¶ 27–28 & Exs. D–E. CBP has a long track record of working with resource managers and stakeholders, including affected tribes, to avoid or minimize impacts to cultural resources. *Id.* ¶ 29. This includes closely working on-site with tribal cultural monitors, hosting site visits for local tribes, and developing site treatment plans in conjunction with them as necessary. *Id.*

## IV. Procedural History

On August 16, 2026, Plaintiffs filed an Emergency Motion for a Temporary Restraining Order ("Motion"), seeking a sweeping injunction prohibiting any "construction or construction-related activity" within Big Bend National Park, Big Bend Ranch State Park, and any "federal, state, private, tribal, or other lands" outside the geographic scope of the DHS waivers, and "any location" not covered by the waivers. Proposed Order, ECF No. 2-2 at 2. Plaintiffs' motion asserts two bases for relief. First, Plaintiff Christina Hernandez contends that barrier construction violates her rights under RFRA. Mot. at 10-12. Second, all Plaintiffs argue that barrier construction within Big Bend National Park violates 16 U.S.C. § 158. *Id.* at 12-13.

## STANDARD OF REVIEW

"A temporary restraining order is an extraordinary remedy which should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements." *Whole Woman's Health v. Paxton*, 264 F. Supp. 3d 813, 818 (W.D. Tex. 2017). Accordingly, a could may grant relief only when the moving party "clearly shows: '(1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if

the injunction is not granted, (3) his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin, and (4) granting the preliminary injunction will not disserve the public interest.'" *Google, Inc. v. Hood*, 822 F.3d 212, 220 (5th Cir. 2016) (quoting *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 195-96 (5th Cir. 2003)). A court may deny relief based on failure to satisfy even one factor. *See CAE Integrated, L.L.C. v. Moov Techs., Inc.*, 44 F.4th 257, 264 n.22 (5th Cir. 2022).

## ARGUMENT

### I. Plaintiffs Are Unlikely to Succeed on the Merits.

#### A. Plaintiff Hernandez's RFRA Claim is Unlikely To Succeed Because Border Wall Construction on Federal Land is Not a Substantial Burden on the Exercise of Her Religion.

Plaintiff Hernandez has no likelihood of success on her RFRA claim. Construction of a border wall on federal land does not impose a "substantial burden" on Plaintiff's religious beliefs, as RFRA requires. *See La Posta Band of Diegueno Mission Indians v. Trump*, 2020 WL 14042584, at *16 (S.D. Cal. Sep. 9, 2020) (denying TRO motion to stop border wall construction because plaintiff has "not established a 'substantial burden' within the meaning of the RFRA").

RFRA provides that the "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability," unless the government "demonstrates that application of the burden to the person–(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(a), (b). RFRA does not define "substantial burden," so courts look to First Amendment cases decided before *Employment Division v. Smith.* 494 U.S. 872 (1990), to construe the term. 42 U.S.C. § 2000bb(b)(1). Under those cases, "a government action or regulation creates a 'substantial burden' on a religious exercise if it truly

pressures the adherent to significantly modify his religious behavior and significantly violates his religious beliefs." *U.S. Navy SEALs 1-26 v. Biden*, 27 F.4th 336, 350 (5th Cir. 2022). "On the opposite end of the spectrum, however, a government action or regulation does not rise to the level of a substantial burden on religious exercise if it merely prevents the adherent from either enjoying some benefit that is not otherwise generally available or acting in a way that is not otherwise generally allowed." *Adkins v. Kaspar*, 393 F.3d 559, 570 (5th Cir. 2004).

The leading case on the application of the "substantial burden" test to construction on federal land is *Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439 (1988). In *Lyng*, the plaintiff Indian tribes alleged that the Government's decision to build roads and harvest timber on federal lands in northern California violated their First Amendment rights under the "substantial burden" test, which has since been incorporated into RFRA. The parties did not dispute that "the logging and road-building projects at issue in this case could have devastating effects on traditional Indian religious practices." *Id*. at 451.

Nonetheless, the Court ruled in the Government's favor. It analogized the case to *Bowen v. Roy*, 476 U.S. 693 (1986), in which the Court rejected a claim by religious objectors that a law requiring the States to use Social Security numbers to operate certain benefits programs violated their religious beliefs. *Lyng*, 485 U.S. at 449. Finding that the tribes' claim "cannot meaningfully be distinguished from" *Roy*, the Court held that, "[i]n neither case . . . would the affected individuals be coerced by the Government's action into violating their religious beliefs; nor would either governmental action penalize religious activity by denying any person an equal share of the rights, benefits, and privileges enjoyed by other citizens." *Id.*

The Supreme Court reasoned that the "Constitution does not, and courts cannot, offer

to reconcile the various competing demands on government, many of them rooted in sincere religious belief, that inevitably arise in so diverse a society as ours." *Id.* at 452. Indeed, the "government simply could not operate if it were required to satisfy every citizen's religious needs and desires." *Id.* Thus, the Court held, "[w]hatever rights the Indians may have to the use of the area . . . those rights do not divest the Government of its right to use what is, after all, *its* land." *Id.* at 453 (emphasis in original).

*Lyng* binds this Court in its consideration of Plaintiff's RFRA claim. When Congress was debating RFRA, it acknowledged that the statute incorporated pre-*Smith* holdings that "strict scrutiny does not apply to government actions involving . . . the use of the Government's own property or resources," including management of public lands, because such actions do not "substantially burden" religious exercise as articulated by either *Sherbert v. Verner,* 374 U.S. 398 (1963) or *Wisconsin v. Yoder,* 406 U.S. 205 (1972). *See* S. Rep. No. 103-111, at 8-9 & n.19 (1993). Under those cases, a substantial burden is imposed only when individuals are forced to choose between following the tenets of their religion and receiving a governmental benefit, as in *Sherbert*, or coerced to act contrary to their religious beliefs by the threat of civil or criminal sanctions, as in *Yoder*. Indeed, Congress cited *Lyng* and *Roy* as examples of the proper approach to applying the substantial burden test to actions involving the government's own property. *See id.* None of the recognized circumstances amounting to a substantial burden on religion is present in this case.

The concerns articulated by *Lyng* are particularly acute at the international border. Management and security of the border is a part of the Government's internal operations, and should not impose a "substantial burden" on religious beliefs. RFRA, like the First Amendment doctrines that preceded it, is not intended to give religious objectors a

mechanism to second-guess the "broad range of *government* activities" that occur at the border because they deem those "activities deeply offensive, and perhaps incompatible with their own search for spiritual fulfillment and with the tenets of their religion." *Lyng*, 485 U.S. at 452 (emphasis added).

In accordance with *Lyng*, Plaintiff Hernandez cannot satisfy the "substantial burden" test. Even if the border wall construction in this case will somehow affect her religious practice (which has not been established), the proposed construction does not force anyone to "violat[e] their religious beliefs," nor does it "penalize religious activity" through the "den[ial of] any person an equal share of the rights, benefits, and privileges enjoyed by other citizens." *Id.* at 449, 451. Rather, Plaintiff's alleged harm arises from the Government's decisions about how best to use and manage the federal land near the border. As *Roy* and *Lyng* hold, this sort of activity is not a "substantial burden" under RFRA. *See La Posta*, 2020 WL 14042584, at *14-16 (rejecting RFRA claim challenging border wall construction).

Critically, this Court has already applied *Lyng* to demands similar to the ones Plaintiffs assert here. In *Tap Pilam Coahuiltecan Nation v. Alamo Tr., Inc.*, 489 F. Supp. 3d 611 (W.D. Tex. 2020) (Garcia, J.), Plaintiffs claiming descent from persons buried at the Alamo sought, among other things, authority to participate in decisions affecting human remains and to perform religious ceremonies at the site. *Id.* at 616–18. This Court held that the requested religious-use benefits were "unavailable under *Lyng*" because they were not benefits generally available to the public, but benefits the plaintiffs sought to exact from the defendant government's management of the property. *Id.* at 623-24. *Tap Pilam*'s application of *Lyng* is particularly relevant here because it involved a similar challenge to government construction and renovation activities alleged to threaten ancestral burial

grounds and interfere with related religious practices. This Court correctly applied *Lyng* to reject such free exercise theories.

Plaintiff Hernandez also has not carried her burden to present evidence to support her RFRA claim. Plaintiff asserts that she requires access to a burial site and surrounding land for a reburial ceremony, but she never identifies the location of the site, when she intends to conduct the ceremony, or explains why she thinks that specific location would be damaged by the limited construction pathway. Hernandez similarly fails to identify existing denial of access, a gate or barrier design that will necessarily block a particular religious route, or a project feature that will necessarily burden her ceremonies. As discussed above, CBP has not even started pre-construction activities in the Big Bend 2 project area in Presidio County, *see* Enriquez Decl. ¶ 23, and planned barrier construction inside Big Bend National Park is limited to non-contiguous vehicle barrier for only 17 miles of the more than 100 miles of the Park that runs along the border, *id.* ¶ 11. Hernandez therefore has not clearly carried her burden to show that she faces a real and imminent threat that her access to the unidentified site will be impeded or disturbed, let alone that such an alleged injury constitutes a "substantial burden" under RFRA. The incidental effects of lawful border wall construction on federal land "which may make it more difficult to practice certain religions[,] but which have no tendency to coerce individuals into acting contrary to their religious beliefs" is not a substantial burden on the exercise of Plaintiff's religion. *Lyng*, 485 U.S. at 450-51.

**B. Border Barrier Construction Inside Big Bend National Park Does Not Violate 16 U.S.C. § 158.**

Plaintiffs are unlikely to succeed on the merits of their claim that barrier construction in Big Bend National Park violates 16 U.S.C. § 158. As threshold matter, Plaintiffs lack a cause of action to enforce § 158. The statute simply provides that the "[t]he administration, protection,

and development of the Big Bend National Park shall be exercised under the direction of the Secretary of the Interior by the National Park Service." Section 158 does not itself provide for a private right of action. *Id.* "Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). "The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Id.* Here, nothing in the text or structure of § 158 suggests Congress intended to create a private right of action or private remedy. Section 158 simply designates the Department of the Interior (DOI) and National Park Service (NPS) as the government agencies responsible for administration of the Park.

Plaintiffs also cannot rely on the cause of action found in the Administrative Procedure Act (APA) because the Secretary of Homeland Security waived the APA with respect to the barrier construction projects at issue. *See* 91 Fed. Reg. at 40551; 91 Fed. Reg. at 34833; *see also* Pls.' Mot. at 9 (Plaintiffs "do not ask the Court to restore . . . any other statute the Secretary actually waived.")

Plaintiffs' only hope to obtain judicial review of § 158 is through an implied equitable *ultra vires* cause of action, but such a claim "is essentially a Hail Mary pass—and in court as in football, the attempt rarely succeeds." *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 681-82 (2025) (citation omitted). *Ultra vires* review is "strictly limited" and applies "only when an agency has taken action entirely in excess of its delegated powers and contrary to a specific prohibition in a statute." *Id.* (stating that ultra vires review is limited to the "painstakingly delineated procedural boundaries" set forth in *Leedom v. Kyne*, 358 U.S. 184 (1958)); *see Danos v. Jones*, 652 F.3d 577, 583 (5th Cir. 2011) (stating that "a plaintiff must do more than simply allege that the actions of the officer are illegal or unauthorized") (citation omitted).

Plaintiffs have not shown how construction of a border barrier in Big Bend National Park is "contrary to a specific prohibition" that is "clear and mandatory" in § 158. *Kyne*, 358 U.S. at 184. Nothing in § 158 prohibits DHS from constructing border barriers within Big Bend National Park under its broad statutory authority pursuant to IIRIRA, which includes a mandate from Congress to install additional physical barriers, roads, and technology to "deter illegal crossings" and "gain operational control" of the border. IIRIRA § 102(a); IIRIRA § 102(b)(1)(A). Section 158 simply assigns responsibility to DOI and NPS for the "administration, protection, and development" of the Park. 16 U.S.C. § 158. Further, the Secretary's June 9, 2026 IIRIRA waiver, which was exercised pursuant to express authority by Congress, sets aside the application of the National Park Service Organic Act, the National Park Service General Authorities Act, and other statutory authorities under which DOI and NPS would normally manage Big Bend National Park or regulate activities within the Park. *See* 91 Fed. Reg. 3482-83. Put another way, the Secretary's IIRIRA waiver means those statues cannot be applied to CBP's planned construction within Big Bend National Park. Accordingly, there is no DOI or NPS management action or decision at issue in this case, and there is similarly no basis to conclude that DOI or NPS has acted in excess of its delegated powers or contrary to a specific prohibition in a statute.

Although Plaintiffs appear to contend that § 158 prohibits DHS from undertaking any construction activity inside the park, *see* Pls.' Mot. at 3, the text of the statute does not contain that prohibition. Such strained reading of § 158 would conflict with the plain text of IIRIRA. There is no basis to manufacture a conflict between § 158 and IIRIRA where none exists. *See FCC v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293, 304 (2003) ("[W]hen two statutes are

capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." (internal quotation marks omitted)).

## II. Plaintiffs Have Failed to Establish Irreparable Harm, and the Balance of Equities and Public Interest Weighs Against a Temporary Restraining Order

The Court should also deny Plaintiffs' request for TRO because Plaintiffs have failed to establish irreparable harm, and the balance of equities and public interest favor Defendants. The compelling interests of the federal government in border security greatly outweigh the speculative harm that the projects may cause Plaintiffs, especially when the government's mitigation efforts are considered. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (reversing injunction prohibiting military sonar technology when balanced against environmental injury).

The Supreme Court applied these principles to border barrier construction in *Trump v. Sierra Club*, 588 U.S. 930 (2019). There, the Supreme Court stayed an injunction prohibiting construction of border barrier construction projects. In issuing the stay, the Supreme Court necessarily determined that the harm to the Government from an injunction outweighed the environmental interests advanced by the plaintiffs. *See id.* at 1 ("Among the reasons [for the stay] is that the government has made a sufficient showing . . . that the plaintiffs have no cause of action."); *La Posta*, 2020 WL 14042584, at *20 (stating that "the Supreme Court has already balanced the harm to the Government from an injunction prohibiting border barrier construction against the irreparable environmental interest of the Sierra Club"). Indeed, since the Supreme Court issued this decision, courts in this Circuit have either denied or stayed injunctions prohibiting barrier construction projects. *See* Order, *El Paso Cnty. v. Trump*, No. 19-51144 (5th Cir. Jan. 8, 2020); *El Paso Cnty. v. Trump*, 407 F. Supp. 3d 655, 665 (W.D. Tex. 2019).

The environmental, cultural, religious, and property interests that Plaintiffs assert in

this case are similar to those advanced by the plaintiffs in *Winter* and *Sierra Club*, and the balance of equities similarly favors Defendants here. Taken as a whole, Plaintiffs' allegations of harm are highly speculative and cannot support the issuance of a temporary restraining order, particularly when weighed against the federal government's acute need to secure the Southwest border. *See Manzanita Band of Kumeyaay Nation v. Wolf*, 496 F. Supp. 3d 257, 263 (D.D.C. 2020) (denying motion for emergency injunction to stop border wall construction because Indian Tribe failed "to make out a certain, great, and imminent injury in the absence of a preliminary injunction"); *La Posta*, 2020 WL 14042584, at *19-20 (finding equitable factors did not favor issuing an injunction stopping border wall construction).

**a. An Injunction Will Impose Substantial and Irreparable Harm on the United States.**

Enjoining the Big Bend barrier construction projects would compromise the government's "weighty" interests in border security, enforcing the immigration laws, and preventing the influx of narcotics into the interior. *See Landon v. Plasencia*, 459 U.S. 21, 34 (1982) ("The government's interest in efficient administration of the immigration laws at the border . . . is weighty."); *Nat'l Treasury Emps. Union v. Von Raab*, 489 U.S. 656, 672 (1989) (recognizing that the government has "compelling interests in safety and in the integrity of our borders"); *United States v. Merkt*, 794 F.2d 950, 956 (5th Cir. 1986) ("[T]here is a compelling state interest in the government's uniform enforcement of border control laws."). The government's compelling interest is even stronger in the current context because of the "unprecedented flood of illegal immigration" that has occurred over the past several years. Exec. Order No. 14159, Protecting the American People Against Invasion, 90 Fed. Reg. 8443 (Jan. 20, 2025).

This massive increase in illegal immigration has imposed significant harms on

Americans. The recent influx has "cost taxpayers billions of dollars at the Federal, State, and local levels." Exec. Order No. 14159, 90 Fed. Reg. at 8443. "Deadly narcotics and other illicit materials have flowed across the border[.]" Exec. Order No. 14165, Securing Our Borders, 90 Fed. Reg. 8467 (Jan. 20, 2025); *see also Hernandez v. Mesa*, 589 U.S. 93, 107 (2020) ("During the last fiscal year, approximately 850,000 persons were apprehended attempting to enter the United States illegally from Mexico, and large quantities of drugs were smuggled across the border"). "Foreign criminal gangs and cartels" have also extended their influence beyond the southern border into American cities. Proclamation 10886, Declaring a National Emergency at the Southern Border of the United States, 90 Fed. Reg. 8327 (Jan. 20, 2025).

Border barriers are an extremely effective tool for deterring and impeding illegal crossings into the United States and protecting Border Patrol officers. Physical barriers are an essential component to the CBP's layered border security approach and provide numerous benefits including: (1) protecting Border Patrol agents, (2) assisting Border Patrol in gaining and maintaining operational control of the border, and (3) supporting a safe and secure border community. Enriquez Decl. ¶ 6. Border barriers also allow USBP agents to gain more control and situational awareness in the area near the U.S.-Mexico border. *Id.* In short, barriers deter and impede smugglers and aliens from entering the U.S. illegally and increase the effectiveness of Border Patrol agents. *See id.*

Accordingly, an injunction thwarting the border barrier system projects in the Big Bend Sector without regard to any of the projects' implementation specifics would cause irreparable harm to the United States. The Big Bend Sector is an area of high illegal entry. *Id.* ¶ 39. Between 2021 and 2025, Border Patrol apprehended over 89,000 illegal aliens attempting to enter the United States in this sector, as well as seizing over 87,574 pounds of marijuana, over 867 pounds

of cocaine, over 1,156 pounds of methamphetamine, over 12 pounds of heroin, and over 94 pounds of fentanyl here. *Id.* If the border barrier construction project is not completed in Big Bend, transnational criminal organizations will continue to exploit vulnerabilities in this region. *Id.* Indeed, the problem will get worse.

Entering an injunction also could significantly harm the government's financial interests. Plaintiffs request an injunction stopping all construction activity in and around the Big Bend National Park. *See* Proposed Order. If the Court entered such an order, it could result in CBP becoming liable for contractor delay claims or other increased costs from the contractors. *See* Enriquez Decl. ¶ 38.

**b. Defendants' Compelling Interests Outweigh Plaintiffs' Speculative Harms.**

Defendants' compelling interests "plainly outweigh[]" the alleged harm to Plaintiffs' attenuated religious and cultural interests in the Big Bend National Park project areas. *Winter*, 555 U.S. at 26, 33; *see Nken*, 556 U.S. at 435 (stating that the interests of the federal government and the public merge when the federal government is a party). Plaintiffs generally contend that traditional burial sites and cultural artifacts are likely to be affected by the barrier construction project, and that if they are, inadequate protocols are in place for addressing cultural and religious concerns. Plaintiffs' speculative harms are insufficient to establish irreparably injury required for a TRO and, in any event, do not outweigh the federal government's compelling interest in securing the border and preventing narcotics from entering the country.

Irreparable injury must be "likely" in the absence of an injunction, not vaguely possible, during the period before the Court can decide the merits. *Winter*, 555 U.S. at 22. Indeed, "[i]ssuing a preliminary injunction based only on a *possibility* of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that

may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* (citing *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997) (emphasis added). Plaintiffs cannot meet that demanding standard here.

For one, the injuries are speculative as to the impact the project will have on their religious and cultural practices, artifacts, or grounds. Plaintiffs have not identified any specific instance in which their access to a specific site in or near the Park has actually been impeded or disturbed. They offer only vague speculation that some harm might occur at unspecified locations in the future. As stated above, the projects in the Big Bend Sector are still in the design phase. Enriquez Decl. ¶¶ 17–25. Further, in its many years of constructing border infrastructure, CBP has a long track record of working with resource managers and stakeholders, including affected tribes, to avoid or minimize impacts to cultural resources. *Id.* ¶ 29.

Plaintiffs assert that "unidentified archaeological resources may be destroyed through excavation or grading before their existence is known." Mot. at 13. However, CBP has robust protocols in place for avoiding or minimizing impacts to such sensitive resources. Enriquez Decl. ¶ 28. CBP conducts biological and cultural surveys of the project area to identify resources within the project footprint. *Id.* ¶ 27. The results of those surveys are used in conjunction with the results of prior surveys, other existing data and literature, and any information provided by Plaintiffs and federal resource managers. *Id.* Further, CBP has protocols for inadvertent discovery of cultural resources in the field. *Id.* ¶ 28. If cultural resources are encountered, work must stop in the immediate area until the environmental monitor assesses the significance of the find. *Id.*; Exs. D–E. The protocols also provide that, if human remains are encountered, work will stop within 100 feet and Federal and State agencies will be notified. *Id.* Indeed, where there are identified resources, CBP develops means to avoid or minimize impacts where it is possible,

which includes consultation with federal or state resource agencies and stakeholders. *Id.* ¶ 26.

Plaintiffs also express overstated concerns that they may lose access to unspecified areas of cultural or ancestral significance, including areas along the Rio Grand River. To the extent Plaintiffs are referring to locations either in Big Bend National Park or within the Big Bend 4 project area, that project involves only the construction of roads and vehicle barrier system. *Id.* ¶ 32. No bollard-style pedestrian barrier is planned as part of the Big Bend 4 project. *Id.* Consequently, the completed "post & rail" or other style vehicular barrier will not impede Plaintiffs' ability to access areas within Big Bend National Park or other publicly accessible portions of the Big Bend 4 project area. *Id.* ¶¶ 11, 32–34.

To the extent Plaintiffs' access concerns extend to construction on private land in Presidio County as part of the Big Bend 2 project, field work has not started yet and, when it does in the coming weeks, those limited activities will include things like geotechnical surveys, clearing and grubbing for geotechnical surveys, or mobilization of equipment in those areas where CBP has secured a right of access. *Id.* ¶ 33. In any event, CBP has a long history of incorporating gates into barrier system to facilitate access for various activities in consultation with affected landowners as part of the real estate acquisition process. *Id.* ¶ 34.

Plaintiffs also express concerns about possible impacts from new lighting, but no new stadium or LED lighting is planned in Big Bend National Park as part of the Big Bend 4 project. Infrared illuminators will be used in place of any LED lighting for cameras that will need to operate at night. *Id.* ¶ 35. Further, for those parts of the Big Bend 4 project area that are outside the National Park and in the Big Bend 2 project area, infrared illuminators will also be used in place of LED or stadium lighting in rural areas. *Id.* In urban areas where LED lighting may be installed, CBP will implement measures such as light shielding to minimize lighting spillage. *Id.*

At this time, because the Big Bend projects are still in the planning phase, no final decisions have been made regarding the precise location of LED lighting or infrared illuminators that may be installed in the project areas, so any asserted harm is entirely speculative. *Id.*

Plaintiff Far Flung's claim of irreparable harm is even more tenuous than the other Plaintiffs. Far Flung predominantly alleges potential monetary harm or harm to its business interests. Financial harm, though, generally is not considered irreparable by Courts. *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012). Even if the Court could consider alleged financial harm "irreparable" for the sake of evaluating the propriety of injunctive relief, the assertion by Far Flung is impermissibly vague. It does not specify a specific trip route that would be impacted without the injunction, nor does it specify a typical amount of customers or revenue that it receives and would be at risk of losing without the injunction. Far Flung does not establish or specify that any barrier construction activity would cause a cancellation of specific services it offers to customers. In fact, the planned construction will not impact the area's suitability for river or outdoor recreation, and some of the road improvements planned as part of the Big Bend 4 project may make areas in the National Park more accessible for recreation. Enriquez Decl. ¶ 37. Far Flung's speculative and vague concerns thus do not give rise to a showing of irreparable injury.

On each point, Plaintiffs have failed to establish that their speculative injuries outweigh Defendants' compelling border security interests. *See Winter*, 555 U.S. at 22.

## CONCLUSION

For these reasons, the Court should deny Plaintiffs' motion for a temporary restraining order.

Dated: August 24, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General, Civil Division

ANDREW WARDEN
Assistant Branch Director
Federal Programs Branch

*/s/ Pamela I. Amaechi*
PAMELA I. AMAECHI
D.C. Bar No. 1672958
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Tel: (202) 598-5093
E-mail: pamela.i.amaechi@usdoj.gov

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I, Pamela I. Amaechi, hereby certify that on August 24, 2026, I electronically filed the foregoing using the Court's CM/ECF system, which automatically serves this document upon all counsel of record.

*/s/ Pamela I. Amaechi*
PAMELA I. AMAECHI

*Counsel for Defendants*