**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| People of the La Junta For Preservation; Far Flung Outdoor Center; Andrew Austin; and, Christina Hernandez, | § | |
| *Plaintiffs*, | § | |
| v. | § | |
| Department of Homeland Security; Markwayne Mullin, in his official capacity as the Secretary of the United States Department of Homeland Security; Customs and Border Protection; Rodney S. Scott, in his official capacity as the Commissioner of United States Customs and Border Protection; Lloyd M. Easterling, in his official capacity as the Chief Patrol Agent of the United States Border Patrol's Big Bend Sector; Department of the Interior; Doug Burgum, in his official capacity as the Secretary of the Interior; and, National Park Service, | § | CIVIL ACTION NO. 26-5245 |
| *Defendants.* | § | |

---

**PLAINTIFFS' REPLY TO THE DEFENDANTS' RESPONSE TO THE EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**

---

**INTRODUCTION**

Defendants' Response clarifies the scope and imminence of the construction Plaintiffs seek to enjoin. It does not eliminate either. Defendants first suggest that Plaintiffs confused two separate CBP projects—Big Bend 2 and Big Bend 4—because Big Bend 4 includes construction within Big Bend National Park while Big Bend 2 does not. Plaintiffs are not confused. Defendants mistake the geographic breadth of Plaintiffs' challenge for confusion about CBP's internal project nomenclature.

Plaintiffs challenge construction both within Big Bend National Park and outside the Park throughout the affected Big Bend corridor. Big Bend 4 supplies the threatened construction within the National Park and east of it. Big Bend 2 supplies additional threatened construction outside the National Park in Presidio County. Defendants' own evidence establishes that distinction. Enriquez Decl. ¶¶ 7–16. That distinction does not narrow the controversy. It confirms it.

More importantly, Defendants' evidence largely resolves the question of imminence. Work inside Big Bend National Park began weeks ago. Before CBP voluntarily paused the project, its contractor had mobilized equipment, graded roads, removed vegetation, graded soils, pioneered new access routes, and begun clearing and grubbing along the project alignment. Enriquez Decl. ¶¶ 18–20. Further clearing, staging, grading, and geotechnical work was scheduled to follow. *Id.* ¶ 21. The pause upon which Defendants now rely extends only until "at least August 31, 2026." *Id.* ¶ 18. Outside the Park, CBP expects field work associated with Big Bend 2 to begin "in the coming weeks." *Id.* ¶ 25.

The Government therefore asks the Court to accept two propositions at once: that the threatened construction is too remote to justify temporary relief, but that an order temporarily preventing that same construction would inflict immediate and irreparable injury upon the United States. Those positions sit uneasily together.

The Response also places almost the entirety of Defendants' merits argument against Christina Hernandez's Religious Freedom Restoration Act claim on *Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439 (1988). But *Lyng* was decided five years before RFRA existed. Congress subsequently enacted RFRA, amended it to adopt an expansive statutory definition of religious exercise, expressly included the religious use of real property within that protection, and placed upon the Government the burden of satisfying strict scrutiny when it substantially burdens religious exercise. The Court should apply the statute Congress enacted.

A temporary restraining order would preserve the *status quo* long enough for the Court to determine whether Defendants may permanently alter these lands before Plaintiffs' remaining, unwaived federal rights can be adjudicated.

## I. DEFENDANTS MISCHARACTERIZE THE GEOGRAPHIC SCOPE OF PLAINTIFFS' CLAIMS.

Defendants emphasize that Big Bend 2 does not involve construction inside Big Bend National Park. Plaintiffs do not contend otherwise. Plaintiffs' challenge is not confined to the Park. The requested relief expressly concerns construction both within the National Park and outside it, including affected federal, state, private, tribal, and other lands identified in Plaintiffs' Motion and Proposed Order.

Defendants' own declaration describes the two relevant projects. Big Bend 4 includes approximately seventeen miles of non-contiguous vehicle barrier within Big Bend National Park and east of the Park, together with construction or improvement of roads and installation of technology. Enriquez Decl. ¶¶ 11–12. Big Bend 2 includes approximately sixty-one miles of barrier infrastructure in Presidio County outside the National Park, including thirty-foot bollard-style pedestrian barriers, roads, cameras, lights, sensors, and other detection technology. *Id.* ¶ 13.

The distinction is especially important to Defendants' RFRA argument. Defendants repeatedly characterize this action as a religious objection to the Government's management of "its own land." But their own witness states that the majority of the Big Bend 2 project alignment is presently private land and that CBP must obtain access agreements, easements, or property interests before performing work on much of that alignment. *Id.* ¶¶ 24–25.

Plaintiffs' challenge is not confined to Big Bend National Park. People of La Junta owns property along the Rio Grande in Presidio County outside the Park, as reflected in the exhibits submitted with Plaintiffs' TRO Motion. Defendants' own declarant acknowledges that this property lies in or near the Big Bend 2 project area. Enriquez Decl. ¶ 16. Thus, the construction challenged here includes not only federal land within Big Bend National Park, but also construction affecting private property and other lands along the Rio Grande outside the Park.

That fact matters because Defendants repeatedly characterize Hernandez's RFRA claim as a challenge to the Government's management of "its own land." But the challenged construction is not limited to federal land. Big Bend 2 runs through Presidio County, where Defendants acknowledge that most of the project alignment is presently private property and

CBP must secure access agreements, easements, or fee interests before proceeding. Enriquez Decl. ¶¶ 24–25.

*Lyng* cannot transform construction on private, state, or other non-federal lands into the Government's internal management of its own property. Plaintiffs' § 158 claim concerns construction within Big Bend National Park. Hernandez's RFRA claim is not artificially bounded by the Park boundary. *See* Dkt. No. 10 at 6 (acknowledging that Plaintiffs seek relief concerning construction in Big Bend National Park and on "federal, state, private, tribal, or other lands" outside it, and identifying Hernandez's RFRA claim as one of the grounds for that relief). The Court should analyze each claim according to the lands and injuries to which it actually applies.

## II. HERNANDEZ HAS ESTABLISHED A LIKELIHOOD OF SUCCESS UNDER RFRA.

### A. RFRA supplies the governing statutory rule, and *Lyng* does not end the inquiry.

Defendants state in their Introduction that *Lyng* "denied RFRA relief." Dkt. No. 10 at 1. That cannot be correct. *Lyng* was decided in 1988. Congress enacted RFRA in 1993. The chronological point illustrates the larger doctrinal one. *Lyng* addressed the constitutional Free Exercise Clause. Hernandez brings a statutory claim under a law Congress enacted afterward to provide substantial protection for religious exercise beyond the constitutional floor.

RFRA provides that the Government "shall not substantially burden a person's exercise of religion" unless the Government demonstrates that application of the burden to that person furthers a compelling governmental interest and is the least restrictive means of furthering that interest. 42 U.S.C. § 2000bb-1(a)–(b).

The Supreme Court has emphasized that RFRA's protection goes "far beyond what this Court has held is constitutionally required." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 706 (2014). Congress, again, strengthened that protection in 2000. RFRA originally defined religious exercise by reference to First Amendment doctrine. Congress removed that definition and instead incorporated the broader definition now found at 42 U.S.C. § 2000cc-5. *See* 42 U.S.C. § 2000bb-2(4). That definition provides that religious exercise includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A).

Congress went further still. "The use, building, or conversion of real property for the purpose of religious exercise shall be considered to be religious exercise of the person or entity that uses or intends to use the property for that purpose." 42 U.S.C. § 2000cc-5(7)(B).

Hernandez's claim therefore implicates something Congress expressly placed within RFRA's protection, the use of a particular place for religious exercise. Defendants rely upon legislative history from RFRA's original 1993 enactment to argue that Congress preserved *Lyng* wholesale. But Congress amended the relevant statutory definition in 2000. Whatever interpretive force the 1993 legislative history may carry, it cannot override the broader statutory language Congress subsequently enacted. Plaintiffs do not contend that *Lyng* is irrelevant. They contend that it does not end the statutory inquiry merely because some of the threatened activity occurs on federal land.

**B. Hernandez alleges interference with a concrete religious act at a particular place—not disagreement with the Government's use of public land.**

The Response repeatedly characterizes Hernandez's injury as spiritual disagreement with government land management. That is not her claim. Hernandez has identified religious practices requiring access to ancestral and cultural places within the affected corridor. She has further identified an impending reburial at a traditional burial site within the proposed construction corridor. Defendants' own declarant acknowledges that allegation. Enriquez Decl. ¶ 31.

Hernandez will testify at the hearing regarding the religious practice at issue, the significance of the place itself, the contemplated reburial, its timing, and the manner in which clearing, grading, road construction, barriers, or other physical alteration would interfere with or prevent that religious exercise.

Plaintiffs have deliberately avoided publishing the precise location of sensitive burial and cultural sites on the public docket. That caution should not be mistaken for an absence of evidence. If the Court requires precise geographic information, Plaintiffs are prepared to provide it through testimony, in camera, under seal, or through another protective procedure directed by the Court. Hernandez does not merely contend that construction makes the landscape less spiritually satisfying or that she disagrees with the Government's chosen use of land. She contends that physical alteration of the place itself threatens an identified religious act that must occur there. A gate installed after a sacred or burial site has been excavated, graded, altered, or destroyed does not restore the religious exercise that was lost.

**C. Tap Pilam does not resolve Hernandez's RFRA claim.**

Defendants also rely heavily upon *Tap Pilam Coahuiltecan Nation v. Alamo Trust, Inc.*, 489 F. Supp. 3d 611 (W.D. Tex. 2020). But the claims are materially different. As Defendants

themselves describe *Tap Pilam*, the plaintiffs sought participation in governmental decisions concerning human remains and additional authority to conduct ceremonies in connection with government management of the Alamo. Dkt. No. 10 at 10–11. The Court applied constitutional Free Exercise principles, including *Lyng*, in rejecting those requested benefits. *Tap Pilam* was a First Amendment case against state and local actors; it did not adjudicate a federal RFRA claim against the United States. Hernandez seeks no governmental appointment, decision-making authority, or special role in management of federal property.

She invokes RFRA and seeks to prevent government conduct from physically interfering with an existing exercise of religion. The difference is not semantic. RFRA protects against governmental burdens upon religious exercise, and Congress has specifically defined religious exercise to include the religious use of real property. 42 U.S.C. §§ 2000bb-2(4), 2000cc-5(7).

**D. Fifth Circuit law requires an individualized RFRA inquiry.**

Even where the Government invokes unquestionably important interests, Fifth Circuit precedent requires more than a categorical assertion that the Government's program serves those interests. In *Tagore v. United States*, 735 F.3d 324 (5th Cir. 2013), the Government invoked security in federal buildings to justify application of a federal weapons prohibition to a Sikh employee wearing a kirpan. The Fifth Circuit readily acknowledged the importance of federal-building security. *Id*. at 331.

Relying upon *Gonzales v. O Centro Espírita Beneficente União do Vegetal*, 546 U.S. 418 (2006), the Fifth Circuit held that RFRA requires the Government to explain why imposing the burden "to the person" furthers the asserted compelling interest. *Tagore*, 735 F.3d at 331. A

categorical approach was insufficient. *Id*. The court further emphasized that, despite appropriate deference to officials responsible for domestic security, "conclusional affidavits" cannot satisfy the Government's obligation under RFRA. *Id*. at 332. The same principle controls here.

Plaintiffs do not dispute that border security is an important governmental interest. But "border security" stated at that level of generality does not answer RFRA's statutory question. Defendants must demonstrate why burdening Hernandez's particular religious exercise at the particular place at issue is necessary to further that interest. The Supreme Court has repeatedly required that individualized inquiry. *O Centro*, 546 U.S. at 430–31. The Government cannot satisfy RFRA by identifying an important program in the abstract and then treating every application of that program as automatically compelling.

**E. Defendants have not carried their burden under RFRA's least-restrictive-means requirement.**

The Response quotes RFRA's least-restrictive-means requirement. Dkt. No. 10 at 7. It does not meaningfully apply it. Once Hernandez establishes a substantial burden upon her sincere religious exercise, the burden of going forward and the burden of persuasion rest with Defendants. 42 U.S.C. §§ 2000bb-1(b), 2000bb-2(3).

The Fifth Circuit has described least-restrictive-means review as an "exceptionally demanding" test. *McAllen Grace Brethren Church v. Salazar*, 764 F.3d 465, 475–76 (5th Cir. 2014). In *McAllen Grace*, the Fifth Circuit rejected the Government's reliance upon broadly formulated interests and required proof focused upon the particular religious claimant. *Id*. at 475.

It further held that the Government must provide actual evidence, rather than conjecture, demonstrating that less restrictive alternatives will not work. *Id*. at 476–79.

Defendants have provided no such analysis here. They do not explain why the barrier or road must traverse or disturb a particular religious location. They do not explain why a limited buffer around a burial or ceremonial site would undermine operational control. They do not explain why an alignment could not be adjusted. They do not explain why access could not be preserved. They do not explain why the timing or manner of construction could not be modified to protect a specific religious exercise. They do not explain why a site-specific accommodation would materially impair border security. Most importantly, Defendants' own evidence shows that such accommodations are not fanciful.

CBP states that when cultural resources are discovered during construction, work is stopped. Enriquez Decl. ¶ 28. CBP states that when human remains are encountered, work stops within one hundred feet. *Id*. CBP describes a prior border-barrier project in which tribal monitors identified a potentially significant cultural site, work was halted, the area was cordoned off, tribes were consulted, and CBP continued to avoid the site for the remainder of the project. *Id*. ¶ 29.

CBP states that it has incorporated gates into border infrastructure to preserve access where necessary. *Id*. ¶ 34. CBP states that it substitutes infrared technology for other lighting in sensitive areas. *Id*. ¶ 35. Those are less restrictive means identified by Defendants themselves. As *McAllen Grace* teaches, the existence of government-created exceptions and accommodations is evidence that less restrictive alternatives may exist. 764 F.3d at 476. If CBP can avoid a cultural

site discovered after construction begins, Defendants must explain why CBP cannot avoid or protect a religious burial site identified before the bulldozers arrive. They have not done so.

**F. IIRIRA does not displace RFRA.**

Defendants repeatedly invoke DHS's broad authority under IIRIRA. But Congress enacted an express rule governing the relationship between RFRA and other federal statutes. RFRA applies to "all Federal law, and the implementation of that law," whether adopted before or after RFRA. 42 U.S.C. § 2000bb-3(a).

And federal legislation enacted after RFRA remains subject to RFRA unless that legislation "explicitly excludes such application by reference to" RFRA itself. Id. § 2000bb-3(b). Congress therefore already supplied the rule of construction. Broad authority under IIRIRA does not eliminate RFRA. And the Secretary's waivers at issue here did not waive RFRA. Defendants must comply with both.

**III. DEFENDANTS' READING OF 16 U.S.C. § 158 WOULD REDUCE CONGRESS'S UNWAIVED COMMAND TO SURPLUSAGE.**

Defendants next argue that § 158 contains no private right of action and therefore cannot support relief. That argument addresses a claim Plaintiffs do not make. Plaintiffs do not rely upon an implied cause of action created by § 158. They invoke the traditional equitable authority of federal courts to restrain federal officers acting *ultra vires*.

Plaintiffs recognize that nonstatutory *ultra vires* review is narrow. *See e.g. Nuclear Regulatory Commission v. Texas*, 605 U.S. 665, 681–82 (2025). *NRC* confirms that nonstatutory

*ultra vires* review is narrow and ordinarily requires agency conduct contrary to a specific and mandatory statutory limitation. It also holds that such review is unavailable where Congress has supplied an adequate statutory avenue for judicial review. 605 U.S. at 681–82. Here, unlike *NRC*, DHS's waiver has eliminated ordinary APA review. Plaintiffs therefore rely on § 158 itself as the specific and mandatory limitation. Congress directed that the "administration, protection, and development" of this particular National Park "shall" be exercised under Interior and NPS.

Section 158 is not a generalized policy aspiration. Congress provided that "[t]he administration, protection, and development of the Big Bend National Park shall be exercised under the direction of the Secretary of the Interior by the National Park Service." 16 U.S.C. § 158. The language is specific and mandatory. And it identifies who Congress directed to exercise the administration, protection, and development of this particular National Park.

Section 158 is a park-specific command; IIRIRA is a generally applicable grant of border-infrastructure authority. "Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one." *Morton v. Mancari*, 417 U.S. 535, 550–51 (1974). Congress gave DHS authority to waive § 158 if it believed doing so necessary. DHS did not do so. The canon has particular force here because Congress supplied DHS a mechanism for eliminating the specific statute if compliance obstructed construction: waiver. DHS exercised that authority extensively but left § 158 intact.

Defendants' Response demonstrates why that provision matters. DHS expressly waived the National Park Service Organic Act, the National Park Service General Authorities Act, and numerous other statutes that otherwise govern Park management. Dkt. No. 10 at 13. It did not waive § 158. That choice must be given effect.

Defendants argue that IIRIRA and § 158 should be harmonized rather than placed in conflict. Plaintiffs agree. The statutes can readily coexist. IIRIRA provides DHS broad authority to construct border infrastructure. Section 158 assigns the administration, protection, and development of this particular National Park to Interior and the National Park Service. Giving effect to both provisions does not nullify IIRIRA. It recognizes the location-specific direction Congress enacted for Big Bend National Park.

Defendants instead ask the Court to construe IIRIRA as though Congress never enacted § 158. On their theory, DHS may independently undertake the physical development of Big Bend National Park notwithstanding an unwaived statute directing that the Park's administration, protection, and development "shall" occur under Interior and NPS. The Defendants' interpretation does not harmonize the statutes. It makes § 158 irrelevant precisely when its command matters.

## IV. DEFENDANTS' OWN EVIDENCE ESTABLISHES IMMINENT AND IRREPARABLE HARM.

Defendants repeatedly characterize Plaintiffs' injuries as speculative because final barrier construction has not begun. Their own witness establishes otherwise. Inside Big Bend National Park, CBP's contractor already mobilized equipment and commenced field activity. Enriquez Decl. ¶¶ 18–19. The contractor graded and improved roads. *Id*. ¶ 20. It "pioneered" access routes by removing vegetation and grading soil. *Id*. It cleared and grubbed vegetation along the project alignment. *Id*. Geotechnical work was scheduled to follow. *Id*. ¶ 20. Additional staging, clearing, grubbing, and grading associated with construction was scheduled for early September. *Id*. ¶ 21. That work stopped only because the Commissioner ordered a temporary administrative pause

extending until at least August 31. *Id*. ¶ 18. Outside the Park, Big Bend 2 is also advancing. CBP expects field work to begin in areas where access has been secured "in the coming weeks." *Id*. ¶ 25.

This is not an abstract concern about a distant federal project. One Plaintiff already owns property along the Rio Grande in or near the Big Bend 2 corridor, and Defendants expect field work in Big Bend 2 to begin in the coming weeks. This is not a project awaiting congressional appropriation, contract award, site selection, or some indefinite future administrative decision. Contracts exist. Alignments exist. Equipment has already entered the Park. Ground has already been disturbed. Additional work is contemplated within days or weeks.

Defendants' cultural-resource protocols independently demonstrate the nature of the risk. CBP acknowledges that cultural resources and human remains may be encountered during ground disturbance. Its own procedures require work to halt if either is discovered. *Id*. ¶ 28. Those procedures may limit additional injury after discovery. They do not undo the initial disturbance that reveals the resource.

In addition, the threatened loss of religious exercise independently constitutes irreparable injury. *See Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 295–96 (5th Cir. 2012) (recognizing irreparable injury from interference with First Amendment and RLUIPA religious-exercise rights and collecting RFRA authority applying the same principle).

A burial site discovered by excavation equipment has already been disturbed. A prehistoric or cultural feature exposed by grading has already been altered. Vegetation removed

from an irreplaceable location cannot be restored by a later judgment. Plaintiffs need not wait until the bulldozer reaches the burial site before seeking equitable relief.

## V. DEFENDANTS' VOLUNTARY PAUSE UNDERCUTS THEIR CLAIM THAT TEMPORARY RELIEF WILL IRREPARABLY HARM THE UNITED STATES.

Defendants devote substantial briefing to the importance of border enforcement. Plaintiffs do not dispute that interest. The relevant question is narrower: whether temporarily preserving the affected places while this Court adjudicates Plaintiffs' claims will materially impair that interest. With respect to construction inside Big Bend National Park, CBP's own conduct supplies compelling evidence.

On August 18, the Commissioner halted all Big Bend 4 activity within the Park while CBP reviews the planned construction. Enriquez Decl. ¶ 18. The Government is therefore already maintaining border security without ongoing construction inside the Park. Yet Defendants contend that a judicial order temporarily preserving substantially that same *status quo* would inflict irreparable harm upon the United States.

The Response also relies upon border-sector-wide apprehension and narcotics statistics. Those numbers may demonstrate an important governmental interest in border enforcement generally. They do not demonstrate why immediate clearing, grading, or construction at a particular religious, burial, cultural, or protected site is indispensable to that interest.

Under RFRA, that distinction is dispositive. Under the equitable TRO factors, it remains highly relevant. The only specific financial injury identified by Defendants is that a court-ordered pause "could" result in contractor delay claims or increased costs. Enriquez Decl. ¶ 38.

That contingent financial concern does not compare to destruction that cannot be repaired after judgment.

Nor does *Trump v. Sierra Club*, 588 U.S. 930 (2019), mechanically decide the balance here. That stay arose from different claims, different statutory theories, and a different record. Defendants themselves acknowledge that the Supreme Court's disposition rested in part on the Government's showing that those plaintiffs lacked a cause of action. This Court must consider the actual claims and evidence before it. The relief sought here is temporary. The destruction Plaintiffs seek to prevent is not.

**VI. THE EQUITIES FAVOR PRESERVING WHAT CANNOT BE REPLACED.**

There is a fundamental asymmetry between the parties' asserted harms. If Plaintiffs are wrong, construction is delayed. If Defendants are wrong and construction proceeds, religious sites, burial locations, cultural resources, vegetation, terrain, archaeological material, and the character of an extraordinary landscape may be permanently altered before the Court has an opportunity to decide the merits. Money can compensate a contractor for delay. Money cannot reconstruct a burial site.

A subsequent judgment cannot put disturbed remains back into undisturbed earth or recreate an archaeological feature after grading equipment passes through it. The Government has already demonstrated that short-term delay is administratively possible by voluntarily imposing precisely such a delay inside the National Park.

Equity exists for circumstances like this one. Preserving the *status quo* costs time, while failing to preserve it may make the eventual judgment meaningless. This is exactly the kind of harm that temporary relief was created to prevent.

**CONCLUSION**

Defendants' Response does not demonstrate that Plaintiffs arrived too early. Their own evidence shows the opposite. Construction-related activity has already altered land inside Big Bend National Park. Additional work is planned. Work outside the Park is expected to begin in the coming weeks. A voluntary pause inside the Park expires within days.

The Government's principal RFRA argument asks the Court to treat a 1988 constitutional decision as though it extinguishes a statute Congress enacted five years later, materially expanded in 2000, and expressly made applicable to later federal law.

RFRA demands more. It requires an individualized inquiry. Once Hernandez establishes the substantial burden upon her religious exercise, it places the burden on Defendants to demonstrate that substantially burdening her, at this place, is necessary to further a compelling governmental interest and that no less restrictive means will accomplish that interest. Defendants have not made that showing. Their own evidence identifies accommodations, avoidance measures, buffers, access mechanisms, and other less restrictive tools CBP has used in other border projects. The Court should preserve the *status quo* long enough to decide the merits.

Plaintiffs respectfully request that the Court grant their Emergency Motion for Temporary Restraining Order.

**DATE**: August 26, 2026

Respectfully submitted,

*/s/ Roland Gutierrez*
Roland Gutierrez
The Law Office of Roland Gutierrez
SBN #: 24007291
104 Babcock Ste. 107
San Antonio, Texas 78201
(210) 225-7114

Martin Golando
State Bar No. 24059153
The Law Office of
Martin Golando, PLLC
2326 W. Magnolia
San Antonio, Texas 78201
Martin.Golando@gmail.com
210.471.1185

Dick DeGuerin
DeGuerin and Dickson
1018 Preston
Houston, Texas, 77002
SBN #: 05638000
713-223-5959

ATTORNEYS FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

I hereby certify that on August 26, 2026, I electronically filed the foregoing with the Clerk of Court using the Court's CM/ECF system, which will send notice of electronic filing to all counsel of record.

Respectfully submitted,

*/s/ Martin Golando*
Martin Golando