**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **THE PEOPLE OF LA JUNTA FOR PRESERVATION, FAR FLUNG OUTDOOR CENTER, ANDREW AUSTIN, and CHRISTINA HERNANDEZ,** | § | |
| **Plaintiffs,** | § | **NO. SA-26-CV-05245-OLG** |
| **v.** | § | |
| **DEPARTMENT OF HOMELAND SECURITY *et al.*,** | § | |
| **Defendants.** | § | |

**ORDER DENYING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**

Before the Court is Plaintiffs' Emergency Motion for Temporary Restraining Order (Dkt. No. 2). Defendants have responded (Dkt. No. 10), and Plaintiffs have replied (Dkt. No. 12). After careful consideration, the Court finds that Plaintiffs' Motion for TRO must be denied.

## BACKGROUND

This dispute arises out of the government's plan to construct barriers along portions of the Texas-Mexico border. Plaintiffs Christina Hernandez, the People of La Junta for Preservation (PLJP), Andrew Austin, and Far Flung Outdoor Center oppose this construction and initiated this suit, seeking declaratory and injunctive relief. (Dkt. No. 1.) By the instant motion, Plaintiffs seek "a short and narrow" injunction directed at two "categories of land"—namely, (1) Big Bend National Park and (2) "specifically identified religious locations used by Hernandez that would be affected by construction." (Dkt. No. 2 at 3.)

### A. IIRIRA Waivers

Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) authorizes the Secretary of Homeland Security to construct additional physical barriers and roads

near the international border to deter unlawful crossings in areas of high illegal entry. *See* REAL ID Act, Pub. L. No. 109–13, § 102(a), 119 Stat. 231, 306 (2005) (codified at 8 U.S.C. § 1103 note). To that end, Congress provided that, "[n]otwithstanding any other provision of law, the Secretary of Homeland Security shall have the authority to waive all legal requirements such Secretary, in such Secretary's sole discretion, determines necessary to ensure expeditious construction of the barriers and roads under this section. Any such decision by the Secretary shall be effective upon being published in the Federal Register." *Id.* § 102(c)(1).

This case involves two waivers under IIRIRA to expedite barrier construction in portions of south Texas within the United States Border Patrol Big Bend Sector—namely, the Big Bend 2 (BB2) and Big Bend 4 (BB4) projects. (Dkt. No. 10-1 at 4.)

The BB2 project waiver was executed by the DHS Secretary on February 17 and later amended on July 2.[1] As part of the BB2 project, Customs and Border Patrol (CPB) plans to construct approximately 61 miles of a 30-foot bollard style pedestrian barrier system in Presidio County, Texas and "as appropriate to each area, cameras, lights, sensors, and other detection technology." (Dkt. No. 10-1 at 5.) The "majority of the [BB2] project is on private land," and none of it is within Big Bend National Park. (Dkt. No. 10 at 11 & n.1; *see* Dkt. No. 20-1 at 4.)

The BB4 project waiver was first executed on May 15 and then amended on July 9.[2] The BB4 project involves "approximately 17 miles of non-contiguous vehicle barrier system" within and to the east of Big Bend National Park. (Dkt. No. 10-1 at 4.) Within portions of Big Bend Ranch

---

[1]*See* Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, as Amended, 91 Fed. Reg. 7297 (Feb. 17, 2026), *as amended by* Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, as Amended, 91 Fed. Reg. 40,550 (July 2, 2026).

[2]*See* Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, as Amended, 91 Fed. Reg. 27,969 (May 15, 2026), *as amended by* Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, as Amended, 91 Fed. Reg. 34,831 (July 2, 2026).

State Park, the BB4 project involves construction of a road with assisted technology instead of a barrier. (*Id.* at 4–5; *see* Dkt. No. 20-1 at 6.)

### B. Procedural History

Plaintiffs filed suit on August 14, 2026, challenging the scope of the construction authority granted to CBP under the waivers. (Dkt. No. 1.) On August 28, 2026, the Court held an evidentiary hearing on Plaintiffs' request for emergency injunctive relief. (*See* Dkt. No. 11; Dkt. No. 14.) Following that hearing, Defendants advised that CBP agreed to pause all ground-disturbing activity in the BB2 and BB4 project areas until September 30, 2026, to allow for additional public engagement. (*See* Dkt. No. 20 at 2.)

On September 28, 2026, Plaintiffs filed an opposed motion for a status conference (Dkt. No. 19). In response, Defendants filed a status report and requested that the Court rule on Plaintiff's Motion for TRO without holding a status hearing (Dkt. No. 20).

## DISCUSSION

"A TRO is simply a highly accelerated and temporary form of preliminary injunctive relief, which requires that the party seeking such relief establish the same four elements for obtaining a preliminary injunction." *Greer's Ranch Cafe v. Guzman*, 540 F. Supp. 3d 638, 644–45 (N.D. Tex. 2021) (citation modified). "The Court may issue a preliminary injunction if the movant establishes (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm; (3) the balance of hardships weighs in the movant's favor; and (4) the issuance of the preliminary injunction will not disserve the public interest." *Id.* at 645.

In support of their requested injunctive relief, "Plaintiffs principally rely on Hernandez's religious injury and PLJP's archaeological and preservation injuries." (Dkt. No. 2 at 8.) They assert that the barrier construction violates (1) the Religious Freedom Restoration Act (RFRA) and (2) 16

U.S.C. § 158. (*See* Dkt. No. 2 at 10–13; Dkt. No. 1 at 36, 40) Plaintiffs contend that the Secretary did not waive RFRA with respect to either of the Big Bend project areas, and that the Secretary did not waive § 158 with respect to the BB4 project area. (Dkt. No. 2 at 6.)

As discussed below, Plaintiffs have not demonstrated a likelihood of success on the merits of either claim—let alone a substantial one. Accordingly, the Court will deny their request for a TRO based on this factor alone.

## A. RFRA

Plaintiffs' RFRA-based challenge to the BB2 and BB4 projects appears in Count III of their complaint. (Dkt. No. 1 at 40–42.) RFRA provides that the government cannot substantially burden a person's exercise of religion unless the government demonstrates that application of the burden to the particular person furthers a compelling governmental interest and is the least restrictive means of furthering that interest. 42 U.S.C. § 2000bb-1(a)–(b).

Here, Plaintiffs assert that the BB2 and BB4 construction "threaten[s] [Hernandez's] religious practices" by limiting her ability to exercise her religion in specific locations along the Rio Grande River. (Dkt. No. 2-1 at 53.) They contend that because the waivers covering the BB2 and BB4 project areas did not include RFRA, any construction that substantially burdens her religious exercise exceeds the scope of CBP's authority under the waivers. (Dkt. No. 1 at 41; Dkt. No. 2 at 9.) In response, Defendants contend that Plaintiffs have not established a "substantial burden" within the meaning of the statute. (*See* Dkt. No. 10 at 13–17.) Defendants are correct.

"[A] government action or regulation creates a 'substantial burden' on a religious exercise if it truly pressures the adherent to significantly modify [her] religious behavior and significantly violates [her] religious beliefs." *U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336, 350 (5th Cir. 2022) (quoting *Adkins v. Kaspar*, 393 F.3d 559, 570 (5th Cir. 2004)). "[T]he effect of a government action

or regulation is significant when it either (1) influences the adherent to act in a way that violates [her] religious beliefs, or (2) forces the adherent to choose between, on the one hand, enjoying some generally available, non-trivial benefit, and, on the other hand, following [her] religious beliefs." *Adkins*, 393 F.3d at 570. But "a government action or regulation does not rise to the level of a substantial burden on religious exercise if it merely prevents the adherent from either enjoying some benefit that is not otherwise generally available or acting in a way that is not otherwise generally allowed." *Id.* Here, Plaintiffs have not demonstrated that construction in the BB2 and BB4 areas substantially burdens Hernandez's religious exercise.

Hernandez's religious practices include prayer beside the Rio Grande River, gathering water for ceremonies, and visiting ancestral resting places. (Dkt. No. 2 at 10; Dkt. No. 2-1 at 49.) She intends to continue her religious practices in the future and to participate in an "anticipated ceremony" to rebury ancestral remains at a site located within the proposed "border wall corridor." (Dkt. No. 2-1 at 54; *see* Dkt. No. 2 at 6–7, 10.) Plaintiffs therefore contend that "[e]xcavating that site, materially altering the surrounding land, physically separating Hernandez from it, or closing it for construction . . . *could* prevent the religious exercise from occurring at the place where [her] beliefs require it to occur." (*Id.* at 11 (emphasis added)). But Plaintiff has not established that any of the planned construction will, in fact, touch on that burial site, wherever it is located.

As a general matter, Plaintiffs have not shown that the activities in question—unfettered access to an international border river—is an "otherwise generally available . . . benefit," such that a law affecting that access might qualify as a substantial burden. *Adkins*, 393 F.3d at 570. In any event, at the hearing Hernandez offered only conclusory testimony that disconnecting her from the river would generally "impede" her religious practices, which occur in the national park, the state park, and on private land within the BB2 and BB4 project areas. Plaintiffs presented no evidence

of any existing disconnect. And Hernandez testified that she was still able to pray along the river in the state park and still has access to traditional gathering areas on her and PLJP's property. Plaintiffs also presented no evidence at the hearing that, should Defendants resume or complete construction of their proposed barriers in either the Big Bend areas, Hernandez would no longer be able to access the river. And even assuming that the barriers would make such access less convenient, that does not amount to a substantial burden under RFRA. *See Williams v. Bragg*, No. 11-CV-475-PRM, 2012 WL 12878177, at *4 (W.D. Tex. Aug. 31, 2012) ("More than . . . mere inconvenience . . . [is] required to establish a substantial burden."), *aff'd*, 537 F. App'x 468 (5th Cir. 2013). Accordingly, Plaintiffs have failed to clearly demonstrate a substantial likelihood of success on the merits of their RFRA claim.

**B. 16 U.S.C. § 158**

Plaintiffs' challenge to the BB4 project under 16 U.S.C. § 158 appears in Count I of their complaint. (Dkt. No. 1 at 36–38.) Section 158 provides that "the administration, protection, and development of the Big Bend National Park shall be exercised under the direction of the Secretary of the Interior by the National Park Service [NPS]."

Here, Plaintiffs assert that because this provision was not waived by DHS Secretary, CBP has no authority to construct border barriers within Big Bend National Park, the "administration, protection, and development" which remains statutorily vested in the Secretary of the Interior and the NPS. (Dkt. No. 2 at 12.) According to Plaintiffs, by constructing vehicle-only barriers along portions of the border that happen to fall within the national park, CBP is "administering, protecting, and developing" Big Bend National Park. And because those functions are the province of the Interior Secretary and NPS, *see* 16 U.S.C. § 158, any border-related construction *within* the Park necessarily exceeds the scope of the BB4 project waiver. (*See* Dkt. No. 2 at 12.) Setting aside

Plaintiffs' strained interpretation of § 158's plain language—for which they provide no authority—the Court agrees with Defendants that no private right of action exists to enforce perceived violations of § 158 (*see* Dkt. No. 10 at 17–18) and is unpersuaded by Plaintiffs' attempt to frame their statutory claim as an equitable ultra vires claim (*see* Dkt. No. 12 at 11; Dkt. No. 1 at 36).

Non-statutory ultra vires review is not generally available "simply because an agency has arguably reached a conclusion which does not comport with the law." *Nuclear Regulatory Comm'n v. Tex.*, 605 U.S. 665, 681 (2025) (quoting *Boire v. Greyhound Corp.*, 376 U.S. 473, 481 (1964) (citation modified)). Nor is it available whenever there is no other means for review of an agency's action. *See id.* ("Ultra vires review is *also* unavailable if . . . a statutory review scheme provides aggrieved persons with a meaningful and adequate opportunity for judicial review, or if a statutory review scheme forecloses all other forms of judicial review.") (citation modified). "Rather, it applies only when an agency has taken action entirely 'in excess of its delegated powers and contrary to a *specific prohibition*' in a statute." *Id.* (quoting *Railway Clerks v. Assoc. for Benefit of Non-contract Employees*, 380 U.S. 650, 660 (1965)).

Here, Plaintiffs have "basically dress[ed] up a typical statutory-authority argument as an ultra vires claim." *Id.* at 682. They contend that § 158 prohibits any construction activity by CBP within the Park, relying on the language of § 158 itself "as the specific and mandatory limitation" on CBP's authority. (Dkt. No. 12 at 12.) But § 158 contains no prohibitions; it merely states that the Secretary of the Interior *shall* administer, protect, and develop Big Bend National Park, not that a border barrier *shall not* be erected along that portion of the border falling within the territory of Big Bend National Park. *See Prohibition*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("A law or order that forbids a certain action."). Nor have Plaintiffs demonstrated that CBP's erecting vehicle barriers along portions of the international border is "in excess of its delegated powers,"

*Nuclear Regulatory Comm'n*, 605 U.S. at 681, simply because a certain part of that border falls within a national park that the Secretary of the Interior administers, protects, and develops. Thus, Plaintiffs have failed to clearly demonstrate a substantial likelihood of success on their § 158 claim.

## CONCLUSION

Based on the foregoing, Plaintiffs have not demonstrated a likelihood of success on the merits of their claims against Defendants. Accordingly, Plaintiffs' Motion for Temporary Restraining Order (Dkt. No. 2) must be and hereby is **DENIED**.

Plaintiffs' request for a status conference (Dkt. No. 19) is **DISMISSED AS MOOT**.

It is so **ORDERED**.

**SIGNED** on September 30, 2026.

ORLANDO L. GARCIA
United States District Judge