**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| PEOPLE OF THE LA JUNTA FOR PRESERVATION, FAR FLUNG OUTDOOR CENTER, ANDREW AUSTIN, and CHRISTINA HERNANDEZ,<br><br>Plaintiffs,<br><br>v.<br><br>DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br><br>Defendants. | Case No. 5:26-cv-05245-OLG |

**DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS


INTRODUCTION ..... 1

BACKGROUND ..... 2

I. Statutory Framework ..... 2

II. The Secretary's Exercise of Waiver Authority ..... 3

III. Procedural History ..... 4

STANDARD OF REVIEW ..... 5

ARGUMENT ..... 6

I. Count II Challenging DHS's Authority to Issue the June 9, 2026 Waiver Must Be Dismissed For Lack of Jurisdiction Under Rule 12(b)(1) ..... 6

II. Plaintiffs Fail To State Any Claim Upon Which Relief May Be Granted Under Rule 12(B)(6) ..... 8

A. Plaintiffs' Challenge to the June 9 Waiver is Time Barred. ..... 8

B. Plaintiffs' Ultra Vires Theories Fails to Satisfy the Rule 12(b)(6) Pleading Standard ..... 9

i. Plaintiffs Cannot Show that Defendants Exceeded Their Authority Under 16 U.S.C. § 158 (Count I) ..... 9

ii. Plaintiffs Cannot Show That Defendants Exceeded Their Authority Conferred By IIRIRA § 102 (Count II) ..... 11

iii. Plaintiffs cannot show that Defendants Exceeded Their Authority Under § 102(c) To Occupy Property (Count IV) ..... 14

C. Plaintiffs Fail to State a Claim That Defendants Violated the Religious Freedom Restoration Act ..... 15

i. Border Wall Construction on Federal Land is Not a Substantial Burden on the Exercise of Religion Under RFRA (Count III) ..... 15

ii. *Lyng* Forecloses Plaintiffs' Substantial Burden Claim ..... 18

CONCLUSION ..... 20

# TABLE OF AUTHORITIES

**Cases**


*Adkins v. Kaspar*,
393 F.3d 559 (5th Cir. 2004) ........ 16, 17

*Alexander v. Sandoval*,
532 U.S. 275 (2001) ........ 10

*Ambraco, Inc. v. Bossclip B.V.*,
570 F.3d 233 (5th Cir. 2009) ........ 5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 6, 17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 6

*Bowles v. Russell*,
551 U.S. 205 (2007) ........ 7

*Cnty. of El Paso v. Chertoff*,
No. 08-196, 2008 WL 4372693 (W.D. Tex. Aug. 29, 2008) ........ 3

*Ctr. for Biological Diversity v. McAleenan*,
404 F. Supp. 3d 218 (D.D.C. 2019) ........ 3

*Ctr. for Biological Diversity v. Noem*,
No. CV-25-00365-TUC-AMM, 2026 WL 836278 (D. Ariz. Mar. 26, 2026) ........ 3

*Ctr. for Biological Diversity v. Trump*,
453 F. Supp. 3d 11 (D.D.C. 2020) ........ 12

*Employment Division v. Smith*,
494 U.S. 872 (1990) ........ 16

*Friends of the Ruidosa Church v. Mullin*,
No. EP-26-CV-1099-KC, 2026 WL 3077397 (W.D. Tex. Oct. 2, 2026) ........ 3-4

*Guidry v. Bank of LaPlace*,
954 F.2d 278 (5th Cir. 1992) ........ 6

*In re Border Infrastructure Env't Litig.*,
284 F. Supp. 3d 1092 (S.D. Cal. 2018) ........ 3, 14

*In re Border Infrastructure Envtl. Litig.*,
915 F.3d 1213 (9th Cir. 2019) ........ 13

*Jones v. Alcoa, Inc.*,
339 F.3d 359 (5th Cir. 2003) .......... 9

*La Posta Band of Diegueno Mission Indians v. Trump*,
No. 3:20-cv-01552-AJB-MSB, 2020 WL 14042584 (S.D. Cal. Sept. 9, 2020) .......... 18, 20

*Lomax v. Ortiz-Marquez*,
140 S. Ct. 1721 (2020) .......... 13

*Lyng v. Northwest Indian Cemetery Protective Association*,
485 U.S. 439 (1988) .......... 18, 19, 20, 21

*Manzanita Band of Kumeyaay Nation v. Wolf*,
496 F. Supp. 3d 257 (D.D.C. 2020) .......... 20

*Munajj v. City of Fredericksburg*,
No. 1:24-CV-1343-RP, 2025 WL 1879606 (W.D. Tex. June 11, 2025) .......... 14

*Nuclear Regul. Comm'n v. Texas*,
605 U.S. 665 (2025) .......... 9, 10, 12, 14

*Paladin Cmty. Mental Health Ctr. v. Sebelius*,
684 F.3d 527 (5th Cir. 2012) .......... 12

*Petrobras Am., Inc. v. Samsung Heavy Indus. Co., Ltd.*,
9 F.4th 247 (5th Cir. 2021) .......... 6

*Railway Clerks v. Assoc. for Benefit of Non-contract Employees*,
380 U.S. 650 (1965) .......... 9

*Ramming v. United States*,
281 F.3d 158 (5th Cir. 2001) .......... 5

*Sherbert v. Verner*,
374 U.S. 398 (1963) .......... 19

*Sierra Club v. Ashcroft*,
No. 04CV0272-LAB (JMA), 2005 WL 8153059 (S.D. Cal. Dec. 13, 2005) .......... 8

*Tap Pilam Coahuiltecan Nation v. Alamo Trust, Inc.*,
489 F. Supp. 3d 611 (W.D. Tex. 2020) .......... 20

*U.S. Navy SEALs 1-26 v. Biden*,
27 F.4th 336 (5th Cir. 2022) .......... 16

*United States. v. German*,
486 F.3d 849 (5th Cir. 2007) .......... 8

*United States v. Jones*,
109 U.S. 513 (1883) ........ 15

*United States v. Riojas*,
139 F.4th 465 (5th Cir. 2025) ........ 5

*Williams v. Bragg*,
No. l l-CV-475-PRM, 2012 WL 12878177 (W.D. Tex. Aug. 31, 2012), *aff'd*, 537 F. App'x 468 (5th Cir. 2013) ........ 17-18

*Wisconsin v. Yoder*,
406 U.S. 205 (1972) ........ 19

**<u>Statutes</u>**

6 U.S.C. § 202 ........ 2

8 U.S.C. § 1103 ........ 2, 3, 15

8 U.S.C. § 1701 ........ 2

16 U.S.C. § 158 ........ *passim*

40 U.S.C. § 3113 ........ 15

40 U.S.C. § 3114 ........ 15

42 U.S.C. § 2000bb ........ 16

42 U.S.C. § 2000bb-1 ........ 15

Pub. L. No. 104-208, div. C, tit. I § 102, 110 Stat. 3009-554 (1996) ........ *passim*

Pub. L. No. 109-367, § 2(a), 120 Stat. 2638 (2006) ........ 2, 13

**<u>Rule</u>**

Federal Rule of Civil Procedure 12 ........ 1, 5, 6

**<u>Regulations</u>**

Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, as Amended,
73 Fed. Reg. 19,078 (Apr. 8, 2008) ........ 3

Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, as Amended,
90 Fed. Reg. 23,946 (June 5, 2025) ........ 3

Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, As Amended,
91 Fed. Reg. 34,831 (June 9, 2026) ........ 4, 9, 11, 14

**Legislative Material**

S. Rep. No. 103-111 (1993) ........ 19

## INTRODUCTION

Defendants hereby move to dismiss Plaintiffs' Complaint (ECF No. 1). Not only has Congress stripped this Court of subject matter jurisdiction to hear some of the claims Plaintiffs assert in this case, but Plaintiffs also have failed to adequately state any claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(1), 12(b)(6).

Congress has repeatedly articulated that the construction of border infrastructure is a significant, national priority. To effectuate that priority, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), which authorized the U.S. Department of Homeland Security ("DHS") to construct physical barriers and roads along the border. In carrying out this mandate, the IIRIRA authorizes the Secretary of Homeland Security to waive any legal requirements to ensure expeditious construction of border barriers and roads. Although the IIRIRA has been amended several times, that waiver authority has been reiterated and strengthened through each amendment.

Plaintiffs assert four claims challenging DHS's well-established authority to build border barriers and to waive laws to expedite construction of those projects. These claims, however, fail for several reasons. As a threshold matter, Plaintiffs' Complaint should be dismissed for lack of subject matter jurisdiction. Congress has expressly precluded federal courts from hearing "*all* causes or claims arising from *any* action undertaken, or *any* decision made" pursuant to IIRIRA's waiver authority, except for constitutional claims – none of which Plaintiffs have asserted here. Dismissal also is warranted because Plaintiffs fail to state cognizable claims under the IIRIRA, the Religious Freedom Restoration Act ("RFFA"), and 16 U.S.C § 158. Plaintiffs' effort to attack the Secretary's waiver decision as ultra vires lacks merit. The Supreme Court has long held that impacts to one's religious exercise by the Government's use of its own land does not constitute a

"substantial burden" under RFRA. And § 158 offers no private right of action to Plaintiffs, nor does it contain a clear statutory prohibition that could support an ultra vires claim. Further, Plaintiffs' challenge to the Secretary's waiver determination is time-barred because Plaintiffs filed this Complaint after the 60-day statute of limitations.

Together, these defects foreclose each of Plaintiffs' asserted bases for relief. In denying Plaintiffs' motion for a temporary restraining order, this Court concluded that Plaintiffs had no likelihood of success on the merits of their RFRA and § 158 claims. The Court should now dismiss those claims with prejudice along with the remaining claims in the Complaint.

## BACKGROUND

### I. Statutory Framework

DHS is responsible for border security and the detection and prevention of illegal entry into the United States. *See, e.g.*, 6 U.S.C. § 202(1)-(2). Congress has ordered DHS to achieve and maintain operational control of the international land border. *See* Secure Fence Act of 2006, Pub. L. No. 109-367, § 2(a), 120 Stat. 2638 (2006) (8 U.S.C. § 1701 note). "Operational control" means "prevention of all unlawful entries into the United States, including entries by terrorists, other unlawful aliens, instruments of terrorism, narcotics, and other contraband." *Id.* § 2(b).

IIRIRA is one of the statutory authorities provided to DHS to carry out its border security mission. *See* Pub. L. No. 104-208, div. C, tit. I § 102, 110 Stat. 3009-554 (1996). IIRIRA requires the Secretary of Homeland Security to "take such actions as may be necessary to install additional physical barriers and roads (including the removal of obstacles to detection of illegal entrants) in the vicinity of the United States border to deter illegal crossings in areas of high illegal entry into the United States." *Id.* § 102(a), codified at 8 U.S.C. § 1103 note.

To ensure expeditious barrier construction, Congress granted the Secretary of Homeland

Security "the authority to waive all legal requirements such Secretary, in such Secretary's sole discretion, determines necessary to ensure expeditious construction of the barriers and roads under this section." *Id.* § 102(c).

Additionally, Congress established a limited and streamlined system of judicial review of the Secretary's exercise of this waiver authority. Federal district courts have "exclusive jurisdiction" to hear such claims, and the only "cause of action or claim" that may be brought is one "alleging a violation of the Constitution of the United States" that is filed within sixty days of the Secretary's action. *Id.* § 102(c)(2)(A)-(B).

## II. The Secretary's Exercise of Waiver Authority

Since 2005, the Secretary has repeatedly issued waiver determinations under the IIRIRA to ensure expeditious construction of barriers and roads along the border. *See, e.g.*, Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, as Amended, 90 Fed. Reg. 23,946 (June 5, 2025); Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, as Amended, 73 Fed. Reg. 19,078 (Apr. 8, 2008). Numerous courts have rejected challenges to the Secretary's waiver determinations. *See, e.g.*, *Ctr. for Biological Diversity v. Noem*, No. CV-25-00365-TUC-AMM, 2026 WL 836278 (D. Ariz. Mar. 26, 2026); *Ctr. for Biological Diversity v. McAleenan*, 404 F. Supp. 3d 218 (D.D.C. 2019); *In re Border Infrastructure Env't Litig.*, 284 F. Supp. 3d 1092 (S.D. Cal. 2018), *aff'd*, 915 F.3d 1213 (9th Cir. 2019); *Cnty. of El Paso v. Chertoff*, No. 08-196, 2008 WL 4372693 (W.D. Tex. Aug. 29, 2008). *But See Friends of the Ruidosa Church v. Mullin*, No. EP-26-CV-1099-KC, 2026 WL 3077397 (W.D. Tex. Oct. 2, 2026).[1]

---

[1] In *Friends of the Ruidoso Church*, Judge Cardone issued a preliminary injunction based on her finding of a violation of the Major Questions Doctrine (a claim that is not asserted in this case) and stopped "any construction or ground disturbing activities" in the Big Bend Sector pending

Plaintiffs' Complaint challenges a "June 9, 2026 determination purporting to waive numerous federal, state, and other legal requirements in connection with border-barrier and road construction in the Big Bend Sector." Compl. ¶ 22; *see id.* ¶¶ 58-67; *see* Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, As Amended, 91 Fed. Reg. 34,831, 34832 (June 9, 2026). This waiver covers construction activities "[s]tarting at approximately GPS point 29.325866, -104.046466 and extending east to approximately GPS point 29.728522, -102.683945." 91 Fed. Reg. at 34,832. Portions of the project area include Big Bend National Park. Compl. ¶¶ 60-62.

## III. Procedural History

On August 14, 2026, Plaintiffs filed a Complaint asserting four bases for relief. First, Plaintiffs allege that DHS's planned construction within Big Bend National Park exceeds DHS's authority because Congress assigned the Park's "administration, protection, and development" exclusively to the Secretary of the Interior and the National Park Service under 16 U.S.C. § 158. Compl. ¶¶ 137–151 (Count I). Second, Plaintiffs contend that Defendants exceeded the substantive construction authority conferred by § 102 of the IIRIRA because the selected project corridor is not an "area of high illegal entry" and the waiver provision cannot expand DHS's underlying authority. *Id.* ¶¶ 152–163 (Count II). Third, Plaintiff Christina Hernandez, along with Plaintiff Andrew Austin and members of People of La Junta for Preservation, allege that the proposed construction will substantially burden their religious exercise in violation of RFRA. Compl. ¶¶ 164–179 (Count III). Fourth, Plaintiffs assert that DHS and U.S. Customs and Border Protection

---

resolution of that case. *See* 2026 WL 3077397 at *2. The government has filed a motion in the United States Supreme Court to stay the injunction and for summary reversal. *See Mullen v. Friends of the Ruidosa Church*, No. 26A560.

("CBP") lack lawful property interests to enter, occupy, or construct upon certain lands within the project area, rendering any such physical occupation ultra vires. Compl. ¶¶ 180–184 (Count IV).

On September 30, 2026, the Court denied Plaintiffs' motion for a temporary restraining order. *See* ECF No. 21. The Court found that "Plaintiffs have not demonstrated a likelihood of success on the merits" of their RFRA and § 158 claims. *Id.* at 4. Plaintiffs did not seek relief on their other claims.

On October 16, 2026, Defendants issued a notification letter to Plaintiffs advising them of the deficiencies in their Complaint, as required under Section I(A)(1) of this Court's Standing Order in Civil Cases. *See* Exhibit 1, Email from P. Amaechi to R. Gutierrez, D. DeGuerin, and M. Golando (dated October 16, 2026). As of today, Plaintiffs have not issued a response or filed an advisory notice indicating that they intend to amend their Complaint.

## STANDARD OF REVIEW

Defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Subject-matter jurisdiction is "the courts' statutory or constitutional power to adjudicate the case." *United States v. Riojas*, 139 F.4th 465, 472 (5th Cir. 2025). Plaintiffs have the burden to establish jurisdiction. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). In resolving a motion to dismiss for lack of jurisdiction under Rule 12(b)(1), the Court "is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments." *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009) (citation omitted).

Defendants also move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state any claim upon which relief can be granted. A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the complaint must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action[.]" *Id.* (quoting *Bell Atl. Corp.*, 550 U.S. at 555); *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). Rather, the complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. For purposes of deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all of the reasonably pled factual allegations in the complaint and construes reasonable inferences in favor of the plaintiff. *Id.* However, the Court need not accept as true "a legal conclusion couched as a factual allegation[.]" *Id.* (quoting *Bell Atl. Corp.*, 550 U.S. at 555); *Guidry*, 954 F.2d at 281. And the court may consider all "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice," in addition to the allegations in the complaint. *Petrobras Am., Inc. v. Samsung Heavy Indus. Co., Ltd.*, 9 F.4th 247, 253 (5th Cir. 2021) (citation omitted).

## ARGUMENT

### I. Count II Challenging DHS's Authority to Issue the June 9, 2026 Waiver Must Be Dismissed For Lack of Jurisdiction Under Rule 12(b)(1)

Count II of Plaintiff's Complaint must be dismissed under Rule 12(b)(1) because this Court lacks subject matter jurisdiction to review this claim. Plaintiffs assert in Count II that DHS "exceed[ed] the statutory authority conferred by Congress" because the Secretary did not "satisfy[] the substantive conditions imposed by §§ 102(a) and (b)" of IIRIRA in issuing the June 9, 2026 waiver. Compl. ¶ 160. Specifically, Plaintiffs argue that Congress authorized construction only in "areas of high illegal entry" under § 102(a), *Id.* ¶ 153, and next authorized only specific types of border infrastructure under § 102(b), *see id.* ¶ 154. Plaintiffs contend that DHS exceeded its

statutory authority because the June 9 waiver did not satisfy these requirements. *Id.* ¶¶ 159-161.

Plaintiffs' claim fails because Congress stripped federal courts of jurisdiction to hear any non-constitutional challenges to a Secretary's waiver decision. "Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider." *Bowles v. Russell*, 551 U.S. 205, 212 (2007). "Because Congress decides whether federal courts can hear cases at all, it can also determine when, and under what conditions, federal courts can hear them." *Id.* at 212-13. Here, Congress created a limited system of judicial review through IIRIRA § 102(c)(2)(A) for challenges to the Secretary's waiver authority. This section creates an exclusive review scheme that channels challenges to the Secretary's waiver authority into a single, narrow category—constitutional claims—and strips it of jurisdiction for all other claims.

First, IIRIRA § 102(c)(2)(A) expansively encompasses "all causes or claims arising from any action undertaken, or any decision made" pursuant to § 102(c)(1)'s waiver authority. Second, it expressly identifies the sort of suits that may be brought: "only . . . [those] alleging a violation of the Constitution." *Id.* Third, it expressly removes district court jurisdiction over "any claim not specified in this subparagraph." *Id.* By limiting review to suits "alleging a violation of the Constitution," Congress unambiguously foreclosed the statutory and procedural challenges Plaintiffs assert in Count II. *See Ctr. for Biological Diversity*, 404 F. Supp. 3d at 239 (Brown-Jackson, J.) (stating that the "statutory language of section 102(c)(2)(A)" is "crystal clear that Congress intended to eliminate litigation that would delay the expeditious construction of border security infrastructure to the fullest extent possible, *i.e.*, to the extent constitutionally allowed"); *Sierra Club v. Ashcroft*, No. 04CV0272-LAB (JMA), 2005 WL 8153059, at *10 (S.D. Cal. Dec. 13, 2005) ("The only justiciable controversies Congress left for the courts to decide in this connection are constitutional claims.").

Because constitutional claims are the only claims "specified" in § 102(c)(2)(A), courts do not have jurisdiction to review any non-constitutional claims "arising from any action undertaken, or any decision made, by the [Secretary] pursuant to" the Secretary's discretionary waiver authority. IIRIRA § 102(c)(2). When Congress speaks in such unequivocal terms that only certain claims may proceed, it leaves no room for judicial expansion. *See United States. v. German*, 486 F.3d 849, 853 (5th Cir. 2007) ("Where Congress has both established a right and provided exclusive remedies for its violation, we would encroach upon the prerogatives of Congress were we to authorize a remedy not provided for by statute.") (citation omitted).

Plaintiffs directly challenge the Secretary's June 9 waiver determinations, alleging that the Secretary acted outside the scope of his authority in issuing them. Compl. ¶¶ 157-163. Judicial review of Plaintiffs' claims would require the Court to examine the Secretary's waiver determinations, and to decide whether they were validly issued. These are precisely the types of claims that fall within the text of § 102(c)(2) because they "aris[e] from a[n] action undertaken, or [a] decision made, by the Secretary of Homeland Security pursuant to paragraph (1)" of § 102(c). IIRIRA § 102(c)(2)(A). Because Plaintiffs do not allege any constitutional violations in Count II, their statutory claim falls squarely outside the only category of claims for which Congress preserved jurisdiction. Accordingly, Count II must be dismissed for lack of jurisdiction.

## II. Plaintiffs Fail To State Any Claim Upon Which Relief May Be Granted Under Rule 12(B)(6)

### A. Plaintiffs' Challenge to the June 9 Waiver is Time Barred.

Plaintiffs cannot challenge barrier construction associated with the June 9, 2026 waiver because Plaintiffs failed to bring this action within the statute of limitations in IIRIRA § 102(c)(2)(B). That section, which is titled "Time for Filing of Complaint," provides that any claim challenging a waiver determination "shall be filed not later than 60 days after the date of

the action or decision made by the Secretary of Homeland Security." *Id*. Congress expressly directed that "[a] claim shall be barred unless it is filed within the time specified." IIRIRA § 102(c)(2)(B). The waiver Plaintiffs challenge in the Complaint was issued on June 9, 2026. *See* 91 Fed. Reg. 34,831. The Complaint was filed 66 days later on August 14, 2026. *See* ECF No. 1. Because Plaintiffs did not file their Complaint within the applicable 60-day limitations period, their challenge is "barred." IIRIRA § 102(c)(2)(B); *see Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003) (stating that a "statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred").

### B. Plaintiffs' Ultra Vires Theories Fails to Satisfy the Rule 12(b)(6) Pleading Standard

An ultra vires claim "is essentially a Hail Mary pass—and in court as in football, the attempt rarely succeeds." *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 681-82 (2025) (citation omitted). Furthermore, it is well settled that ultra vires review is "strictly limited" and applies only when an agency "has taken action entirely in excess of its delegated powers and contrary to a *specific prohibition* in a statute." *Id.* at 681 (quoting *Railway Clerks v. Assoc. for Benefit of Non-contract Employees*, 380 U.S. 650, 660 (1965)). None of Plaintiffs' asserted ultra vires claims meet these conditions.

#### i. Plaintiffs Cannot Show that Defendants Exceeded Their Authority Under 16 U.S.C. § 158 (Count I)

The Court previously concluded that "Plaintiffs have failed to clearly demonstrate a substantial likelihood of success on" their § 158 claim. *See* TRO Order (ECF No. 21) at 6. The Court should now dismiss that claim for the same reasons.

16 U.S.C. § 158 provides that the "administration, protection, and development" of Big Bend National Park "shall be exercised under the direction of the Secretary of the Interior by the National Park Service." Plaintiffs assert that the DHS Secretary's June 9 waiver determination

specifically identified and waived several statutes governing Big Bend National Park but did not identify or expressly waive 16 U.S.C. § 158. Compl. ¶¶ 141-142. Therefore, Plaintiffs assert that the "administration, protection, and development of" Big Bend National Park is subject to the direction of the Secretary of the Interior through the National Park Service—not the DHS Secretary, and that any DHS construction of border barrier in Big Bend National Park exceeds the authority conferred upon them by Congress. Compl. ¶¶ 143-146.

As this Court previously concluded, "no private right of action exists to enforce perceived violations of § 158." TRO Order at 7. "The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). Here, nothing in the text or structure of § 158 suggests Congress intended to create a private right of action or private remedy. Nor do Plaintiffs point to any language granting them that right.

Further, "Plaintiffs' attempt to frame their statutory claim as an equitable ultra vires claim" fails for several reasons. TRO Order at 7-8. First, neither DHS nor CBP have taken action "in excess of [their] delegated powers" by constructing a border barrier system along portions of the international border and within Big Bend National Park. *Nuclear Regulatory Comm'n*, 605 U.S. at 681. Congress issued a clear mandate for DHS to install physical barriers, roads, and technology to "deter illegal crossings" and "gain operational control" of the border. IIRIRA § 102(a). The DHS Secretary's June 9 waiver, which was exercised pursuant to express authority by Congress, sets aside the application of a corpus of statutory authorities under which the Department of the Interior and National Park Service would normally manage Big Bend National Park, such as the National Park Service Organic Act and the National Park Service General Authorities Act. *See* 91 Fed. Reg. at 34,832-833. Section 158—which was not individually enumerated in the June 9

waiver—is ministerial. It simply designates the Department of the Interior and National Park Service as the government agencies responsible for administration of the Park. This Court has already concluded that DHS's actions are not in "excess of its delegated powers" to sustain an ultra vires claim simply because "a certain part of that border falls within a national park that the Secretary of the Interior administers, protects, and develops." TRO Order at 7-8.

Second, the text of Section 158 contains no clear and mandatory statutory prohibitions. Section 158 provides only that "[t]he administration, protection, and development of the Big Bend National Park shall be exercised under the direction of the Secretary of the Interior by the National Park Service." As this Court held, section 158 does not state "that a border barrier *shall not* be erected along that portion of the border falling within the territory of Big Bend National Park." TRO Order at 7. Simply put, the plain language of section "158 contains *no* prohibitions" and thus cannot sustain an ultra vires claim. *Id.*

**ii. Plaintiffs Cannot Show That Defendants Exceeded Their Authority Conferred By IIRIRA § 102 (Count II)**

Even if the Court had jurisdiction to address Count II, Plaintiffs fail to state a claim on the merits. Although Plaintiffs attempt to style Count II as a statutory challenge to DHS's "construction authority[,]" the substance of their allegations is essentially an ultra vires challenge to actions DHS may take arising from the Secretary's waiver determinations. *See* Compl. ¶¶ 152–163. This claim fails because nothing in § 102 constitutes the kind of clear and mandatory statutory language required under ultra vires review to conclude that the Secretary's waiver determinations here are prohibited by the statute. At a minimum the Secretary's determinations are plausible and not ultra vires. *See Paladin Cmty. Mental Health Ctr. v. Sebelius*, 684 F.3d 527, 533 (5th Cir. 2012) (stating that "[e]ven if her interpretation was incorrect, the Secretary's decision can hardly be said to be so contrary to the terms of the relevant statute" as to necessitate ultra vires review).

Plaintiffs argue that DHS exceeds its authority where it undertakes construction at locations that do not constitute an area of high illegal entry, activities outside the geographic project area described in the waiver, activities insufficiently connected to barriers and roads authorized by § 102, or any other activity failing to satisfy the conditions imposed by §§ 102(a) and (b). *Id.* ¶¶ 159-161. However, Plaintiffs ignore the vast discretion Congress afforded the Secretary in determining where and how to construct border-barrier systems under § 102, including the authority to identify areas of high illegal entry and to decide the precise locations and manner of construction. *See* IIRIRA § 102(a) (stating that the Secretary of Homeland Security "shall take such actions as may be necessary to install additional physical barriers and roads… to deter illegal crossings[.]"); *Ctr. for Biological Diversity v. Trump*, 453 F. Supp. 3d 11, 34–36 (D.D.C. 2020) (describing § 102(c) as granting the Secretary broad discretion to waive legal requirements to expedite construction). Neither DHS nor CBP have acted "in excess of [their] delegated powers" by constructing a border barrier system in the Big Bend Sector. *Nuclear Regulatory Comm'n*, 605 U.S. at 681. In fact, they are carrying out the very mandate Congress has assigned to them while exercising the broad discretion Congress expressly afforded them. Plaintiffs cannot seek to impose their own policy preferences on the manner in which DHS carries out that mandate. Plaintiffs point to no legal authority demonstrating that DHS has exceeded its delegated authority in a manner that could sustain an ultra vires claim.

Moreover, Plaintiffs have not identified any clear and mandatory prohibition within IIRIRA that DHS has violated; to the contrary, § 102(a) expressly empowers the Secretary to "take such actions as may be necessary" to install border-barrier infrastructure, and § 102(c) authorizes the Secretary to waive "all legal requirements" to do so. Absent a specific statutory command that DHS has disregarded—and none has been shown—Plaintiffs cannot meet the demanding standard

required to plead an ultra vires claim. For these reasons, Plaintiffs have failed to state a claim under Rule 12(b)(6).

Plaintiff also cannot state an ultra vires claim that the Secretary violated section 102(a)'s requirement that barrier construction occur "in areas of high illegal entry." Compl. ¶¶ 153, 157-59; *see* IIRIRA § 102(a). Congress set no specific threshold for "high illegal entry." In the most recent amendment to § 102, however, Congress did make clear that one of the Act's purposes is "to achieve and maintain operational control over the international border." § 102(b)(1)(D). And Congress has expansively defined "operational control" of the border—"the prevention of *all unlawful entries* into the United States, including . . . unlawful aliens, . . . narcotics, and other contraband." Pub. L. No. 109-367 § 2(b) (emphasis added).

The statutory term "high" also does not require any particular comparative threshold. *See In re Border Infrastructure Envtl. Litig.*, 915 F.3d 1213, 1224 (9th Cir. 2019) ("IIRIRA does not dictate that 'high illegal entry' is a comparative determination."). Nothing in the language that Congress actually wrote precludes the Secretary from determining that a segment of the U.S.-Mexico border is an "area[ ] of high illegal entry," even if other nearby segments have even higher illegal entry. Courts "may not narrow a provision's reach by inserting words Congress chose to omit." *Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721, 1725 (2020).

Here, the Secretary found that the Big Bend Sector is an area of high illegal entry based on data that between "fiscal year 2021 and fiscal year 2025, Border Patrol apprehended over 89,000 illegal aliens attempting to enter the United States between border crossings in the Big Bend Sector." 91 Fed. Reg. at 34,832. Additionally, "Border Patrol seized over 87,574 pounds of marijuana, over 867 pounds of cocaine, over 1,156 pounds of methamphetamine, over 12 pounds of heroin, and over 94 pounds of fentanyl." *Id.* Based on these facts, the Secretary reasonably

concluded that area at issue had "high" illegal entry. This well-founded determination was not ultra vires. *See In re Border Infrastructure Env't Litig.*, 284 F. Supp. 3d at 1121 (stating that "the Court cannot conclude the Secretaries violated their mandate to deter crossings in areas of 'high illegal entry'" because the "Secretary's decision to adopt one interpretation over the other cannot constitute an ultra vires act").

**iii. Plaintiffs Cannot Show that Defendants Exceeded Their Authority Under § 102(c) To Occupy Property (Count IV)**

Plaintiffs assert that Defendants must possess lawful authority and the necessary property interest to enter and develop land for barrier construction. Compl. ¶ 183. But, again, Plaintiffs have failed to plausibly allege how DHS has "taken action entirely in excess of its delegated powers and contrary to a *specific prohibition* in a statute" to violate the property rights of the Plaintiffs in this case. *Nuclear Regul. Comm'n*, 605 U.S. at 681. Nowhere in Plaintiffs' Complaint do they allege that the federal government has actually entered, occupied, or taken possession of any property owned by a Plaintiff absent lawful authority. *See Munajj v. City of Fredericksburg*, No. 1:24-CV-1343-RP, 2025 WL 1879606 at *3 (W.D. Tex. June 11, 2025) ("A taking occurs when the government uses its power of eminent domain to condemn property, physically takes possession of property without acquiring title to it, when it occupies property, or when it imposes regulations that restrict an owner's ability to use his property.").

Nor is there any merit to the contention that the federal government lacks authority to acquire property for purposes of border barrier construction. *See* 8 U.S.C. § 1103(b) (land acquisition authority); 40 U.S.C. § 3113-14 (condemnation and declaration of taking authority); IIRIRA § 102(b)(2) (authorizing the Attorney General to "promptly acquire such easements as may be necessary to carry out this subsection"); *United States v. Jones*, 109 U.S. 513, 518 (1883) ("The power to take private property for public uses, generally termed the right of eminent domain,

belongs to every independent government.”). Further, Plaintiffs do not cite any statute that contains a specific prohibition DHS is alleged to have violated regarding entry or acquisition of their property, leaving Count IV without the statutory anchor ultra vires review requires. Absent such a prohibition, their ultra vires theory in Count IV cannot proceed.

### C. Plaintiffs Fail to State a Claim That Defendants Violated the Religious Freedom Restoration Act

#### i. Border Wall Construction on Federal Land is Not a Substantial Burden on the Exercise of Religion Under RFRA (Count III)

Plaintiffs allege that construction of a border-barrier system will impose a “substantial[] burden” on Plaintiff’s religious beliefs, in violation of RFRA. Compl. ¶¶ 165-179. This Court rejected that claim in denying Plaintiffs’ TRO motion and it should now dismiss the claim for the same reasons. *See* TRO Order at 4-6 (“Plaintiffs have failed to clearly demonstrate a substantial likelihood of success on the merits of their RFRA claim.”).

RFRA provides that the government cannot substantially burden a person’s exercise of religion unless the government demonstrates that application of the burden to the particular person furthers a compelling governmental interest and is the least restrictive means of furthering that interest. 42 U.S.C. § 2000bb-l(a)-(b). Plaintiffs assert that DHS’s barrier construction will limit the ability of Plaintiff Christina Hernandez, Andrew Austin, Members of People of La Junta for Preservation to exercise their religion in specific locations along the Rio Grande River. Compl. ¶¶ 102-116, 170-172. However, Plaintiffs have failed to establish that DHS’s construction is a substantial burden on the exercise of their religion within the meaning of the statute.

RFRA does not define “substantial burden,” so courts look to First Amendment cases decided before *Employment Division v. Smith*, 494 U.S. 872 (1990), to construe the term. 42 U.S.C. § 2000bb(b)(1). Under those cases, “a government action or regulation creates a ‘substantial burden’ on a religious exercise if it truly pressures the adherent to significantly modify

his religious behavior and significantly violates his religious beliefs." *U.S. Navy SEALs 1-26 v. Biden*, 27 F.4th 336, 350 (5th Cir. 2022) (quoting *Adkins v. Kaspar*, 393 F.3d 559, 570 (5th Cir. 2004)). "On the opposite end of the spectrum, however, a government action or regulation does not rise to the level of a substantial burden on religious exercise if it merely prevents the adherent from either enjoying some benefit that is not otherwise generally available or acting in a way that is not otherwise generally allowed." *Adkins*, 393 F.3d at 570.

Plaintiffs note that their religious practices include "access to particular religious sites, use of materials gathered from the Rio Grande landscape, and participation in traditional ceremonies and rites," but fail to identify with specificity any alleged areas located within the proposed construction corridor that will be impacted. Compl. ¶ 169. Plaintiffs claim that Defendants' construction at that site "will substantially burden" their religious exercise. *Id.* ¶ 173. But Plaintiffs' Complaint does not establish that the planned construction will touch ancestral burial sites, wherever they are located. *See id.* ¶¶ 108, 119*; see also* TRO Order at 5. Although Plaintiff Hermandez asserts that she requires access to a burial site and surrounding land for a reburial ceremony, the Complaint fails to identify the location of the site, when Plaintiff intends to conduct the ceremony, and explain why Plaintiff believes that specific location would be damaged by the limited construction pathway.

Plaintiffs also have not alleged that, should Defendants resume or complete construction of their proposed barriers in either the Big Bend areas, Hernandez would no longer be able to access the river. Plaintiffs' Complaint similarly fails to identify existing denial of access, a gate or barrier design that will necessarily block a particular religious route, or a project feature that will necessarily burden her ceremonies. "Plaintiff has not established that any of the planned construction will, in fact, touch on that burial site, wherever it is located." TRO Order at 5.

Under *Ashcroft v. Iqbal*, the Court need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." 556 U.S. at 678. Plaintiffs' claim that construction could prevent certain religious practices, without identifying where the alleged burial site is located, when the anticipated ceremony will occur, or how the construction will necessarily impede access, is precisely the type of speculative assertion that *Iqbal* deems insufficient. *Id.* (holding that the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully" and "naked assertions devoid of further factual enhancement," are legally insufficient to state a plausible claim) (cleaned up).

Even assuming arguendo that the proposed construction would be located on or near Plaintiffs' burial site, Plaintiffs, at most, would merely be prevented from enjoying a benefit that is not "otherwise generally available[,]" which does not qualify as a substantial burden. *Adkins*, 393 F.3d at 570. As this Court previously concluded, it is not a generally available benefit for a member of the public to have "unfettered access to an international border river[.]" TRO Order at 5. Moreover, even if construction of a border barrier system were to make access to the river or other locations less convenient, mere inconvenience also does not amount to a substantial burden. *Id.* at 6; *see Williams v. Bragg*, No. 11-CV-475-PRM, 2012 WL 12878177, at *4 (W.D. Tex. Aug. 31, 2012) ("[M]ore than . . . mere inconvenience . . . [is] required to establish a substantial burden"), *aff'd*, 537 F. App'x 468 (5th Cir. 2013). Courts evaluating comparable claims have likewise concluded that such conditions do not amount to a substantial burden. *Cf. La Posta Band of Diegueno Mission Indians v. Trump*, No. 3:20-cv-01552-AJB-MSB, 2020 WL 14042584, at *16 (S.D. Cal. Sept. 9, 2020) (denying TRO motion to stop border wall construction because plaintiff has "not established a 'substantial burden' within the meaning of the RFRA"). Thus, Plaintiffs' Complaint falls well short of establishing any substantial burden on religious exercise.

### ii. *Lyng* Forecloses Plaintiffs' Substantial Burden Claim

The leading case on the application of the "substantial burden" test to construction on federal land is *Lyng v. Northwest Indian Cemetery Protective Association*, 485 U.S. 439 (1988). In *Lyng*, the plaintiff Indian tribes alleged that the Government's decision to build roads and harvest timber on federal lands in northern California violated their First Amendment rights under the "substantial burden" test, which has since been incorporated into RFRA. The parties did not dispute that "the logging and road-building projects at issue in this case could have devastating effects on traditional Indian religious practices." *Id.* at 451.

The Court ruled in the Government's favor. The Court held that "the affected individuals" would not "be coerced by the Government's action into violating their religious beliefs; nor would either governmental action penalize religious activity by denying any person an equal share of the rights, benefits, and privileges enjoyed by other citizens." *Id.* at 449. The Supreme Court went on to reason that, "[w]hatever rights the Indians may have to the use of the area . . . those rights do not divest the Government of its right to use what is, after all, *its* land." *Id.* at 453 (emphasis in original).

*Lyng* binds this Court in its consideration of Plaintiffs' RFRA claim. When Congress was debating RFRA, it acknowledged that the statute incorporated pre-*Smith* holdings that "strict scrutiny does not apply to government actions involving . . . the use of the Government's own property or resources," including management of public lands, because such actions do not "substantially burden" religious exercise as articulated by either *Sherbert v. Verner,* 374 U.S. 398 (1963) or *Wisconsin v. Yoder,* 406 U.S. 205 (1972). *See* S. Rep. No. 103-111, at 8-9 & n.19 (1993). Under those cases, a substantial burden is imposed only when individuals are forced to choose between following the tenets of their religion and receiving a governmental

benefit, as in *Sherbert*, or coerced to act contrary to their religious beliefs by the threat of civil or criminal sanctions, as in *Yoder*. Indeed, Congress cited *Lyng* and *Roy* as examples of the proper approach to applying the substantial burden test to actions involving the government's own property. *See id.* None of the recognized circumstances amounting to a substantial burden on religion is present in this case.

The concerns articulated by *Lyng* are particularly acute at the international border. Security of the border is a part of the Government's internal operations, and should not impose a "substantial burden" on religious beliefs. RFRA, like the First Amendment doctrines that preceded it, is not intended to give religious objectors a mechanism to second-guess the "broad range of *government* activities" that occur at the border because they deem those "activities deeply offensive, and perhaps incompatible with their own search for spiritual fulfillment and with the tenets of their religion." *Lyng*, 485 U.S. at 452 (emphasis added).

In accordance with *Lyng*, Plaintiffs have failed to state a claim of a "substantial burden" on their religion. Even if the border wall construction in this case will somehow affect their religious practice (which has not been established), the proposed construction does not force anyone to "violat[e] their religious beliefs," nor does it "penalize religious activity" through the "den[ial of] any person an equal share of the rights, benefits, and privileges enjoyed by other citizens." *Id.* at 449, 451. Rather, Plaintiffs' alleged harm arises from the Government's decisions about how best to use and manage the federal land near the border. As *Roy* and *Lyng* hold, this sort of activity is not a "substantial burden" under RFRA. *Cf. La Posta*, 2020 WL 14042584, at *14-16 (rejecting RFRA claim challenging border wall construction); *Manzanita Band of Kumeyaay Nation v. Wolf*, 496 F. Supp. 3d 257, 267 (D.D.C. 2020) (denying preliminary injunction under *Lyng* and noting that "damage to the surrounding areas—even

those integral to the Kumeyaay religion and culture—that is incidental to the Government's use of its own land fails to meet the heightened standard for irreparable harm").

Furthermore, this Court has already applied *Lyng* to demands similar to the ones Plaintiffs assert here. In *Tap Pilam Coahuiltecan Nation v. Alamo Trust, Inc.*, 489 F. Supp. 3d 611 (W.D. Tex. 2020) (Garcia, J.), Plaintiffs claiming descent from persons buried at the Alamo sought, among other things, authority to participate in decisions affecting human remains and to perform religious ceremonies at the site. *Id.* at 616–18. This Court held that the requested religious-use benefits were "unavailable under *Lyng*" because they were not benefits generally available to the public, but benefits the plaintiffs sought to exact from the defendant government's management of the property. *Id.* at 623-24. *Tap Pilam*'s application of *Lyng* is particularly relevant here because it involved a similar challenge to government construction and renovation activities alleged to threaten ancestral burial grounds and interfere with related religious practices. This Court correctly applied *Lyng* to reject such free exercise theories. Ultimately, Plaintiffs' Complaint fails to adequately state a claim that access to the unidentified site will be impeded or disturbed, let alone that such an alleged injury constitutes a "substantial burden" under RFRA. *See* TRO Order at 5-6. The incidental effects of lawful border wall construction on federal land "which may make it more difficult to practice certain religions[,] but which have no tendency to coerce individuals into acting contrary to their religious beliefs" is not a substantial burden on the exercise of Plaintiffs' religion. *Lyng*, 485 U.S. at 450-51.

## CONCLUSION

For these reasons, the Court should dismiss Plaintiffs' Complaint.

Dated: November 6, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

/s/ Andrew I. Warden
ANDREW I. WARDEN (IN #23840-49)
Assistant Branch Director
PAMELA I. AMAECHI
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Tel: (202) 616-5084
E-mail: andrew.warden@usdoj.gov

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I, Andrew I. Warden, hereby certify that on November 6, 2026, I electronically filed the foregoing using the Court's CM/ECF system, which automatically serves this document upon all counsel of record.

*/s/ Andrew I. Warden*

ANDREW I. WARDEN
*Counsel for Defendants*